1   MARC J. SCHNEIDER, State Bar No. 214609
      mschneider@sycr.com
2   STEPHEN L. RAM, State Bar No. 240769
      sram@sycr.com
3   RYAN W. SMITH, State Bar No. 272361
      rsmith@sycr.com
4   JESSICA L. MULLEN, State Bar No. 288845
      jmullen@sycr.com
5   STRADLING YOCCA CARLSON & RAUTH, P.C.
    660 Newport Center Drive, Suite 1600
6   Newport Beach, CA 92660-6422
    Telephone:  (949) 725-4000
7   Facsimile:  (949) 725-4100

8   Attorneys for Defendant
    ACACIA RESEARCH CORPORATION
9

10              **UNITED STATES DISTRICT COURT**

               **CENTRAL DISTRICT OF CALIFORNIA**
11
                    **SOUTHERN DIVISION**
12

13  | | |
    |---|---|
    | HTC CORPORATION, HTC AMERICA, INC., | Case No. SACV15-00378-CJC (DFMx) |
    | Plaintiffs, | **ACACIA RESEARCH CORPORATION'S MOTION TO DISMISS** |
    | v. | |
    | ACACIA RESEARCH CORPORATION, SAINT LAWRENCE COMMUNICATIONS LLC, | [*Filed concurrently with Declaration of Ram; Rule 7.1 Disclosure; Request for Judicial Notice; and [Proposed] Order Granting the Motion to Dismiss*] |
    | Defendants. | Hearing:<br>Date:    September 14, 2015<br>Time:    1:30 p.m.<br>Ctrm:   9B<br>Judge:   Hon. Cormac J. Carney<br><br>Action File:  March 9, 2015<br>Trial Date:    None Set |

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ACACIA'S NOTICE OF MOTION AND MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# NOTICE OF MOTION

To all parties and their respective attorneys of records:

Please take notice that on September 14, 2015 at 1:30 p.m., or as soon thereafter as the matter may be heard, in this Court, located at United States District Court, Southern Division of the Central District, Southern Division, Dept./Room 9B, Santa Ana, CA 92701, defendant Acacia Research Corporation ("ARC") will and hereby does move for an order to dismiss the Claims One through Five of the Complaint of plaintiffs HTC Corporation and HTC America, Inc. for want of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  In  the alternative, ARC moves to dismiss Claims One through Five of the Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This motion is based upon this notice of motion and motion, the attached memorandum, the concurrently filed request for judicial notice, the concurrently filed declaration of Stephen L. Ram, and, and upon such other and further matters, papers, and arguments as may be submitted to the Court at or before the hearing on this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 that took place on July 2, 2015.

Respectfully submitted,

Dated:  August 7, 2015

STRADLING YOCCA CARLSON & RAUTH, P.C.

By: /s/ Marc J. Schneider
Marc J. Schneider
Stephen L. Ram
Ryan W. Smith
Jessica L. Mullen
Attorneys for Defendant ACACIA RESEARCH CORPORATION

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-1-
ACACIA'S MOTION TO DISMISS
LITIOC/2120002v13/101022-0123

1

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................ 1

II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY ..................... 2

       A.    ARC Subsidiary SLC Acquires And Pursues Litigation To
             Enforce The Patents-In-Suit. ................................................. 2

       B.    SLC And SLC GmbH Engage In Licensing Discussions With
             Plaintiffs. ............................................................................. 4

       C.    Plaintiffs Serve Their Complaint After SLC Commences A
             Patent Infringement Suit. ...................................................... 4

III.   ARGUMENT ................................................................................... 5

       A.    Legal Standard ..................................................................... 5

       B.    The Complaint Does Not State A Case Or Controversy
             Between Plaintiffs And ARC For Declaratory Relief. ........................ 6

             1.    There is No Case Or Controversy Between Plaintiffs And
                   ARC Because There Is No Adverse Legal Interest
                   Between The Parties. ................................................... 7

                   a.    ARC Cannot Sue Plaintiffs For Infringement
                         Because ARC Is Not An Owner Or Licensee Of
                         The Patents. ...................................................... 7

                   b.    A Parent Company Of A Patent Holder Is Not A
                         Proper Defendant For A Declaratory Relief Claim. ........ 9

             2.    The Complaint Does Not Allege ARC Took Any
                   Affirmative  Act To Enforce Any Right Concerning The
                   Patents-In-Suit. .......................................................... 12

       C.    The Alter Ego Theory Fails Because The Complaint Fails To
             Allege Essential Requirements And Such A Theory Would Still
             Not Create A Case Or Controversy. ...................................... 13

             1.    Plaintiffs Do Not Allege Facts Sufficient To Establish An
                   Alter Ego Relationship. .............................................. 14

                   a.    The Complaint Does Not Allege A Unity Of
                         Interest. .......................................................... 15

                   b.    The Complaint Does Not Allege Any Fraud Or
                         Injustice. ......................................................... 19

             2.    Even If The Complaint Adequately Pled Alter Ego, There
                   Is No Justiciable Case Or Controversy Because ARC

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

i

ACACIA'S MOTION TO DISMISS

LITIOC/2120002v13/101022-0123

1

Could Not Bring A Patent Infringement Suit By
"Piercing" Its Own Corporate Veil............................................22

2

D.      Leave To Amend Would Be Futile....................................................24

3

IV.   CONCLUSION .........................................................................................25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-ii-

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4
*Arris Group Inc. v. British Telecomm. PLC,*
    639 F.3d 1368 (Fed. Cir. 2011) ........................................................................7

5

6
*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................................................6, 13

7

8
*Ass'n for Molecular Pathology v. United States PTO,*
    653 F.3d 1329 (Fed. Cir. 2011) ......................................................................12

9

10
*Beam Laser Sys., Inc. v. Cox Commun'ns, Inc.,*
    117 F. Supp. 2d 515 (E.D. Va. 2000) ...............................................................9

11

12
*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................6, 13

13

14
*Bollore S.A. v. Imp. Warehouse, Inc.,*
    448 F.3d 317 (5th Cir. 2006) ..........................................................................14

15
*Boston Scientific Corp. v. Wall Cardiovascular Tech. LLC,*
    647 F. Supp. 2d 358 (D. Del. 2009) ................................................................14

16

17
*Buechner v. Farbenfabriken Bayer Aktiengesellschaft,*
    154 A.2d 684 (Del. 1959)................................................................................11

18

19
*Calvert v. Huckins,*
    875 F. Supp. 674 (E.D. Cal. 1995) .................................................................21

20

21
*Chaset v. Fleer/Skybox Int'l, LP,*
    300 F.3d 1083 (9th Cir. 2002)....................................................................6, 24

22

23
*Cherrone v. Florsheim Dev.,*
    Civ. No. 2:12-02069 WBS CKD, 2012 U.S. Dist. LEXIS 172778
    (E.D. Cal. Dec. 4, 2012) .................................................................................17

24

25
*Coleman v. Estes Express Lines, Inc.,*
    730 F. Supp. 2d 1141 (C.D. Cal. 2010)...........................................................23

26

27
*Communist Party v. 522 Valencia, Inc.,*
    35 Cal. App. 4th 980 (1995).............................................................................23

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

i

ACACIA'S MOTION TO DISMISS

LITIOC/2120002v13/101022-0123

*Depuy, Inc. v. Zimmer Holdings, Inc.*,
 384 F. Supp. 2d 1237 (N.D. Ill. 2005) ................................................................. 9

*Digitech Image Technologies, LLC v. Newegg Inc.*, Case No. 2:12-cv-
 01688-ODW (MRWx), 2013 U.S. Dist. LEXIS 63828, at *3
 (C.D. Cal. May 3, 2013). ................................................................................. 11

*Disenos Artisticos, E. Industriales, S.A. v. Costco Wholesale Corp.*,
 97 F.3d 377 (9th Cir. 1996) ................................................................................ 22

*Doe v. Unocal Corp.*,
 248 F.3d 915 (9th Cir. 2001) ............................................................. 14, 15, 19

*Dole Food Co. v. Patrickson*,
 538 U.S. 468 (2003) ........................................................................................ 10

*Drilltec Techs., Inc. v. Remp*,
 64 S.W.3d 212 (Tex. App. 2001) ....................................................................... 11

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
 No. C-09-00511 RMW, 2012 U.S. Dist. LEXIS 28865,
 (N.D. Cal. Mar. 5, 2012). ......................................................................... 17, 18

*Fina Research, S.A. v. Baroid Ltd.*,
 141 F.3d 1479 (Fed. Cir. 2008) ........................................................................... 8

*Friedman v. 24 Hour Fitness USA, Inc.*,
 580 F. Supp. 2d 985 (C.D. Cal 2008) ................................................................ 15

*Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*,
 No. Civ. S-05-583 LKK, 2007 U.S. Dist. LEXIS 64017
 (E.D. Cal. Aug. 17, 2007) ................................................................................. 20

*Gardemal v. Westin Hotel Co.*,
 186 F.3d 588 (5th Cir. 1999) ............................................................................ 14

*Gerritsen v. Warner Bros. Entm't*,
 No. CV 14-03305 MMM, 2015 U.S. Dist. LEXIS 84979
 (C.D. Cal. June 12, 2015) ........................................................................... passim

*Gilligan v. Jamco Dev. Corp.*,
 108 F.3d 246 (9th Cir. 1997) .............................................................................. 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-ii-
ACACIA'S NOTICE OF MOTION AND MOTION TO DISMISS
LITIOC/2120002v13/101022-0123

*GMP Tech., LLC v. Zicam, LLC*,
  No. 08-C-7077, 2009 U.S. Dist. LEXIS 115523
  (N.D. Ill. Dec. 9, 2009)................................................................................10

*GoDaddy.com, LLC v. RPost Commun. Ltd.*,
  No. CV-14-00126-PHX-JAT, 2014 U.S. Dist. LEXIS 170011
  (D. Ariz. Dec. 9, 2014)..................................................................................8

*Hoang v. Vinh Phat Supermarket, Inc.*,
  No. Civ. 2:13-00724 WBS GGH, 2013 U.S. Dist. LEXIS 114475
  (E.D. Cal. Aug. 12, 2013)............................................................................15

*In re Netflix Antitrust Litig.*,
  506 F. Supp. 2d 308 (N.D. Cal. 2007) ........................................................13

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*,
  599 F.3d 1377 (Fed. Cir. 2010)....................................................................13

*j2 Global, Inc. v. Fax87.com*,
  Case No. CV 13-05353 DDP, 2014 U.S. Dist. LEXIS 16786
  (C.D. Cal. Feb. 5, 2014) ..............................................................................19

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*,
  394 F.3d 1143 (9th Cir. 2004)..................................................15, 16, 18, 22

*Maloney-Refaie v. Bridge at Sch., Inc.*,
  958 A.2d 871 (2008)....................................................................................16

*Manila Indus. v. Ondova Ltd. Co.*,
  No. 07-55232, 2009 U.S. App. LEXIS 11914
  (9th Cir. June 3, 2009).................................................................................15

*Medimmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ......................................................................................7

*Merial Ltd v. Intervet, Inc.*,
  430 F. Supp. 2d 1357 (N.D. Ga. 2006) ..........................................................9

*Mesler v. Bragg Mgmt. Co.*,
  39 Cal. 3d 290 (1985)..................................................................................22

*Mid-Century Ins. Co. v. Gardner*,
  9 Cal. App. 4th 1205 (1992) ........................................................................19

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-iii-

*MMI, Inc. v. Baja, Inc.*,
  743 F. Supp. 2d 1101 (D. Ariz. 2010) ............................................................... 17

*Motorola Mobility LLC v. AU Optronics Corp.*,
  775 F.3d 816 (7th Cir. 2014) .......................................................................... 22

*Moyo v. Gomez*,
  40 F.3d 982 (9th Cir. 1994) .............................................................................. 6

*Mt. Hood Polaris, Inc. v. Martino (In re Gardner)*,
  563 F.3d 981 (9th Cir. 2009) .......................................................................... 24

*Neilson v. Union Bank of Cal., N.A.*,
  290 F. Supp. 2d 1101 (C.D. Cal. 2003) ........................................................... 20

*NetApp, Inc. v. Nimble Storage, Inc.*,
  No. 5:13-CV-05058-LHK (HRL), 2015 U.S. Dist. LEXIS 11406
  (N.D. Cal. Jan. 29, 2015) ............................................................ 14, 15, 17, 19

*Newmatic Sound Sys. v. Magnacoustics, Inc.*,
  No. C 10-00129 JSW, 2010 U.S. Dist. LEXIS 40018
  (N.D. Cal. Apr. 23, 2010) ............................................................................... 10

*Nordberg v. Trilegiant Corp.*,
  445 F. Supp. 2d 1082 (N.D. Cal. 2006) ...................................................... 15, 19

*Nucal Foods, Inc. v. Quality Egg LLC*,
  887 F. Supp. 2d 977 (E.D. Cal. 2012) ............................................................ 21

*Olympic Capital Corp. v. Newman*,
  276 F. Supp. 646 (C.D. Cal. 1967) ................................................................. 22

*Opp v. St. Paul Fire & Marine Ins. Co.*,
  154 Cal. App. 4th 71 (2007) ........................................................................... 23

*Orosa v. Therakos*, Inc., No. C-11-2143 EMC,
  2011 U.S. Dist. LEXIS 93694
  N.D. Cal. Aug. 22, 2011) ............................................................................... 20

*Plumeau v. School District #40, County of Yamhill*,
  130 F.3d 432 (9th Cir. 1997) .......................................................................... 24

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-iv-

*Quantum Corp. v. Riverbed Tech., Inc.*,
No. C-07-04161 WHA, 2008 U.S. Dist. LEXIS 11348
(N.D. Cal. Feb. 4, 2008) ............................................................................... 10, 23

*Quigley v. Verizon Wireless*,
No. C-11-6212 EMC, 2012 U.S. Dist. LEXIS 75027
(N.D. Cal. May 30, 2012) .................................................................................. 14

*Ryder Truck Rental, Inc. v. Acton Foodservices Corp.*,
554 F. Supp. 277 (C.D. Cal. 1983) .................................................................... 21

*Saint Lawrence Communications LLC v. HTC Corporation et al.*,
Case No. 2:15-cv-00919-JRG (E.D. Tex.) ........................................................ 4

*SanDisk Corp. v. STMicroelectronics, Inc.*,
480 F.3d 1372 (Fed. Cir. 2007) ................................................................... 12, 13

*Sandoval v. Ali*,
34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014) ............................................... 15, 19

*Site Microsurgical Sys., Inc. v. The Cooper Cos., Inc.*,
797 F. Supp. 333 (D. Del. 1992) ........................................................................ 9

*Slottow v. Am. Cas. Co.*,
10 F.3d 1355 (9th Cir. 1993) ............................................................................. 16

*Sonora Diamond Corp. v. Super. Ct.*,
83 Cal. App. 4th 523 (2000) ....................................................................... passim

*Sony Elecs., Inc. v. Digitech Image Techs., LLC*,
No. 12-980-RGA (D. Del. Dec. 11, 2012) ........................................................ 11

*Spine Solutions, Inc. v. Metronic Sofamor Danek, USA, Inc.*,
620 F.3d 1305 (Fed. Cir. 2010) ...................................................................... 8, 9

*Square 1 Bank v. Lo*,
Case No. 12-cv-05595-JSC, 2014 U.S. Dist. LEXIS 117524
(N.D. Cal. Aug. 22, 2014) ................................................................................. 20

*Stewart & Stevenson Serv-Tech, Inc.*,
879 S.W.2d 89, 107 (1994) ............................................................................... 16

*Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*,
608 F. Supp. 2d 1166 (N.D. Cal. 2009) ............................................................ 23

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-v-

ACACIA'S NOTICE OF MOTION AND MOTION TO DISMISS

LITIOC/2120002v13/101022-0123

*Telesaurus VPC, LLC v. Power*,
   623 F.3d 998 (9th Cir. 2010) ........................................................ 6, 24

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
   368 F.3d 1053 (9th Cir. 2004) ..................................................... 6, 24

*Top Victory Elecs. v. Hitachi Ltd.*,
   No. C 10-01579 CRB, 2010 U.S. Dist. LEXIS 125003
   (N.D. Cal. Nov. 15, 2010) .................................................. 7, 8, 10, 11

*Trans-World Int'l v. Smith-Hemion Prods.*,
   972 F. Supp. 1275 (C.D. Cal. 1997) .............................................. 14

*U.S. v. Bennett*,
   621 F.3d 1131 (9th Cir. 2010) ....................................................... 11

*United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades
   Dep't*,
   770 F.3d 834 (9th Cir. 2014) ........................................................ 24

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ................................................................ 15, 17

*Vacek v. United States Postal Serv.*,
   447 F.3d 1248 (9th Cir. 2006) ......................................................... 5

*Veterinary Pathology, Inc. v. Cal. Health Lab., Inc.*,
   116 Cal. App. 3d 111 (1981) ........................................ 14, 15, 17, 18

*Wechsler v. Macke Int'l Trade, Inc.*,
   486 F.3d 1286 (Fed. Cir. 2007) ..................................................... 14

*WiAV Solutions LLC v. Motorola, Inc.*,
   631 F.3d 1257 (Fed. Cir. 2010) ....................................................... 8

*Winner Chevrolet, Inc. v. Universal Underwriters Ins. Co.*,
   No. Civ. S-08-539 LKK, 2008 U.S. ............................................... 20

*Xoxide, Inc., v. Ford Motor Co.*,
   448 F. Supp. 2d 1188 (C.D. Cal. 2006) .......................................... 21

*Z Trim Holdings, Inc. v. Fiberstar, Inc.*,
   No. 06-C-361-C, 2007 U.S. Dist. LEXIS 8569
   (W.D. Wis. Feb. 5, 2007) ............................................................. 10

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-vi-

ACACIA'S NOTICE OF MOTION AND MOTION TO DISMISS

LITIOC/2120002v13/101022-0123

*Z-Line Designs, Inc. v. Bell'O Int'l LLC*,
   218 F.R.D. 663 (N.D. Cal. 2003) ...................................................................... 21

**STATUTES**

28 U.S.C. § 2201 ........................................................................................................ 7

35 U.S.C. § 100 ......................................................................................................... 8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8 ................................................................................................... 6, 5

Fed. R. Civ. P. 12 ................................................................................................. 5, 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-vii-

LITIOC/2120002v13/101022-0123

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.  INTRODUCTION

3   Plaintiffs HTC Corporation ("HTC") and HTC America, Inc.'s (collectively,

4   "Plaintiffs") preemptively filed this action for a declaration for non-infringement

5   against the patent holder, Saint Lawrence Communications LLC ("SLC"), before

6   SLC filed a patent infringement action against Plaintiffs.  Although Plaintiffs and

7   SLC have no jurisdictional ties to the Central District of California, the Complaint

8   improperly joined SLC's corporate parent, Newport Beach based Acacia Research

9   Corporation ("ARC"), in an attempt to justify jurisdiction here.  Plaintiffs' tactic is

10  nothing more than improper forum shopping.  The Complaint against ARC fails as

11  a matter of law and cannot be cured by amendment.

12  First, the Complaint fails to allege a case or controversy between Plaintiffs

13  and ARC because there is no adverse legal interest between the parties.  The law is

14  clear – for a declaration of non-infringement, Plaintiffs may only sue a party that

15  can affirmatively sue for patent infringement, *i.e.*, the patent owner or its exclusive

16  licensee, such as SLC, because only the patent owner or licensee can enforce the

17  patent against Plaintiffs.  The Complaint does not allege any facts (nor can it) that

18  ARC is the owner or exclusive licensee of the patents-in-suit.  ARC's relationship

19  as a corporate parent of SLC is irrelevant because it is black letter law that a

20  stockholder, such as ARC, does not own the assets of a company, such as SLC.

21  Indeed, several courts, including one in the Central District, have dismissed ARC

22  from nearly identical declaratory relief suits.

23  Second, the Complaint does not allege that ARC has undertaken any

24  affirmative conduct to create a case or controversy.  The Complaint attempts to

25  conflate the actions of SLC with ARC, but the binding factual allegations are clear:

26  SLC – not ARC – has enforced the patents in other lawsuits and entered into

27  licensing discussions with Plaintiffs.  There are no factual allegations suggesting

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1

ACACIA'S MOTION TO DISMISS

LITIOC/2120002v13/101022-0123

that ARC has ever attempted to enforce the patents against Plaintiffs or anyone else.  This lack of affirmative conduct precludes a claim against ARC.

Third, apparently recognizing the absence of any actual case or controversy, Plaintiffs resort to a theory that SLC is the purported alter ego of ARC.  However, the Complaint does not allege the critical touchstones for a unity of interest necessary for an alter ego finding such as inadequate capitalization, commingling of assets, or failure to respect corporate formalities.  At most, the Complaint alleges unremarkable facts common in many parent-subsidiary relationships, such as common employees and officers and sharing of office space.  Courts have routinely found such allegations insufficient.  Moreover, the Complaint fails to allege that any fraud or injustice would result if SLC is not treated as an alter ego of ARC because a judgment against SLC would provide Plaintiffs with all of the declaratory relief they seek.  On the other hand, a declaration against ARC for the patents-in-suit would carry no effect and serve only as an advisory opinion because ARC simply has no legal interest in the patents and therefore cannot sue Plaintiffs for patent infringement.  ARC also cannot pierce its own corporate veil to sue Plaintiffs based upon SLC's patents.  Courts within the Central District and other districts routinely grant motions to dismiss on this basis.

Accordingly, ARC respectfully requests that this Court grant its motion to dismiss the Complaint with prejudice.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.   ARC Subsidiary SLC Acquires And Pursues Litigation To Enforce The Patents-In-Suit.

Based in Newport Beach, ARC is a publicly traded corporation listed on the Nasdaq Exchange.  (Declaration of Stephen L. Ram ("Ram Decl."), Ex. 1.)  ARC and its family of companies partner with inventors and other patent holders, ranging from individual inventors and universities to Fortune 500 companies, and

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-2-

ACACIA'S NOTICE OF MOTION AND MOTION TO DISMISS
LITIOC/2120002v13/101022-0123

license those inventors' patented technologies to companies that are practicing the patents without the inventors' consent.  (*Id.* at 3.)  ARC is a corporate parent of SLC.  (Compl. ¶ 5.)

According to the Complaint, SLC received assignments for U.S. Patent Nos. 6,795,805, 6,807,524, 7,151,802, 7,260,521 and 7,191,123 (collectively, the "patents-in-suit") from patent holder VoiceAge Corporation ("VoiceAge") on December 29, 2013.  (Compl. ¶¶ 8, 14.)  The patents-in-suit teach the implementation of the Adaptive Multi-Rate-Wideband ("AMR-WB") speech compression standard for mobile handsets.  (*Id.* ¶ 14.)  The Complaint does not allege that ARC is the owner, exclusive licensee, or has any interest in the patents-in-suit.  (*See* Compl. *passim*.)  Indeed, the publically available records from the U.S. Patent and Trademark Office show that that the patents-in-suit were assigned from VoiceAge to SLC.  (Ram Decl., Ex. 2.)

On April 2, 2014, SLC filed an action against Samsung Electronics Co. Ltd. in the Eastern District of Texas, alleging that Samsung's mobile handsets infringed the patents-in-suit.  (Compl. ¶ 18.)  On November 18, 2014, SLC filed an action against LG Electronics, Inc., also in the Eastern District of Texas, alleging that LG's mobile handsets infringed the patents-in-suit.  (*Id.*)

SLC's German subsidiary, St. Lawrence GmbH ("SLC GmbH"), initiated patent infringement suits in Germany against Deutsche Telekom Deutschland GmbH and Vodafone GmbH ("German Defendants") based on German counterparts to the patents-in-suit (the "German Litigations").  (Compl. ¶ 15.)  SLC GmbH alleges that the German Defendants infringe SLC's GmbH intellectual property, in part, by supplying HTC handsets to their customers that infringe the patents.  (*Id.*)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

ACACIA'S NOTICE OF MOTION AND MOTION TO DISMISS
LITIOC/2120002v13/101022-0123

1    The Complaint does not allege that ARC is a party to the litigations in Texas
2    or Germany.  (*See* Compl. *passim*.)[1]

3    **B.      SLC And SLC GmbH Engage In Licensing Discussions With**
4    **         Plaintiffs.**

5    On December 9, 2014, HTC sent a letter to SLC GmbH to propose
6    negotiations for a license of the subject patents in the German Litigations and/or
7    the SLC patent portfolio as a whole.  (*See* Compl. ¶ 16.)  The letter referred to a
8    SLC website that publishes license rates for the patents-in-suit.  (*See id*. ¶¶ 10, 16.)
9    On December 22, 2014, SLC GmbH responded requesting that HTC execute an
10   enclosed Non-Disclosure Agreement ("NDA") to pursue licensing discussions.
11   (*Id*. ¶ 17.)  HTC executed the NDA on December 26, 2014.  (*Id*.)

12   The Complaint does not allege that ARC was a party to those
13   communications or the NDA.  (*See* Compl. *passim*.)

14   **C.      Plaintiffs Serve Their Complaint After SLC Commences A Patent**
15   **         Infringement Suit.**

16   On June 2, 2015, SLC filed an infringement action on the patents-in-suit
17   against HTC and HTC America, Inc. in the Eastern District of Texas (the
18   "Infringement Action").[2]  ARC is not a party to that action.  (Ram Decl., Exs. 10 &
19   11.)  Despite commencing this action on March 10, 2014, Plaintiffs waited over
20   one-hundred (100) days to serve the Complaint on June 18, 2015, after SLC filed
21   the Infringement Action.  (*Id*., Ex. 3.)

22   While ARC is not a party to any of the patent infringement actions, the
23   Complaint still seeks declaratory relief against ARC purportedly based upon
24   corporate control or alter ego theories.  The Complaint alleges that SLC is an

---

[1] The Complaint and docket from these respective actions reflect that ARC is not a
party to either of the Texas actions.  (*See* Ram Decl., Exs. 5-8; *see also*
concurrently filed ARC's Request for Judicial Notice.)

[2] *Saint Lawrence Communications LLC v. HTC Corporation et al.*, Case No. 2:15-
cv-00919-JRG (E.D. Tex.).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

ACACIA'S NOTICE OF MOTION AND MOTION TO DISMISS
LITIOC/2120002v13/101022-0123

1  indirect subsidiary of ARC, and that ARC and SLC share a business address or

2  office in Plano, Texas.  (Compl. ¶ 8.)  On information and belief, the Complaint

3  alleges that SLC has no employees or officers who are not shared with ARC and

4  identifies two purported individuals.  (*Id*. ¶¶ 8-9.)  Finally, the Complaint alleges

5  that SLC's website <http://web.saintlawrencegmbh.com> was registered by ARC

6  and lists ARC's headquarters in Newport Beach as the sole registrant and

7  administrator.  (*Id*. ¶ 10.)  "Based on all of these facts," the Complaint concludes

8  that "Acacia Research exercises complete control over Saint Lawrence, which is a

9  mere shell company and alter ego[.]"  (*Id*. ¶ 11.)  The Complaint alleges that

10  "[a]llowing Acacia Research to avoid jurisdiction and venue through an alter ego

11  shell company would be unjust," but the Complaint does not allege any particular

12  fraud or injustice.  (*Id*.)

13       ARC now moves to dismiss.

14  **III.   ARGUMENT**

15       **A.   Legal Standard**

16       Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a

17  complaint for lack of subject matter jurisdiction.  Because federal courts are courts

18  of limited jurisdiction, it is "presumed that a cause lies outside this limited

19  jurisdiction, and the burden of establishing the contrary rests upon the party

20  asserting jurisdiction."  *Vacek v. United States Postal Serv*., 447 F.3d 1248, 1250

21  (9th Cir. 2006).

22       A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the

23  claims asserted in a complaint.  The issue on a motion to dismiss for failure to state

24  a claim is not whether the claimant will ultimately prevail, but whether the

25  claimant is entitled to offer evidence to support the claims asserted.  *Gilligan v.*

26  *Jamco Dev. Corp*., 108 F.3d 246, 249 (9th Cir. 1997).  Rule 12(b)(6) is read in

27  conjunction with Rule 8(a), which requires a short and plain statement of the claim

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-5-

ACACIA'S NOTICE OF MOTION AND MOTION TO DISMISS
LITIOC/2120002v13/101022-0123

1   showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  When

2   evaluating a Rule 12(b)(6) motion, the district court accepts all material allegations

3   in the complaint as true and construes them in the light most favorable to the non-

4   moving party.  *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994).  However, "the

5   tenet that a court must accept as true all of the allegations contained in a complaint

6   is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009);

7   *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that while a

8   complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

9   factual allegations, courts "are not bound to accept as true a legal conclusion

10  couched as a factual allegation.") (citations and quotations omitted).

11      Although the district court should grant leave to amend if the complaint can

12  be cured by additional factual allegations, the district court need not grant leave if

13  amendment of the complaint would be futile.  *Thinket Ink Info. Res., Inc. v. Sun

14  Microsystems*, *Inc*., 368 F.3d 1053, 1061 (9th Cir. 2004).  "When a proposed

15  amendment would be futile, there is no need to prolong the litigation by permitting

16  further amendment."  *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1088 (9th

17  Cir. 2002) (affirming trial court's denial of leave to amend where plaintiffs could

18  not cure a basic flaw — inability to demonstrate standing — in their pleading).

19  Therefore, a court may decline leave to amend "if it determines that allegation of

20  other facts consistent with the challenged pleading could not possibly cure the

21  deficiency ..." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010)

22  (citation omitted).

23  **B.      The Complaint Does Not State A Case Or Controversy Between**

24          **Plaintiffs And ARC For Declaratory Relief.**

25      Plaintiffs improperly seek declarations of non-infringement against ARC for

26  each of the patents-in-suit.  The elements of the declaratory relief claim are co-

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-6-

ACACIA'S NOTICE OF MOTION AND MOTION TO DISMISS
LITIOC/2120002v13/101022-0123

extensive with Article III standing.  The Declaratory Judgment Act provides in pertinent part:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree....

28 U.S.C. § 2201(a).  "[T]he phrase 'case of actual controversy' ... refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007).  A court's exercise of jurisdiction must resolve a "substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id.*; *Arris Group Inc. v. British Telecomm. PLC*, 639 F.3d 1368, 1374 (Fed. Cir. 2011).

        **1.**      **There is No Case Or Controversy Between Plaintiffs And ARC Because There Is No Adverse Legal Interest Between The Parties.**

           **a.**      **ARC Cannot Sue Plaintiffs For Infringement Because ARC Is Not An Owner Or Licensee Of The Patents.**

The Complaint does not (and cannot) allege that ARC owns or is the exclusive licensee for the patents-in-suit, and therefore, there can be no case or controversy.  A proper defendant in a declaratory relief action for non-infringement is a party who has standing to sue as a plaintiff in an infringement action.  *Top Victory Elecs. v. Hitachi Ltd.*, No. C 10-01579 CRB, 2010 U.S. Dist. LEXIS 125003, at *6-10 (N.D. Cal. Nov. 15, 2010) (citing *Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1481 (Fed. Cir. 2008) (table case)).  Standing in an

1  infringement action rests with the patent owner or the exclusive licensee.  35

2  U.S.C. §§ 100, 281; *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264

3  (Fed. Cir. 2010); *Spine Solutions, Inc. v. Metronic Sofamor Danek, USA, Inc.*, 620

4  F.3d 1305, 1317-18 (Fed. Cir. 2010).

5       If a party lacks standing to sue for patent infringement because it has no

6  legal interest in the patents-in-suit, then there is no case or controversy that would

7  support jurisdiction under the Declaratory Judgment Act.  *Fina Research,* 141 F.3d

8  at 1480-81 (holding that "because [the defendant] had no legal interest in the two

9  patents [in suit] and therefore could not bring suit for patent infringement, there

10  was no actual controversy between [the parties] that would support jurisdiction

11  under the Declaratory Judgment Act"); *GoDaddy.com, LLC v. RPost Commun.*

12  *Ltd.*, No. CV-14-00126-PHX-JAT, 2014 U.S. Dist. LEXIS 170011, at *18 (D.

13  Ariz. Dec. 9, 2014) (finding plaintiff failed to show that defendants had any right,

14  title, or interest in the patents and, therefore, the court lacked subject matter

15  jurisdiction over declaratory judgment claims against defendants); *Top Victory*

16  *Elecs.*, 2010 U.S. Dist. LEXIS 125003, at *2 (same).

17       Here, the Complaint does not allege that ARC has a legal interest in the

18  patents-in-suit to provide it with standing to sue Plaintiffs affirmatively for

19  infringement.  The Complaint does not allege that ARC owns the patents-in-suit.

20  (*See* Compl. *passim.*)  The Complaint also does not allege that ARC is the

21  exclusive licensee of the patents.  (*See* Compl. *passim.*)  The lack of such

22  averments is fatal to Plaintiffs' declaratory relief claims.

23       Plaintiffs cannot cure these deficiencies.  The Complaint admits that

24  VoiceAge assigned the patents-in-suit to SLC.  (Compl. ¶ 13.)  SLC, thus, owns

25  the patents-in-suit.  (*Id.*)  The simple fact is ARC has never had any ownership

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-8-

ACACIA'S NOTICE OF MOTION AND MOTION TO DISMISS

LITIOC/2120002v13/101022-0123

interest or license for the patents-in-suit.[3]  Therefore, there can be no case or controversy between Plaintiffs and ARC.

        **b.**    **A Parent Company Of A Patent Holder Is Not A Proper Defendant For A Declaratory Relief Claim.**

ARC's purported "control" as a corporate parent of SLC does not salvage the Complaint.  The Federal Circuit and district courts across the country have consistently held that a parent corporation does not have standing for an infringement action where its subsidiary is the actual patent owner.  *See Spine Solutions, Inc.,* 620 F.3d at 1317-19 (holding that parent and sister companies of actual patent owner lacked standing to sue for infringement); *Merial Ltd v. Intervet, Inc.,* 430 F. Supp. 2d 1357, 1361-63 (N.D. Ga. 2006) (granting motion to dismiss parent corporation's infringement suit; finding that "standing under the Patent Act cannot be based on the mere fact that Merial SAS is a wholly-owned subsidiary of Merial"); *Depuy, Inc. v. Zimmer Holdings, Inc.,* 384 F. Supp. 2d 1237, 1239-41 (N.D. Ill. 2005) (granting motion to dismiss parent corporation's infringement suit; finding that "[f]or this is the garden-variety case ... in which suit is brought by an entity that does not own the property right that it is suing to enforce."); *Beam Laser Sys., Inc. v. Cox Commun'ns, Inc.,* 117 F. Supp. 2d 515, 520-21 (E.D. Va. 2000) (granting motion  to dismiss sole shareholder's infringement suit; finding that "[o]wnership of corporate stock does not create equitable title in that corporation's property."); *Site Microsurgical Sys., Inc. v. The Cooper Cos., Inc.,* 797 F. Supp. 333, 337-39 (D. Del. 1992) (denying motion for leave to join parent corporation in infringement suit; finding that "Site [subsidiary] holds legal title to the patents and it is a separate, operational corporation.  Iolab

---

[3] The records of U.S. Patent and Trademark Office reflect that ARC never received an assignment of the patents-in-suit.  (Ram Decl., Ex. 2; *see also* ARC's Request for Judicial Notice.)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

ACACIA'S NOTICE OF MOTION AND MOTION TO DISMISS

LITIOC/2120002v13/101022-0123

1   [parent] cannot be deemed to 'effectively control the patent' merely because it

2   owns and exercises control over its subsidiary.") (internal citations omitted).[4]

3        The decision in *Top Victory Electronics v. Hitachi Ltd.* is directly on point.

4   There, Hitachi, Ltd. assigned a series of patents to two of its subsidiaries.  2010

5   U.S. Dist. LEXIS 125003, at *2-3.  Plaintiffs brought a declaratory relief action

6   seeking a non-infringement determination against Hitachi and another company

7   concerning Hitachi's former patents.  *Id*. at *1.  Hitachi moved to dismiss for lack

8   of subject matter jurisdiction; the court granted the motion.  The court recognized

9   that because only a party with legal title to a patent, *i.e.*, the owner or exclusive

10  licensee, has standing to bring an infringement suit, only that party is a proper

11  defendant for a non-infringement declaratory relief action.  *Id*. at *7-9.  The court

12  found that Hitachi no longer had a direct interest in the patents because Hitachi had

13  assigned all rights to the patents to its subsidiaries and retained no ownership

14  interest or exclusive license.  *Id*. at *9-10.  The court also rejected plaintiffs'

15  argument that Hitachi held equitable title to the patents through the parent-

16  subsidiary relationship:  "That a corporate parent's subsidiary owns a patent is not

17  enough to establish that the parent has rights in the subsidiary's patents."  *Id*. at

18  *11 (citation omitted).[5]

19       Indeed, it is black letter corporate law that a shareholder does not own the

20  assets of a company.  *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) ("A

---

[4] *See also Quantum Corp. v. Riverbed Tech., Inc.*, No. C-07-04161 WHA, 2008
U.S. Dist. LEXIS 11348, at *7-8 (N.D. Cal. Feb. 4, 2008) (granting motion to
dismiss parent corporation's infringement suit, finding in part that "Quantum's
[parent company] control of its subsidiaries is insufficient to confer standing"); *Z
Trim Holdings, Inc. v. Fiberstar, Inc.*, No. 06-C-361-C, 2007 U.S. Dist. LEXIS
8569, at *11-13 (W.D. Wis. Feb. 5, 2007) (same).

[5] *See also, e.g., GMP Tech., LLC v. Zicam, LLC*, No. 08-C-7077, 2009 U.S. Dist.
LEXIS 115523, at *5-6 (N.D. Ill. Dec. 9, 2009) (dismissing declaratory relief
against parent company, where the parent company did not own or have an
exclusive license for the patents); *see also Newmatic Sound Sys. v. Magnacoustics,
Inc.*, No. C 10-00129 JSW, 2010 U.S. Dist. LEXIS 40018, at *4-10 (N.D. Cal.
Apr. 23, 2010).

ACACIA'S NOTICE OF MOTION AND MOTION TO DISMISS

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

LITIOC/2120002v13/101022-0123

1  corporate parent which owns the shares of a subsidiary does not, for that reason

2  alone, own or have legal title to the assets of the subsidiary."); *U.S. v. Bennett*, 621

3  F.3d 1131, 1136 (9th Cir. 2010) ("Today, it almost goes without saying that a

4  parent corporation does not own the assets of its wholly-owned subsidiary by

5  virtue of that relationship alone.").[6]

6      Recognizing these principles, courts have granted ARC's motions to dismiss

7  in nearly identical declaratory relief actions.  For example, in *Digitech Image*

8  *Technologies, LLC v. Newegg Inc.*, Digitech, the owner of the patent in suit, sued

9  Newegg for patent infringement.  Case No. 2:12-cv-01688-ODW (MRWx), 2013

10 U.S. Dist. LEXIS 63828, at *3 (C.D. Cal. May 3, 2013).  ARC, Digitech's ultimate

11 parent company, was brought into that case when Newegg counterclaimed against

12 Digitech and ARC seeking a declaratory judgment of non-infringement and

13 invalidity.  *Id.*  Like Plaintiffs' Complaint, Newegg's counterclaim did not allege

14 that ARC was the present owner, assignee, or exclusive licensee of the patent.  *Id.*

15 at *4.  Newegg instead alleged that the parent-subsidiary relationship between

16 ARC and Digitech created a controversy sufficient to confer standing under the

17 Declaratory Judgment Act.  *Id.*  The *Digitech* court disagreed.  Following *Top*

18 *Victory Electronics*, the court held that ARC's parent-subsidiary relationship with

19 Digitech did not create any cognizable interest in the patent-in-suit—legal or

20 equitable—and ARC therefore would lack standing to sue Newegg for either legal

21 or equitable relief.  *Id.* at *10-11 (following *Top Victory Elecs.*, 2010 U.S. Dist.

22 LEXIS 125003, at *11; *see also* Ram Decl., Ex. 4 (*Sony Elecs., Inc. v. Digitech*

23 *Image Techs., LLC*, No. 12-980-RGA (D. Del. Dec. 11, 2012) (order granting

24 motion to dismiss for lack of subject matter jurisdiction in declaratory relief action;

25

26 ─────────────
[6] *Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684, 686-87
(Del. 1959) ("The shareholder's essential right is to share in the profits and in the
27 distribution of assets on liquidation.  He has no interest of any specific assets of the
corporation.") (citations omitted)); *see also Drilltec Techs., Inc. v. Remp*, 64
28 S.W.3d 212, 217 (Tex. App. 2001) (same; applying Texas law).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

ACACIA'S NOTICE OF MOTION AND MOTION TO DISMISS

LITIOC/2120002v13/101022-0123

1  "Sony counters by arguing that Acacia controls Digitech.  Assuming that is the

2  case, it still does not make any sense to me that although Acacia cannot sue Sony

3  to enforce the patent, Sony can sue Acacia to prevent enforcement of the patent.").

4  Ultimately, ARC's corporate "control" as a parent of SLC does not translate

5  into ownership or equitable title to the patents-in-suit to create standing to

6  affirmatively sue for infringement.

7  ## 2.   The Complaint Does Not Allege ARC Took Any Affirmative

8  ## Act To Enforce Any Right Concerning The Patents-In-Suit.

9  Even if the Complaint alleged that ARC had an ownership interest in the

10  patents-in-suit (which it does not), the declaratory relief claims still fail because

11  there is no injury in fact.  "[T]o establish an injury in fact traceable to the patentee,

12  a declaratory judgment plaintiff must allege both (1) an affirmative act by the

13  patentee related to the enforcement of his patent rights, and (2) meaningful

14  preparation to conduct potentially infringing activity."  *Ass'n for Molecular*

15  *Pathology v. United States PTO*, 653 F.3d 1329, 1343-48 (Fed. Cir. 2011) (internal

16  citations omitted); *see also SanDisk Corp. v. STMicroelectronics, Inc*., 480 F.3d

17  1372, 1380-81 (Fed. Cir. 2007) (discussing affirmative act requirement).  The

18  Complaint does not allege that ARC took any affirmative acts to attempt to enforce

19  the patents-in-suit against Plaintiffs to warrant declaratory relief.

20  First, SLC – and not ARC – initiated and is a party to the lawsuits discussed

21  in the Complaint.  The Complaint admits that SLC GmbH filed the German

22  Litigations.  (Compl. ¶ 15.)  Despite the binding factual allegation, the Complaint

23  still offers a misleading allegation that "Acacia Research has also taken legal

24  action against HTC mobile handsets by, among other things, seeking to enjoin their

25  sale and use through the German Litigations."  (*Id*. ¶ 19.)  Yet, the Complaint does

26  not (and cannot) allege that ARC is a party to the German Litigations.  (*See* Compl.

27  *passim*.)  Similarly, the Complaint admits that SLC – not ARC – filed the Texas

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-12-

LITIOC/2120002v13/101022-0123

1    lawsuits against Samsung and LG.  (*Id*. ¶ 18.)  Despite those allegations, the

2    Complaint offers another misleading allegation that "Acacia Research has also

3    filed at least two lawsuits in the United States against competitors of HTC in the

4    mobile handset market (*i.e.*, Samsung and LG)."  (*Id*. ¶ 19.)  Again, however, the

5    Complaint does not (and cannot) allege that ARC is a party to those litigations.[7]

6    (*See* Compl. *passim*.)  Plaintiffs' legal conclusions couched as factual allegations

7    must be rejected.  *See*, *e.g.*, *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

8           Second, the Complaint does not allege that ARC ever attempted to enforce

9    the patents.  (*See* Compl. *passim*.)  The Complaint admits that SLC GmbH asked

10   HTC to execute an NDA to pursue licensing discussions covering the patents-in-

11   suit.  (Compl. ¶¶ 16-17.)  The Complaint does not allege that ARC was a party to

12   that communication or to the NDA.  (*See* Compl. *passim*.)

13          As a result, the lack of any affirmative conduct by ARC precludes a claim

14   against ARC.  *See SanDisk Corp.*, 480 F.3d at 1380-81; *see also Innovative*

15   *Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1382 (Fed. Cir. 2010)

16   (affirming dismissal of a declaratory judgment claim because the complaint did not

17   allege an affirmative act by the patent holder); *In re Netflix Antitrust Litig.*, 506 F.

18   Supp. 2d 308, 318 (N.D. Cal. 2007) (defendant's alleged notification of a patent

19   did not support the affirmative act for a declaratory relief claim).

20   **C.     The Alter Ego Theory Fails Because The Complaint Fails To**

21   **Allege Essential Requirements And Such A Theory Would Still**

22   **Not Create A Case Or Controversy.**

23          Plaintiffs' alter ego theory is a last ditch effort to manufacture a basis for suit

24   against ARC.  The theory fails for two independent reasons.  First, Plaintiffs do not

25   allege facts remotely sufficient to establish the unity of interest element or detail

26   any fraud or injustice that would occur should SLC not be found to be an alter ego

27

28
_____
[7] The judicially noticeable records of those courts reflect that ARC is not a party to those actions.  (Ram Decl., Exs. 5-8.)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1    of ARC.  Second, even if Plaintiffs had sufficiently plead an alter ego claim, such

2    an alter ego relationship would still not create a case or controversy between

3    Plaintiffs and ARC because ARC cannot pierce its own corporate veil to sue based

4    upon SLC's patents.

5                    **1.    Plaintiffs Do Not Allege Facts Sufficient To Establish An**

6                           **Alter Ego Relationship.**

7           The Complaint fails to allege the essential requirements of alter ego theory

8    necessary to disregard corporate separateness.  To establish alter ego liability, a

9    plaintiff must establish:  "(1) that there is such unity of interest and ownership that

10   the separate personalities [of the entities] no longer exists and (2) that failure to

11   disregard [their separate entities] would result in fraud or injustice."  *Doe v.*

12   *Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001); *Yellow Pages.com, LLC*, 780 F.

13   Supp. 2d 1028, 1035 (S.D. Cal. 2011); *see also Veterinary Pathology, Inc. v. Cal.*

14   *Health Lab., Inc.*, 116 Cal. App. 3d 111, 119 (1981).[8]  Alter ego is an extreme

15   remedy, sparingly used.  *Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th

16   523, 539 (2000).  "Conclusory allegations of 'alter ego' status are insufficient to

---

17
[8]  Because the alter ego issue is not unique to patent law, the law of the regional
18   circuit applies.  *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1295 (Fed.
     Cir. 2007) (citing *Insituform Techs., Inc. v. Cat Contr., Inc.*, 385 F.3d 1360, 1380
19   (Fed. Cir. 2004)).  The Ninth Circuit applies the law of the forum state, in this case
     California, to determine whether alter ego liability applies.  *NetApp, Inc. v. Nimble*
20   *Storage, Inc.*, No. 5:13-CV-05058-LHK (HRL), 2015 U.S. Dist. LEXIS 11406, at
     *16 (N.D. Cal. Jan. 29, 2015) (citing *SEC v. Hickey*, 322 F.3d 1123, 1128 (9th Cir.
21   2003)); *Quigley v. Verizon Wireless*, No. C-11-6212 EMC, 2012 U.S. Dist. LEXIS
     75027, at *8 (N.D. Cal. May 30, 2012).  In order to evaluate Plaintiffs' alter ego
22   allegations, the Court need not decide whether to apply the law of the forum state,
     Texas law based upon the alleged alter ego SLC's incorporation, or Delaware law
23   based upon ARC's incorporation because the result is the same applying the law of
     any of the aforementioned jurisdictions.  Under Texas law, a court will pierce the
24   corporate veil when there is such unity between the parent corporation and its
     subsidiary that the separateness of the two corporations has ceased and holding
25   only the subsidiary corporation liable would result in injustice.  *Bollore S.A. v.*
     *Imp. Warehouse, Inc.*, 448 F.3d 317, 326 (5th Cir. 2006) (applying Texas law);
26   *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 593 (5th Cir. 1999) (applying Texas
     law).  Delaware courts apply a similar test.  *See, e.g.*, *Trans-World Int'l v. Smith-*
27   *Hemion Prods.*, 972 F. Supp. 1275, 1291 (C.D. Cal. 1997) (applying law of
     California and Delaware); *Boston Scientific Corp. v. Wall Cardiovascular Tech.*
28   *LLC*, 647 F. Supp. 2d 358, 366-67 (D. Del. 2009).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH
                                                    -14-
                     ACACIA'S NOTICE OF MOTION AND MOTION TO DISMISS
LITIOC/2120002v13/101022-0123

1   state a claim.  Rather, a plaintiff must allege specifically both of the elements of

2   alter ego liability, as well as facts supporting each."  *Sandoval v. Ali*, 34 F. Supp.

3   3d 1031, 1040 (N.D. Cal. 2014) (quoting *Neilson v. Union Bank of Cal*., *N.A*., 290

4   F. Supp. 2d 1101, 1116 (C.D. Cal. 2003)); *see Hoang v. Vinh Phat Supermarket,*

5   *Inc*., No. Civ. 2:13-00724 WBS GGH, 2013 U.S. Dist. LEXIS 114475, at *41

6   (E.D. Cal. Aug. 12, 2013) (same).

7           **a.**      **The Complaint Does Not Allege A Unity Of Interest.**

8         The Complaint's allegations are insufficient to establish that there is a unity

9   of interest between ARC and SLC.  To satisfy the unity of interest element,

10  Plaintiffs' allegations must show that the "separate personalities [of the entities] no

11  longer exist[.]"  *Unocal Corp.*, 248 F.3d at 926; *see Inst. of Veterinary Pathology,*

12  116 Cal. App. 3d at 119.  In *United States v. Bestfoods*, 524 U.S. 51 (1998), the

13  Supreme Court recognized that it is entirely appropriate (and common) for

14  corporations to have wholly owned subsidiaries which are not the alter egos of

15  their parent corporation.  *Id*. at 69.  "The mere fact of sole ownership and control

16  does not eviscerate the separate corporate identity that is the foundation of

17  corporate law."  *Katzir's Floor & Home Design, Inc.*, 394 F.3d at 1149; *Sandoval*,

18  34 F. Supp. 3d at 1040 ("Common ownership alone is insufficient to disregard the

19  corporate form."); *see also Gerritsen v. Warner Bros. Entm't*, No. CV 14-03305

20  MMM (CWx), 2015 U.S. Dist. LEXIS 84979, at *75 (C.D. Cal. June 12, 2015)

21  ("As the Ninth Circuit and California courts have routinely observed . . . in and of

22  itself, a parent's complete control of a subsidiary does not show that there is an

23  alter ego relationship between the two.").[9]

24  ─────────────────────

25  [9] *See also Nordberg v. Trilegiant Corp*., 445 F. Supp. 2d 1082, 1102 (N.D. Cal. 2006), *abrogated on other grounds as stated in Friedman v. 24 Hour Fitness USA, Inc*., 580 F. Supp. 2d 985, 993 (C.D. Cal 2008) ("[I]t is clear that such routine

26  control of a subsidiary by a parent is insufficient to support the contention that a subsidiary is a mere instrumentality."); *Manila Indus. v. Ondova Ltd. Co*., No. 07-

27  55232, 2009 U.S. App. LEXIS 11914, at *3 (9th Cir. June 3, 2009) (finding sole ownership insufficient to show the unity of interest required to pierce the corporate

28  veil, and exercise jurisdiction over defendant as an alter ego); *NetApp, Inc*., 2015

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-15-

ACACIA'S NOTICE OF MOTION AND MOTION TO DISMISS

LITIOC/2120002v13/101022-0123

While courts employ a totality of the circumstances approach, *Sonora Diamond*, 83 Cal. App. 4th at 539;[10] the Ninth Circuit has found that "critical facts" needed to establish alter ego liability include:  "inadequate capitalization, commingling of assets, [or] disregard of corporate formalities." *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) (citing *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269 (1994)); *see also Slottow v. Am. Cas. Co.*, 10 F.3d 1355, 1360 (9th Cir. 1993).  None of these critical factors are alleged in the Complaint.  The Complaint makes <u>no</u> mention of SLC's capitalization, let alone if it is inadequately capitalized.  (*See* Compl. *passim*.)  The Complaint also does <u>not</u> allege that any commingling of asserts or failure to observe corporate formalities.  (*See* Compl. *passim*.)

Instead, the Complaint alleges two (2) purported facts that are insufficient to establish alter ego liability.  <u>First</u>, the Complaint suggests that SLC shares an office with ARC in Texas and that SLC's website lists the address of ARC's headquarters as the sole registrant and administrator.[11]  (Compl. ¶¶ 8, 10.)  This allegation is insignificant.  Shared office space and websites are unremarkable and common in parent-subsidiary relationships.  *Gerritsen*, 2015 U.S. Dist. LEXIS 84979, at *77 ("[T]he fact that a parent and subsidiary share the same office location, or the same website and telephone number, does not necessarily reflect an abuse of the

---

U.S. Dist. LEXIS 11406, at *20-28 (holding alleged facts, including 100% control of subsidiary by parent, are typical of parent-subsidiary relationship and, without more, are not suggestive of a unity of interest).

[10] Delaware and Texas law use a similar totality of circumstances inquiry for the unity of interest element.  *See, e.g.*, *Maloney-Refaie v. Bridge at Sch., Inc.*, 958 A.2d 871, 881 (2008) (applying Delaware law, listing factors); *Stewart & Stevenson Serv-Tech, Inc.*, 879 S.W.2d 89, 107 (1994) (applying Texas law, listing factors).

[11] In the Complaint's alter ego allegations, the Complaint alleges that VoiceAge assigned the patents-in-suit to SLC approximately two weeks after SLC's formation.  (Compl. ¶¶ 8 & 13.)  It is unclear how an unaffiliated third party's assignment of patents or any other asset has any bearing on the factors considered for the unity of interest element.  Instead, the allegation only supports the simple fact that SLC, not ARC, received the legal interest and title to the patents-in-suit.

-16-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1  corporate form and existence of an alter ego relationship."); *NetApp, Inc.*, 2015

2  U.S. Dist. LEXIS 11406, at *25 ("[T]he allegation that Nimble and Nimble AUS

3  share a website and email is an administrative[ ] function.  Shared administrative

4  functions are not necessarily indicative of an alter ego relationship.") (citation

5  omitted); *see MMI, Inc. v. Baja, Inc.*, 743 F. Supp. 2d 1101, 1111 (D. Ariz. 2010);

6  *Cherrone v. Florsheim Dev.*, Civ. No. 2:12-02069 WBS CKD, 2012 U.S. Dist.

7  LEXIS 172778, at *11 (E.D. Cal. Dec. 4, 2012); *Sonora Diamond*, 83 Cal. App.

8  4th at 539; *Inst. of Veterinary Pathology, Inc.*, 116 Cal. App. 3d at 119.

9      <u>Second</u>, the Complaint alleges that ARC and SLC share a common

10  employee and a common officer.  (Compl. ¶¶ 8-9.)  However, it is entirely

11  appropriate and expected for a parent company's officers and directors to serve as

12  officers and directors of its subsidiary, "and that fact alone may not serve to expose

13  the parent corporation to liability for its subsidiary's acts."  *Bestfoods,* 524 U.S. at

14  69 (finding it is "normal" for a parent and a subsidiary to have identical officers)

15  (citation omitted); *see, e.g., Gerritsen,* 2015 U.S. Dist. LEXIS 84979, at *76

16  ("Overlap between a parent's and a subsidiary's directors or executive leadership

17  alone, however, is not suggestive of a unity of interest"); *NetApp, Inc.*, 2015 U.S.

18  Dist. LEXIS 11406, at *21-22 (same); *Sonora Diamond Corp.*, 83 Cal. App. 4th at

19  548-49 ("It is considered a normal attribute of ownership that officers and directors

20  of the parent serve as officers and directors of the subsidiary.") (citation omitted).

21      Courts have rejected similar factual averments as insufficient to support the

22  unity of interest element.  In *Eclectic Properties East, LLC v. Marcus & Millichap*

23  *Co.*, the court found plaintiffs' alter ego allegations insufficient where plaintiffs

24  alleged "a unity of interest and ownership between the corporation and its

25  subsidiary based on the alleged facts that they occupy the same company

26  headquarters, share the same principals, share many of the same employees and

27  agents, and share the same corporate philosophy and operating principals."  No. C-

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-17-

ACACIA'S NOTICE OF MOTION AND MOTION TO DISMISS
LITIOC/2120002v13/101022-0123

1   09-00511 RMW, 2012 U.S. Dist. LEXIS 28865, at *16-17 (N.D. Cal. Mar. 5,

2   2012).  Plaintiffs also alleged that the parent company owned one hundred percent

3   (100%) of the stock of the subsidiary and that the co-founders and co-chairman of

4   the parent were the registered principals of the subsidiary.  *Id*.  Additionally,

5   plaintiffs alleged that marketing materials referred to the companies

6   interchangeably and that, as a result, plaintiffs had no way to discern with which

7   entity they were dealing.  *Id*.  The district court found that such allegations were

8   insufficient because they did not allege facts that could support a finding of

9   inadequate capitalization, commingling of assets, or disregard of corporate

10   formalities.  *Id*. at *17-18.  Further, plaintiffs did not allege any facts showing that

11   an inequitable result would follow from respecting corporate separateness.  *Id*. at

12   *19.

13      Similarly, in *Sonora Diamond*, the Court of Appeal rejected alter ego and

14   agency theories for personal jurisdiction, finding that Diamond's ownership and

15   use of Sonora Mining to operate in California, interlocking directors and officers,

16   Diamond's financial guarantees for Sonora Mining, and consolidated financing

17   reporting, among other factors, taken individually or collectively were insufficient.

18   83 Cal. App. 4th at 538-40, 546-51; *see also Katzir's Floor & Home Design*, 394

19   F.3d at 1149-50; *Inst. of Veterinary Pathology*, 116 Cal. App. 3d at 117-20.

20      The Complaint, even when viewed in a light most favorable to Plaintiffs,

21   reveals nothing more than a typical corporate relationship between a parent and

22   subsidiary.[12]  As in *Eclectic* and *Sonora Diamond*, these sparse allegations clearly

---

[12] HTC and its affiliates have an interwoven corporate structure similar to the
allegations Plaintiffs suggest would amount to alter ego.  In HTC's publicly
available Annual Report, HTC details that it controls more than fifty (50) direct
and indirect subsidiaries (Ram Decl., Ex. 9 at 143), that the HTC companies have
interlocking officers and directors, (*Id*. at 55, 61-63, 151), and several subsidiaries
share the same offices, including that Plaintiff HTC America, Inc. shares offices in
Bellevue, Washington with parent company HTC America Holding Inc. and sister
companies HTC America Innovation, Inc. and HTC America Content Services,
Inc.  (*Id*. at 146.)  And, apparently, HTC's board of directors exercises actual
control of its subsidiaries by making decisions for the subsidiaries, including

-18-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

ACACIA'S NOTICE OF MOTION AND MOTION TO DISMISS
LITIOC/2120002v13/101022-0123

1   are insufficient to plead "unity of interest."  District courts routinely dismiss alter

2   ego claims based on similar allegations.  *See Sandoval*, 34 F. Supp. 3d at 1040

3   ("Plaintiffs' alter ego allegations are too conclusory to survive a motion to dismiss.

4   Not only are Plaintiffs' allegations 'on information and belief' about a unity of

5   interest between all Defendants conclusory, but Plaintiffs have also not adequately

6   alleged that inequity would result from respecting the corporate form of

7   Defendants."); *Gerritsen*, 2015 U.S. Dist. LEXIS 84979, at *75-86 (concluding

8   allegations that parent owned subsidiaries, shared board members, officers,

9   employees and same office location and telephone number, and comingled funds

10  with subsidiary were insufficient to allege unity of interest relationship ).[13]

### b.   The Complaint Does Not Allege Any Fraud Or Injustice.

13      The Complaint also fails to plead a "fraud or injustice."  The second prong

14  of the alter ego test requires the court to consider whether respecting the separate

15  entities may result in fraud or injustice.  *See Unocal*, 248 F.3d at 928; *see Sonora*

16  *Diamond*, 83 Cal. App. 4th at 537 ("[T]he alter ego doctrine does not guard every

17  unsatisfied creditor of a corporation but instead affords protection where some

18  conduct amounting to bad faith makes it inequitable for the corporate owner to

19  hide behind the corporate form.").  There can be no fraud or injustice where a

20  plaintiff is not harmed by recognition of separate corporate identities.  *See*, *e.g.*,

21  *Mid-Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205 (1992).

---

"[a]dopt[ing] resolution on the capital injection from Company's subsidiary HTC
America Holding Inc. to its subsidiary HTC America Inc." (*Id.* at 89 (Board of
directors meeting dated May 6, 2014).)

[13] *See also Nordberg*, 445 F. Supp. 2d at 1101-02 (dismissing alter ego claim;
"Based on the lack of any pleaded facts supporting either the notion that inequity
will result or that Trilegiant is a mere instrument of Cendant, plaintiffs' alter ego
claims must fail."); *NetApp, Inc.*, 2015 U.S. Dist. LEXIS 11406, at *27-28
(dismissing alter ego claim for failure to sufficiently allege unity of interest
without reaching fraud or injustice prong); *j2 Global, Inc. v. Fax87.com*, Case No.
CV 13-05353 DDP (AJWx), 2014 U.S. Dist. LEXIS 16786, at *10 (C.D. Cal. Feb.
5, 2014) (same).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-19-

ACACIA'S NOTICE OF MOTION AND MOTION TO DISMISS

LITIOC/2120002v13/101022-0123

1  By the very nature of the Complaint's prayer, Plaintiffs simply cannot allege

2  fraud or injustice.  Plaintiffs only seek a declaration of non-infringement.  There is

3  no reason why SLC cannot "satisfy" such a potential judgment because SLC owns

4  the patents-in-suit and (if Plaintiffs prevail on their claims) and SLC would be

5  bound by a judgment that Plaintiffs' products do not infringe the patents-in-suit.

6  (Compl. ¶ 8.)  Plaintiffs cannot aver any harm by recognizing ARC and SLC's

7  separate corporate identities, when Plaintiffs may receive all the relief they request

8  from SLC.  *See*, *e.g.*, *Gerritsen*, 2015 U.S. Dist. LEXIS 84979, at *86 (dismissing

9  complaint where court could not find that an inequitable result would follow if the

10  corporate separateness of the defendant entities was not disregarded); *Neilson*, 290

11  F. Supp. 2d at 1117 (pleading failed to allege injustice prong of alter ego theory

12  where it stated that plaintiffs would suffer an inequitable result but "fail[ed] to

13  allege facts supporting this statement"); *Square 1 Bank v. Lo*, Case No. 12-cv-

14  05595-JSC, 2014 U.S. Dist. LEXIS 117524, at *10 (N.D. Cal. Aug. 22, 2014)

15  (finding dismissal "warranted because Lo fails to satisfy the second requirement

16  regarding inequity.  The Complaint is devoid of any non-conclusory allegation as

17  to why an inequitable result would follow if Holdings' acts are treated as those of

18  Holdings alone.").[14]

19  Although Plaintiffs also allege that "allowing Acacia Research to avoid

20  jurisdiction and venue through an alter ego shell company would be unjust," ARC

21  is aware of no case ever holding that depriving Plaintiffs of their preferred forum

---

[14] *See also Orosa v. Therakos*, Inc., No. C-11-2143 EMC, 2011 U.S. Dist. LEXIS 93694, at *18-19 (N.D. Cal. Aug. 22, 2011) (granting motion to dismiss where plaintiff failed to plead any facts that would establish the second prong of the alter ego analysis; "Merely alleging that Plaintiff will suffer an inequitable result if J&J is not a defendant is not sufficient."); *Winner Chevrolet, Inc. v. Universal Underwriters Ins. Co.*, No. Civ. S-08-539 LKK, 2008 U.S. Dist. LEXIS 111530, at *9 (E.D. Cal. July 1, 2008) (granting parent company's motion to dismiss, finding that "Plaintiff has made no allegation that Universal [subsidiary] would, for example, be unable to satisfy a judgment such that injustice would result unless Zurich [parent] were joined as a defendant"); *Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*, No. Civ. S-05-583 LKK, 2007 U.S. Dist. LEXIS 64017, at *11-15 & *15, fn.3 (E.D. Cal. Aug. 17, 2007) (collecting cases).

-20-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

ACACIA'S NOTICE OF MOTION AND MOTION TO DISMISS
LITIOC/2120002v13/101022-0123

1  amounts to fraud or injustice that could support an alter ego determination.  To the

2  contrary, where a plaintiff attempts to exercise personal jurisdiction based upon

3  alter ego allegations, courts have generally required a heightened pleading

4  standard.  *See, e.g., Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995)

5  ("Disregarding the corporate entity is recognized as an extreme remedy" and

6  "courts hold plaintiffs who invoke the alter ego theory of personal jurisdiction to a

7  slightly higher burden"— namely, the presumption of corporate separateness must

8  be overcome by clear and convincing evidence) (citing *Escude Cruz v. Ortho*

9  *Pharmaceutical Corp.*, 619 F.2d 902, 905 (1st Cir. 1980); *accord Ryder Truck*

10  *Rental, Inc. v. Acton Foodservices Corp.*, 554 F. Supp. 277, 279 (C.D. Cal. 1983).

11  Even in those situations, the fraud or injustice is separate and independent from a

12  plaintiff's desire to litigate in a particular venue, but instead requires an analysis of

13  alleged fraud that would warrant a *prima facie* alter ego determination.  *See*, *e.g.*,

14  *Nucal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 992-95 (E.D. Cal.

15  2012) (finding no alleged misdeeds to satisfy fraud or injustice showing); *Calvert*,

16  875 F. Supp. at 679-80 (same); *see also Sonora Diamond*, 83 Cal. App. 4th at 539-

17  40 (same; stating that a challenge to "personal jurisdiction does not implicate the

18  merits of the complaint, but the plaintiff … must present evidence to justify a

19  finding that the requisite jurisdictional minimum contacts exists," *i.e.*, fraud or

20  injustice for an alter ego application).

21      Indeed, here, Plaintiffs are not even residents of this forum.  (Compl. ¶¶ 2-

22  3.)  There is simply no precedent and no basis for Plaintiffs argument that

23  Plaintiff's inability to engage in forum shopping equates to fraud or injustice.

24  Another Federal District Court is perfectly competent to adjudicate Plaintiff's non-

25  infringement claims.  *See*, *e.g*., *Xoxide, Inc., v. Ford Motor Co*., 448 F. Supp. 2d

26  1188, 1192 (C.D. Cal. 2006) (explaining that forum shopping is discouraged); *Z-*

27  *Line Designs, Inc. v. Bell'O Int'l LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003)

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-21-

ACACIA'S NOTICE OF MOTION AND MOTION TO DISMISS
LITIOC/2120002v13/101022-0123

1    (same).  For each of these independent failures, ARC's motion to dismiss should

2    be granted.

3    **2.    Even If The Complaint Adequately Pled Alter Ego, There Is**

4    **No Justiciable Case Or Controversy Because ARC Could**

5    **Not Bring A Patent Infringement Suit By "Piercing" Its**

6    **Own Corporate Veil.**

7    Even assuming, *arguendo,* that Plaintiffs had adequately pled an alter ego

8    relationship (which they have not), the Complaint against ARC should still be

9    dismissed.  A parent company cannot bring a suit for patent infringement by virtue

10   of an alter ego relationship with its patent holding subsidiary (*i.e.*, a theory of

11   reverse piercing of the corporate veil).  Therefore, a parent cannot be a proper

12   defendant in a patent infringement declaratory judgment suit, even if its subsidiary

13   is its alter ego.

14   "Alter ego is a limited doctrine, invoked <u>only</u> where recognition of the

15   corporate form would work an injustice to a third person."  *Katzir's Floor & Home*

16   *Design,* 394 F.3d at 1149 (emphasis added); *Olympic Capital Corp. v. Newman*,

17   276 F. Supp. 646, 655, 658 (C.D. Cal. 1967); *see also Mesler v. Bragg Mgmt. Co.*,

18   39 Cal. 3d 290, 300 (1985).

19   "Generally, the corporate veil can generally be pierced only by an adversary

20   of the corporation, not the corporation itself for its own benefit."  *Disenos*

21   *Artisticos, E. Industriales, S.A. v. Costco Wholesale Corp.*, 97 F.3d  377, 380 (9th

22   Cir. 1996); *see also Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816,

23   819-20 (7th Cir. 2014) (holding that parent company Motorola could not pursue

24   Sherman Act claim where its subsidiaries suffered the actual, immediate injury of

25   an alleged price fixing scheme; stating that "Motorola wants us to treat it and all of

26   its foreign subsidiaries as a single integrated enterprise, as if its subsidiaries were

27   divisions rather than foreign corporations.  But American law does not collapse

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-22-

ACACIA'S NOTICE OF MOTION AND MOTION TO DISMISS
LITIOC/2120002v13/101022-0123

1    parents and subsidiaries (or sister corporations) in that way."); *Coleman v. Estes*

2    *Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1152-53 (C.D. Cal. 2010) (granting

3    remand order, finding that parent and subsidiary could not "cast aside their chosen

4    corporate structure in order to gain a significant jurisdictional benefit" of removal

5    under CAFA); *Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*, 608 F. Supp.

6    2d 1166, 1188-89 (N.D. Cal. 2009) (rejecting parent's attempt to disregard its

7    subsidiary's corporate form in order to establish a claim in its own name).

8           As the court in *Quantum Corp. v. Riverbed Technologies Inc.* recognized,

9    once a party avails itself of the benefits of the corporate form, it also bears the

10   associated burdens and cannot disregard them.  No. C-07-04161 WHA, 2008 U.S.

11   Dist. LEXIS 11348, at *5-8 (N.D. Cal. Feb. 4, 2008) (citing *Aladdin Oil Corp. v.*

12   *Perluss*, 230 Cal. App. 2d 603, 614 (1965)).  There, a parent company ACN 120

13   entered into a written agreement assigning all of its patents and the patents of its

14   subsidiaries to Quantum.  *Id*. at *4.  However, one of the subsidiaries, Rocksoft,

15   was not a party to that assignment agreement and did not otherwise assent to the

16   assignment.  *Id*. at *5.  ACN 120 argued that the agreement effectively assigned

17   Rocksoft's patents because Rocksoft was ACN 120's alter ego or, alternatively,

18   ACN 120 was Rocksoft's agent.  *Id*. at *5-6.  In other words, the parent company

19   attempted to pierce its own corporate veil for its own interest.  The court disagreed.

20   The court found that ACN 120's equitable ownership of Rocksoft does not mean

21   ACN 120 could unilaterally transfer Rocksoft's assets without Rocksoft's assent.

22   *Id*. at *6.  *See also Opp v. St. Paul Fire & Marine Ins. Co.,* 154 Cal. App. 4th 71,

23   76 (2007) (rejecting shareholder's assertion that shareholder and company were

24   alter egos of each other; stating that "An individual who has obtained the benefits

25   of corporate limited liability will not be permitted to repudiate corporate existence

26   just because the corporation has become an inconvenience."); *Communist Party v.*

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-23-

ACACIA'S NOTICE OF MOTION AND MOTION TO DISMISS
LITIOC/2120002v13/101022-0123

1  *522 Valencia, Inc.*, 35 Cal. App. 4th 980, 994-95 (1995) (rejecting parent

2  company's claim that subsidiaries were its alter egos).

3        Here, ARC would not be permitted to pierce the corporate veil for its own

4  benefit, *i.e.*, to bring a patent infringement suit against Plaintiffs based upon SLC's

5  ownership of the patents-in-suit.  ARC's presence in the action provides no

6  additional relief and no further redress for Plaintiffs.   That is because the prayed

7  for declaration against ARC would be meaningless and amount to nothing more

8  than an advisory opinion because ARC is not attempting to enforce and cannot

9  enforce the patents as a matter of law against Plaintiffs.

10        Consequently, even if the Complaint had adequately pled that SLC is the

11  alter ego of ARC, the alter ego allegations would still fail to create a justiciable

12  case or controversy.

13        **D.    Leave To Amend Would Be Futile.**

14        Where defects of a pleading cannot be cured by amendment, leave to amend

15  is not necessary.  *Telesaurus VPC*, 623 F.3d at 1003; *Thinket Ink Info. Res., Inc.*,

16  368 F.3d at 1061; *Chaset,* 300 F.3d at 1088; *see*, *e.g.*, *United Bhd. of Carpenters &*

17  *Joiners of Am. v. Bldg. & Constr. Trades Dep't*, 770 F.3d 834, 845 (9th Cir. 2014)

18  (affirming denial of leave to amend where the court could not "conceive of any

19  new facts that could possibly cure the pleading."); *Mt. Hood Polaris, Inc. v.*

20  *Martino (In re Gardner)*, 563 F.3d 981, 992 (9th Cir. 2009) (denial of leave to

21  amend appropriate where proposed amendment would be futile); *Plumeau v.*

22  *School District #40, County of Yamhill*, 130 F.3d 432, 439 (9th Cir. 1997) (same).

23        Here, the declaratory relief claims all arise from SLC's ownership of the

24  patents-in-suit.  ARC has no direct ownership interest.  Plaintiffs cannot plead any

25  new facts to avoid that ARC does not own or have an exclusive license to the

26  patents-in-suit.  As such, Plaintiffs cannot amend the Complaint to state claim for

27  declaratory relief of non-infringement of the patents-in-suit against ARC or present

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-24-

ACACIA'S NOTICE OF MOTION AND MOTION TO DISMISS

LITIOC/2120002v13/101022-0123

1  a judiciable case or controversy.  Accordingly, the Complaint should be dismissed

2  without leave to amend.

3  **IV.      CONCLUSION**

4        For the foregoing reasons, Acacia Research Corporation respectfully

5  requests that the Court dismiss the Complaint with prejudice.

6

7                                      Respectfully submitted,

8  Dated:  August 7, 2015          STRADLING YOCCA CARLSON & RAUTH, P.C.

9                               By:  */s/ Marc J. Schneider*
                                      Marc J. Schneider
10                                    Stephen L. Ram
                                      Ryan W. Smith
11                                    Jessica L. Mullen
                                      Attorneys for Defendant
12                                    ACACIA RESEARCH CORPORATION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-25-

ACACIA'S NOTICE OF MOTION AND MOTION TO DISMISS

LITIOC/2120002v13/101022-0123

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that:  I am employed by Stradling Yocca Carlson & Rauth in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is: 660 Newport Center Drive, Suite 1600, Newport Beach, CA  92660-6422.  My email address is kolson@sycr.com.  On August 7, 2015, I served the within document(s):

**ACACIA RESEARCH CORPORATION'S MOTION TO DISMISS**

| | |
|---|---|
| ☒ | **By electronic service.**  Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the above-referenced document(s) to be sent to the person(s) at the electronic address(es) listed below. |

| | |
|---|---|
| Heidi L. Keefe<br>  hkeefe@cooley.com<br>Mark R. Weinstein<br>  mweinstein@cooley.com<br>Priya Viswanath<br>  pviswanath@cooley.com<br>Lam K. Nguyen<br>  lnguyen@cooley.com<br>COOLEY LLP<br>3175 Hanover Street<br>Palo Alto, CA  94304-1130<br>Telephone:  (659) 843-5000<br>Facsimile:  (650) 849-7400 | Attorneys for Plaintiffs HTC CORPORATION and HTC AMERICA, INC. |

I declare that I am employed in the office of a member of the bar of this court whose direction the service was made.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on August 7, 2015, at Newport Beach, California.

Kim Olson

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1

ACACIA'S MOTION TO DISMISS

LITIOC/2120002v13/101022-0123