Foster C. Johnson, (SBN 289055)
fjohnson@azalaw.com
Alisa A. Lipski
alipski@azalaw.com
Ahmad, Zavitsanos, Anaipakos,
Alavi & Mensing P.C.
1221 McKinney, Ste. 3460
Houston, TX 77010
(713) 655-1101 – Main
(713) 655-0062 – Facsimile

Attorneys for Defendant
Saint Lawrence Communications LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **HTC CORPORATION, HTC AMERICA, INC.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**ACACIA RESEARCH CORPORATION, SAINT LAWRENCE COMMUNICATIONS LLC,**<br><br>**Defendant.** | Case No. 8:15-CV-00378 CJC (DFMx)<br><br>**SAINT LAWRENCE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER TO THE EASTERN DISTRICT OF TEXAS**<br><br>[*Filed concurrently with the Declarations of Demetrios Anaipakos, Cristin A. Wagner, and Marvin Key; and [Proposed] Order Granting the Motion to Dismiss*]<br><br>Hearing:<br>Date:  September 14, 2015<br>Time:  1:30 p.m.<br>Ctrm:  9B<br>Judge:  Hon. Cormac J. Carney<br>Action Filed:  March 9, 2015 |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND...................................................................................2

    A.    Saint Lawrence and its cutting-edge HD Voice technology.................2

    B.    HTC willfully infringes Saint Lawrence's HD Voice patents...............4

    C.    HTC becomes concerned that Saint Lawrence will file an infringement suit. .....................................................................................................4

    D.    HTC deceptively files an anticipatory lawsuit.....................................5

    E.    HTC breaches the non-disclosure agreement. .....................................7

    F.    Claim Construction has already been submitted in the Texas cases and a trial date is set for early 2016.............................................................7

I.    THE COURT SHOULD DISMISS HTC'S CLAIMS FOR LACK OF PERSONAL JURISDICTION ...........................................................8

    A.    Saint Lawrence is not subject to general jurisdiction in California.......9

    B.    Saint Lawrence is not subject to specific jurisdiction in California. ...10

        1.  HTC's Complaint alleges no facts in support of specific jurisdiction. ...................................................................10

        2.  HTC cannot meet the high bar for specific jurisdiction. ...........11

II.    THE COURT SHOULD DISMISS HTC'S DECLARATORY JUDGMENT ACTION AS AN IMPROPER ANTICIPATORY FILING. ........................13

    A.    HTC's declaratory judgment suit should be dismissed because it was an improper anticipatory filing. ........................................................14

    B.    HTC's suit should be dismissed because secretly filing a placeholder declaratory judgment action while pretending to negotiate constitutes "bad faith."...................................................................................16

    C.    The suit should be dismissed because HTC's failure to prosecute or serve its DJ action is evidence of gamesmanship and procedural fencing..............................................................................19

III.    Alternatively, This Case Should Be Transferred To The Eastern District  of Texas.........................................................................................21

1
2

## TABLE OF AUTHORITIES

**CASES**

3
4

*Aeroflex USA, Inc. v. Armacell Enterprise GmbH,*
2014 WL 652912, *5-*7 (E.D. Tenn. 2014) ........................................ 16

5
6

*Aliphcom v. Wi-LAN Inc.,*
2010 WL 4699844, at *3 (N.D. Cal. Nov. 10, 2010) ........................... 24

7
8

*Charles Schwab & Co. v. Duffy,* 1998 WL 879659, at *1
(N.D. Cal. Dec. 8, 1998) ..................................................................... 17

9
10

*Cisco Systems, Inc. v. TiVo,*
2012 WL 3279532 at *6 (N.D. Cal. Aug. 10, 2012) ........................... 22

11
12

*Colo. River Water Conservation Dist. v. United States,*
424 U.S. 800, 817 (1976) .................................................................... 24

13
14

*Continental Grain Co. v The FBL,*
*585,* 364 U.S. 19, 26 (1960) ............................................................... 23

15
16

*Creative Nail Design, Inc. v. Mycone Dental Supply Co.,*
2012 WL 2106212, at *1 (S.D. Cal. June 11, 2012) ........................... 17

17
18

*Daimler AG v. Bauman,*
134 S. Ct. 746, 762, 187 L. Ed. 2d 624 (2014) ..................................... 2

19
20

*Dorman Products, Inc. v. Pontiac Coil, Inc.,*
2006 WL 2927307 (E.D. Pa. 2006) ..................................................... 16

21
22

*Foundations Worldwide, Inc. v Oliver & Tate Enterprises, Inc.,*
2013 WL 4054636 at *3 (N.D. Ohio 2013) ......................................... 17

23
24

*Genetech, Inc. v Eli Lily and Co.,*
998 F.2d 931, 937 (Fed. Cir. 1993) ..................................................... 22

25
26

*Gribin v. Hammer Galleries,*
793 F.Supp. 233, 236 (C.D. Cal. 1992) ............................................... 14

27
28

*Grober v. Mako Products, Inc.,*
686 F.3d 1335, 1346 ........................................................................... 12

*Guthy-Renker Fitness, LLC v. Icon Health & Fitness, Inc.*,
179 F.R.D. 264, 271 (C.D. Cal. 1998) ................................................................. 15

*In re Foundations Worldwide, Inc.*
(Fed. Cir. 2013) 542 Fed.Appx. 998, 999 ........................................................... 16

*K-Swiss Inc. v. Puma AG Rudolf Dassler Sport*,
2009 WL 2049702, at *2 (C.D. Cal. July 9, 2009) .............................................. 16

*Nacogdoches Oil & Gas, L.L.C. v. Leading Solutions, Inc.*,
2007 WL 2402723, at *1 (D. Kan. Aug. 17, 2007) .............................................. 16

*NGS American, Inc. v. Jefferson*,
218 F.3d 519, 522 (6th Cir. 2000) ....................................................................... 14

*Nordberg v Trilegiant Corp.*,
445 F.Supp.2d 1082, 1101-01 (N.D. Cal. 2006) ................................................. 11

*Obsolete Ford Parts v Ford Motor Co.*,
306 F. Supp. 2d 1154 (W.D. Okla. 2004) ............................................................ 19

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
678 F.2d 93, 96 (9th Cir. 1982) ........................................................................... 24

*Paramount Pictures Corp. v. Nissim Corp.*,
2014 WL 5528455 at * 4 (C.D. Cal. Nov. 3, 2014) ............................................. 13

*Petzilla, Inc. v. Anser Innovation LLC*,
2014 WL 474434 at * 3 .......................................................................................... 11

*Radio Sys. Corp. v Accession, Inc.*,
638 F.3d 785, 789 (Fed. Cir. 2011) ...................................................................... 11

*Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*
148 F.3d 1355, 1361 (Fed. Cir. 1998) .................................................................. 13

*Regents of the Univ. of Cal. v Eli Lilly & Co.*,
119 F.3d 1559, 1565 (Fed. Cir. 1997 .................................................................. 22

*Rivera Trading Corp. v. Oakley, Inc.*,
944 F.Supp. 1150, 1158 (S.D.N.Y. 1996) ............................................................ 18

*RLI Ins. Co. v R & L Brosamer, Inc.,*
  2006 WL 194109 at *4 (E.D.Cal. Jan. 18, 2006)................................................14

*Saint Lawrence Communications LLC v HTC Corporation and HTC America,*
  Case No. 2:15-cv-00919-JRG ...........................................................................2

*Saint Lawrence Communications LLC v. LG Electronics, Inc., et al.,*
  Case No. 2:14-cv-01055-JRG ...........................................................................3

*Saint Lawrence Communications LLC v. Motorola Mobility LLC,*
  Case No. 2:15-cv-00351-JRG ...........................................................................3

*Saint Lawrence Communications LLC v. ZTE Corporation, et al.,*
  Case No. 2:15-cv-00349-JRG ...........................................................................3

*Schumacher Electric Corp. v Vector Products, Inc.,*
  286 F.Supp.2d 953, 955 (N.D. Ill. 2003) ...........................................................21

*Sorenson v. Big Lots Stores, Inc.,*
  638 F.Supp.2d 1219, 1221 (S.D. Cal. 2009).......................................................21

*Square, Inc. v. Morales,*
  2013 WL 6199281 at *5 (N.D. Cal. Nov. 27, 2013).............................................14

*Teledyne Techs. Inc. v. Harris Corp.,*
  2011 WL 2605995, *2–3 (C.D. Cal. July 1, 2011)..............................................16

*Vistaprint Ltd.,*
  628 F.3d 1342, 1346 (Fed. Cir. 2010) (quoting *Van Dusen v. Barrack,* 376 U.S.
  612, 622 (1964))..................................................................................................22

*Wilton v. Seven Falls Co.,*
  515 U.S. 277, 286-287 (1995). ..........................................................................14

*Xilinx, Inc. v. Pabst Licensing GmbH & Co.Kg,*
  F.Supp.3d --, 2015 WL 4149166 at *4 (N.D. Cal. 2015) ....................................10

*Xoxide,* 448 F.Supp.2d at 1193
  (quoting *Tempco Elec. Heater Corp. v. Omega Eng'g,* 819 F.2d 746, 749
  (7th Cir. 1987) ....................................................................................................17

*Xoxide, Inc. v. Ford Motor Co.*,
    448 F.Supp.2d 1188, 1192 (C.D.Cal. 2006) ....................................................3, 18

*Zide Sport Shop of Ohio, Inc. v Ed Tobergte Associates,*
    16 Fed. Appx. 433 (6th Cir. 2001) ........................................................19

*Z-Line Designs, Inc. v. Bell'O Intern., LLC*,
    218 F.R.D. 663, 665 (N.D. Cal. 2003) ................................................14

**RULES**

Fed. R. Civ. P. 12(b)(2) ..........................................................11

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 14, 2015 at 1:30 p.m. or as soon thereafter as counsel may be heard before the Honorable Cormac J. Carney in Courtroom 9B of the above-entitled Court, located at 411 W. Fourth Street, Santa Ana, CA 92701, Saint Lawrence will move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss HTC's Complaint against Saint Lawrence for lack of personal jurisdiction. Dismissal is appropriate because HTC cannot establish that the Court has personal jurisdiction over Saint Lawrence.

Alternatively, Saint Lawrence moves the Court to dismiss the above-captioned declaratory relief action in favor of a direct-infringement action on the same patents pending in the U.S. District Court for the Eastern District of Texas, or, alternatively, for an order transferring this action pursuant to 28 U.S.C. § 1404(a). This motion is made on the grounds that HTC's declaratory judgment action was an improper anticipatory action filed in bad faith and that multiple infringement actions involving the same patents are already pending in the U.S. District Court for the Eastern District of Texas.

Saint Lawrence's motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the supporting declarations of Demetrios Anaipakos, Cristin A. Wagner, and Marvin Key, all exhibits and papers attached hereto, all pleadings and papers on file in this action, such other evidence and arguments as may be presented at or before the hearing on this motion, and all other matters of which the Court may take judicial notice or which it otherwise deems appropriate to consider. This motion is made following the conference of Counsel pursuant to L.R. 7-3 which took place on August 4, 2015.

# INTRODUCTION

HTC's Complaint seeks a declaratory judgment that its mobile phone products do not infringe Saint Lawrence's cutting-edge patents for speech and audio compression.  HTC's lawsuit is the mirror image of Saint Lawrence's substantive patent infringement lawsuit pending in the Eastern District of Texas.[1]  HTC's duplicative filing in this Court should be transferred or dismissed.

*First*, this Court lacks personal jurisdiction over Saint Lawrence.  General jurisdiction does not exist because Saint Lawrence is a Texas corporation headquartered in Texas.  Saint Lawrence is thus not "at home" in the Central District of California.  *Daimler AG v. Bauman*, 134 S. Ct. 746, 762, 187 L. Ed. 2d 624 (2014).

Neither does specific jurisdiction exist.  Saint Lawrence does not manufacture or sell consumer products.  Its only contacts with California arise from licensing negotiations.  But the Federal Circuit has repeatedly held that infringement letters and licensing negotiations cannot provide a basis for specific jurisdiction *even when in person negotiations have occurred in the forum*.  Accordingly, HTC's declaratory judgment action must be dismissed for lack of personal jurisdiction.

*Second*, HTC's lawsuit is a textbook misuse of the Declaratory Judgment Act.  In December 2014, HTC sent a letter requesting that the parties enter into negotiations for a patent license.  HTC conceded that it was "concerned" about Saint Lawrence's patent litigation against Telekom Deutschland GmbH and Vodafone GmbH in Germany and "the effect that the litigations may have on its ability to sell devices to end users."  But while pretending to negotiate in good faith, HTC secretly filed the present declaratory judgment action in California.

Tellingly, HTC made no effort to serve its declaratory judgment action,

---

[1] *See Saint Lawrence Communications LLC v HTC Corporation and HTC America*, Case No. 2:15-cv-00919-JRG.

much less prosecute it. Rather, HTC kept this filing hidden in its back pocket as an insurance policy, while negotiating with Saint Lawrence for an additional three months. Federal courts rightfully condemn infringers like HTC who lull rightful patent holders with promises of settlement while secretly filing suit behind their backs to gain the upper hand. Such "[a]nticipatory" placeholder suits are "viewed with disfavor as examples of forum shopping and gamesmanship." *Xoxide, Inc. v. Ford Motor Co.*, 448 F.Supp.2d 1188, 1192 (C.D.Cal. 2006).

*Finally,* judicial economy warrants transfer of this action, if not outright dismissal. No less than three other lawsuits, involving the *same* five patents and the *same* claims on which HTC is seeking declaratory relief, are currently pending before the Honorable Rodney Gilstrap in the Eastern District of Texas.[2] Saint Lawrence's patent infringement lawsuit against HTC is also before Judge Gilstrap. These three Texas lawsuits have already substantially progressed. Indeed, in one, parties have identified over 100 proposed terms for construction from the five asserted patents, exchanged preliminary claim constructions for those terms, filed their Joint Claim Construction Statement, scheduled a claim construction hearing for October 9, 2015, and set a trial date in early 2016.

The interests of judicial economy favor litigation of HTC's claims in the Eastern District of Texas where these related cases are pending before Judge Gilstrap, not a separate action in a different state necessitating duplicative judicial efforts, overlapping rulings, and (potentially) inconsistent outcomes.

## FACTUAL BACKGROUND

### A.    Saint Lawrence and its cutting-edge HD Voice technology.

Saint Lawrence is a Texas Corporation headquartered in Plano, Texas. Saint

---

[2] *See Saint Lawrence Communications LLC v. LG Electronics, Inc., et al.*, Case No. 2:14-cv-01055-JRG; *Saint Lawrence Communications LLC v. ZTE Corporation, et al.*, Case No. 2:15-cv-00349-JRG; and *Saint Lawrence Communications LLC v. Motorola Mobility LLC*, Case No. 2:15-cv-00351-JRG.

Lawrence does not manufacture or sell any consumer products.  Its sole business is monetizing and licensing intellectual property rights.  *See* Declaration of Marvin E. Key ("Key Dec.") at ¶¶ 2-5.

Saint Lawrence has no significant California contacts.  It does not advertise in California.   It does not have offices, bank accounts, post office boxes, or telephone listings in California.  *Id.* at ¶ 2.  It has never owned property in California, and it has never had a registered agent authorized for receipt of service in California.  *Id.* at ¶ 3.

In 2013, Saint Lawrence partnered with VoiceAge Corporation, a longtime pioneer in speech and audio compression technologies, to protect and license VoiceAge Corporation's patented inventions and intellectual property.  VoiceAge is widely recognized as the world leader in developing cutting-edge technologies for wideband, low bit rate speech and audio compression.  For example, VoiceAge provided the core technologies for at least nine international speech and audio standards based codecs used in both wireless and wireline markets and applications.

One of the international standards based on VoiceAge's patented technologies is the Adaptive Multi-Rate-Wideband ("AMR-WB") standard for wideband speech.   In the mobile phone market, this codec is known by the commercial name "HD Voice."  Among the numerous benefits provided by this revolutionary technology are greatly improved sound quality, making it easier to recognize voices, comprehend accented speech, understand callers on speakerphones, and distinguish between multiple voices on a single call.  In the United States, T-Mobile, Sprint, Verizon Wireless and AT&T have all launched and supported HD Voice through the AMR-WB codec, and at least 329 different mobile phones support HD Voice.

Saint Lawrence owns the five HD Voice patents at issue in both the Texas lawsuits and HTC's declaratory judgment action in this Court.  *Id.* at ¶ 7.

**B.      HTC willfully infringes Saint Lawrence's HD Voice patents.**

HTC Corporation is a corporation organized under the laws of Taiwan with its corporate headquarters located in New Taipei City, Taiwan.  Comp. at ¶ 2.  HTC America is a Washington corporation, headquartered in Bellevue, Washington.  *Id.* at ¶ 3.  HTC America is a wholly-owned, indirect subsidiary of HTC Corporation.

HTC manufactures, imports, markets, and sells HD Voice phones.  Those phones rely upon the patented HD Voice technology.  Yet HTC does not hold a license to use this patented technology.  Nor does HTC pay licensing fees.  But this has not stopped HTC from actively and lucratively exploiting this patented technology and inducing others to practice those patents as well.  *See* Declaration of Cristin A. Wagner ("Wagner Dec.") at ¶ 2.

**C.      HTC becomes concerned that Saint Lawrence will file an infringement suit.**

On December 9 2014, HTC sent Saint Lawrence's German subsidiary a letter requesting that the parties enter into negotiations for a patent license.  Wagner Dec. ¶ 3, Ex. A.  HTC conceded that it was "concerned" about Saint Lawrence's patent litigation against Telekom Deutschland GmbH and Vodafone GmbH and "the effect that the litigations may have on its ability to sell devices to end users."  *Id.*

On December 22, 2014, Saint Lawrence responded.  *See* Wagner Dec. Ex. B.  While offering to negotiate a license agreement, Saint Lawrence pointed out that that litigation between the two companies was likely because "based on statements in your letter we have doubts about HTC's willingness to enter into a license agreement."  *Id.*  Specifically, Saint Lawrence noted that "it seems to us that HTC is only willing to enter into license negotiations with respect to those patents of our AMR-WB patent portfolio [involved] in the proceedings currently pending [in Germany]."  *Id.*  However, these patents made up only a small percentage of Saint Lawrence's world-wide HD Voice patent portfolio, which includes Asia, the rest of Western Europe, and the United States.  *See* Wagner Dec. at ¶ 4.  Accordingly,

1  Saint Lawrence noted that "HTC seems not even to be willing to negotiate a license

2  agreement in the moment."  Wagner Dec. Ex. B.

3      Saint Lawrence requested that HTC agree to a proposed date for settlement

4  discussions so that "we will know that HTC is willing to enter into license

5  negotiations for our AMR-WB patent portfolio."  *Id.*  The parties thereafter entered

6  negotiations and signed a non-disclosure agreement stipulating that "neither the

7  content of these confidential Discussions nor the fact that these confidential

8  Discussions occurred may be referenced in any litigation currently pending or

9  occurring in the future."  Wagner Dec. at ¶ 5, Ex. C.  HTC subsequently breached

10  this agreement.

11      **D.    HTC deceptively files an anticipatory lawsuit.**

12      Unbeknownst to Saint Lawrence, these negotiations were a sham.  Rather

13  than a good faith negotiation, HTC used these talks as a ploy to dissuade Saint

14  Lawrence from filing suit in Texas so that HTC could file an anticipatory

15  declaratory judgment action in California.

16      On January 23, 2015, representatives of Saint Lawrence and HTC met in

17  Tokyo.  During this meetings, Saint Lawrence's counsel informed HTC that if the

18  parties could not reach a settlement that Saint Lawrence intended to file a patent

19  infringement lawsuit in Texas.  *See* Declaration of Demetrios Anaipakos at ¶ 2.

20  These were not idle threats.  Saint Lawrence had already filed a patent infringement

21  suit against LG Electronics in Texas in November 2014.  On March 10, 2015, Saint

22  Lawrence filed suit against ZTE Corporation and ZTE USA, Inc. in the Eastern

23  District of Texas.    That same day, Saint Lawrence filed a separate patent

24  infringement lawsuit against Motorola Mobility in the Eastern District of Texas.

25  And on April 2, 2015, Saint Lawrence filed suit in the Eastern District of Texas

26  against Samsung Electronics.  *Id.* at ¶ 3.  The only reason that Saint Lawrence did

27  not bring suit against HTC was because of HTC's continuing promises that it was

28

SAINT LAWRENCE'S MOTION TO DISMISS; CASE NO. 8:15-CV-00378-CJC-DFM

interested in negotiating a good faith settlement.  *Id.* at ¶ 4.

On March 3, 2015, after more than two months of negotiations between the parties, Saint Lawrence expressed its concern that HTC was using the negotiations as a pretext to avoid litigation rather than an opportunity to resolve the parties' differences:

> [Saint Lawrence] is interested to know why HTC is of the curious opinion that it does not need to take a license to the AMR-WB patent portfolio in other countries and regions where patent protection through this patent portfolio of Saint Lawrence exists.  It is also obvious that … HTC intends to delay matters instead of sincerely being interested in the conclusion of a license agreement.

Wagner Dec. Ex. D.

On March 6, 21015, HTC responded to Saint Lawrence's concerns by making a counter proposal for the German HD Voice licenses.  As it had multiple times previously, HTC again assured Saint Lawrence that it was negotiating in good faith:  "HTC is also happy to continue discussing the possibility of licensing for a broader geographic region, although the present offer is limited to Germany." Wagner Dec. Ex. E.  Three days later—without warning—HTC filed a declaratory judgment action in California.  *See* Wagner Dec. at ¶ 8.  Tellingly, HTC made no attempt to prosecute its declaratory judgment action.  Indeed, HTC did not even tell Saint Lawrence that a lawsuit had been filed.  *Id.* at ¶ 9.

On March 20, 2015, HTC wrote Saint Lawrence that HTC "continues to be willing to license the [HD Voice] portfolio on FRAND terms." Wagner Dec. Ex. F. HTC emphasized that "[c]oncerning the fact that the offer was limited to Germany, HTC expressly made it clear that it is willing to negotiate for other territories as well – and that remains HTC's consistent approach." *Id.*

HTC's letter made no mention that it had filed a lawsuit in California 11 days previously.  In fact, between March 9, 2015 (the date HTC filed its declaratory judgment action) and May 11, 2015, the parties exchanged more than a dozen additional communications.  Wagner Dec. at ¶ 11.  But never once throughout these

negotiations did HTC confess that it had secretly filed a placeholder declaratory judgment action in an attempt to deprive Saint Lawrence of its natural venue for a patent infringement lawsuit. *Id.*

By May 2015, Saint Lawrence concluded that the negotiations had been a sham. *Id.* at ¶ 12. On June 2, 2015, Saint Lawrence filed a substantive patent infringement action against HTC in the Eastern District of Texas. *Id.* Saint Lawrence served HTC the following day. *Id.* Even then, HTC delayed. Two weeks passed before HTC finally served Saint Lawrence with its California declaratory judgment suit—more than 100 days after HTC's placeholder action was filed. *Id.* at ¶ 13.

### E.    HTC breaches the non-disclosure agreement.

HTC made no effort to honor its promise that "neither the content of these confidential [settlement] Discussions *nor the fact that these confidential Discussions occurred* may be referenced *in any litigation*." Wagner Dec. Ex. C (emphasis added). Indeed, HTC's complaint specifically relied upon the settlement discussions as grounds for HTC's declaratory judgment action. *See* Comp. at ¶¶ 16-19 ("[Saint Lawrence's] letter further suggested that a license covering just Germany would not be acceptable, and asked HTC to execute a Non-Disclosure Agreement (NDA) to pursue further discussions.'). Disingenuously, HTC's complaint suggested that it was not relying upon these discussions for purposes of showing subject matter jurisdiction, while, of course, doing just that. *Id.* at ¶ 17, n.4.

### F.    Claim Construction has already been submitted in the Texas cases and a trial date is set for early 2016.

Substantial activity has already occurred in the three ongoing Texas cases before Judge Gilstrap involving "the same five patents on which HTC is seeking declaratory judgment relief in this case." See Dkt. 11 at 2 (HTC's Supplemental Notice of Pendency of Other Actions Or Proceedings Pursuant to L.R. 83-1.4). For

example, in the LG Electronics case, the parties have identified over 100 proposed terms for construction from the five asserted patents, exchanged preliminary claim constructions for those terms, and filed their Joint Claim Construction Statement with the court, as required by the local patent rules. *See* Anaipakos Dec. ¶¶ 5-7. The parties are also scheduled to begin Claim Construction briefing on August 28, 2015, and a claim construction hearing date has been set for October 9, 2015. *Id.* at ¶ 6. Additionally, the court has appointed a technical advisor to assist with claim construction, assigned a mediator, and set a trial date for April 11, 2016. *Id.*

In the cases involving ZTE and Motorola Mobility, the court consolidated those two cases and conducted a scheduling conference in July that sets a claim construction hearing on January 6, 2016 and a trial date on July 11, 2016. *Id.* at ¶ 7. Saint Lawrence's substantive action against HTC is expected to move at a similarly expedited pace. *Id.*

## I.   THE COURT SHOULD DISMISS HTC'S CLAIMS FOR LACK OF PERSONAL JURISDICTION

Rule 12(b)(2) requires dismissal in any case where a court lacks personal jurisdiction over the defendant. *See* FED. R. CIV. P. 12(b)(2). Federal Circuit law governs the determination in cases, like this one, "intimately involved with the substance of patent laws." *Autogenomics, Inc. v. Oxford Gene Technology Ltd.*, 566 F.3d 1012, 1016 (affirming C.D. Cal district court's dismissal of declaratory judgment action for lack of personal jurisdiction).

Due process precludes a court from asserting jurisdiction over a defendant unless that defendant has minimum contacts with the forum state such that an exercise of jurisdiction would not offend "traditional conception[s] of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945). The "minimum contacts" requirement can be satisfied in two different ways: general jurisdiction or specific jurisdiction. *Xilinx, Inc. v. Pabst Licensing GmbH & Co.Kg*, -- F.Supp.3d --, 2015 WL 4149166 at *4 (N.D. Cal. 2015) (dismissing patent

declaratory judgment action for lack of jurisdiction).  Neither prong is met here.

### A.    Saint Lawrence is not subject to general jurisdiction in California

Saint Lawrence's insignificant contacts with California fall far below the requirements for general jurisdiction.

In *Daimler*, the U.S. Supreme Court held that a court may assert general jurisdiction over a nonresident defendant only when the defendant's "affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State."  *Daimler AG v. Bauman*, 134 S.Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011)). Only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction.  *Id.* at 760.  The *Daimler* court held that a corporate defendant is typically "at home" in only two states—its state of incorporation and the state of its principle place of business.  *Id.*

Saint Lawrence meets neither of these requirements.  Saint Lawrence is not incorporated in California, nor does it have its principle place of business in California.  "These facts, alone, are strong evidence that [Saint Lawrence] is not at home in California."  *Xilinx, Inc. v Pabst Licensing GmbH & Co.Kg*, -- F.Supp.3d --, 2015 WL 4149166 (N.D. Cal. 2015) (dismissing patent declaratory judgment action for lack of jurisdiction); *see also Goodyear*, 131 S.Ct. at 2853-54 (noting that "the paradigm forum for the exercise of personal jurisdiction … [is the corporation's] domicile, place of incorporation, and principal place of business") (citation omitted).  Indeed, Saint Lawrence has never had a mailing address, phone number, or bank account in California.  It has never owned property in California. It is not licensed to do business in California, and it has never had a registered agent authorized for receipt of service in California.  Simply put, there is no good faith basis for alleging that Saint Lawrence is "at home" in California or equivalent to a "[California] enterprise."  *See Goodyear*, 131 S.Ct. at 2854; *Daimler*, 134 S.Ct. at

SAINT LAWRENCE'S MOTION TO DISMISS; CASE NO. 8:15-CV-00378-CJC-DFM

758 n.11; *see also Petzilla, Inc. v. Anser Innovation LLC*, 2014 WL 474434 at * 3 (dismissing patent declaratory judgment action for lack of general jurisdiction where defendant was not licensed to do business in California, did not pay taxes in California, and had no registered agent in California).

Nor is Saint Lawrence an alter-ego of Acacia. HTC's conclusory allegations that Acacia owns Saint Lawrence, that the companies share common employees, and that the companies share a common business address provide no basis for piercing the corporate veil. *See Id.* ("The mere fact of sole ownership and control does not eviscerate the separate corporate identify that is the foundation of corporate law."); *Nordberg v Trilegiant Corp.*, 445 F.Supp.2d 1082, 1101-01 (N.D. Cal. 2006) ("it is clear that such routine control of a subsidiary by a parent is insufficient to support the contention that a subsidiary is a mere instrumentality"). Accordingly, this Court may not exercise general jurisdiction over Saint Lawrence.

### B.   Saint Lawrence is not subject to specific jurisdiction in California.

#### 1.  HTC's Complaint alleges no facts in support of specific jurisdiction.

A district court may exercise specific jurisdiction over a defendant only if (1) the defendant purposely directed its activities at the residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction does not violate fair play and substantial justice. *Radio Sys. Corp. v Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011). Here, HTC's Complaint does not allege a single act that Saint Lawrence "directed" to the residents of the forum, much less explain how its "claim arises out of or relates to those activities." *See* Compl. at ¶¶ 8-9. Accordingly, HTC has not satisfied its burden for establishing specific jurisdiction. *See Grober v. Mako Products, Inc.*, 686 F.3d 1335, 1346 (when analyzing specific jurisdiction, "[t]he plaintiff has the burden of proving parts one and two of the test").

## 2.  HTC cannot meet the high bar for specific jurisdiction.

The only conceivable "contact" that Saint Lawrence has had with California in this case is a single meeting between Saint Lawrence and HTC that took place in Los Angeles on March 25, 2015.  That single contact, however, comes nowhere near the extraordinarily high bar set by the Federal Circuit for establishing specific jurisdiction in patent actions.

In a declaratory judgment action, only activities that "relate to" the *enforcement* of the patents-in-suit are relevant to the "arises out of" prong of the specific jurisdiction test.  *Xilinx*, 2015 WL 4149166 at * 6 (quoting *Avocent Huntsville Corp. v Aten Intern. Co.*, 552 F.3d 1324, 1332-33 (Fed. Cir. 2008)). Consequently, the proper inquiry is whether any of defendant's activities "relate to the *enforcement* or the *defense of the validity* of the patents-in-suit." *Id.* (citations omitted).  In other words, specific jurisdiction exists in patent actions in only two circumstances:  (1) when the defendant has filed a patent infringement lawsuit on the *same* patents in the *same* forum or (2) when the defendant has "entered an exclusive license agreement" which imposes "enforcement obligations with a party residing or regularly doing business in the forum." *Id.* at *7 (quoting *Avocent*, 552 F.3d at 1334).

Neither of those prongs is satisfied here.  Saint Lawrence has never filed a patent infringement suit in California; nor has Saint Lawrence entered into any exclusive licensing agreements for its HD Voice technology with any company. Key Dec. ¶¶ 8-9.  Thus, no basis exists for asserting specific jurisdiction under Federal Circuit precedent.

Moreover, the Federal Circuit has repeatedly held that travel to the forum state to negotiate a patent license does not constitute the required "directed activities" to establish specific jurisdiction. *See Radio Sys. Corp. v. Accession, Inc.,* 638 F.3d 785, 789 (Fed. Cir. 2011) (multiple licensing meetings in forum

insufficient to establish specific jurisdiction).  Likewise, in *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, the Federal Circuit held that a patentee does not subject itself to personal jurisdiction "when its only contacts with [the] forum were efforts to give proper notice of its patent rights."  148 F.3d 1355, 1361 (Fed. Cir. 1998).  Merely informing companies within a foreign forum of one's patent rights by offering a license, sending cease-and-desist letters, or initiating settlement talks is an insufficient basis for specific jurisdiction.  *Id.*; *see also Avocent*, 552 F.3d at 1333 ("Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum.").

Following Federal Circuit precedent, California district courts routinely dismiss cases for lack of specific jurisdiction with far more significant California contacts.  *See Xilinx,* 2015 WL 4149166 at *7-8 (dismissing for lack of specific jurisdiction despite allegations that defendant sent multiple enforcement letters to forum, conducted multiple in-person settlement meetings, retained California attorney, and filed prior patent infringement lawsuits in California on other patents); *Petzilla*, 2014 WL 474434 at *4-5 (dismissing for lack of specific jurisdiction where defendant sent cease-and-desist letters and entered into non-exclusive license agreements in California); *Paramount Pictures Corp. v. Nissim Corp.*, 2014 WL 5528455 at * 4 (C.D. Cal. Nov. 3, 2014) (infringement letters and non-exclusive licenses in California "do not meet the minimum contacts requirement" sufficient for establishing specific jurisdiction); *Square, Inc. v. Morales*, 2013 WL 6199281 at *5 (N.D. Cal. Nov. 27, 2013) (finding no specific jurisdiction despite allegations that defendant sent a series of emails accusing plaintiff of infringement and traveled to plaintiff's California office to conduct negotiations).  The same result applies here.

## II.   THE COURT SHOULD DISMISS HTC'S DECLARATORY JUDGMENT ACTION AS AN IMPROPER ANTICIPATORY FILING.

The Declaratory Judgment Act "is *not* a *tactical device* whereby a party who would be a defendant in a coercive action may choose to be plaintiff if he can beat the other party to the courthouse." *Gribin v. Hammer Galleries*, 793 F.Supp. 233, 236 (C.D. Cal. 1992) (citation omitted) (emphasis in original); *see also NGS American, Inc. v. Jefferson*, 218 F.3d 519, 522 (6th Cir. 2000) ("federal courts frown upon declaratory judgment actions brought for procedural fencing purposes"). Nor does the Act give a litigant who is "first-to-file" an absolute right to obtain a declaratory judgment. *Z-Line Designs, Inc. v. Bell'O Intern., LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003) (dismissing first-filed action). Rather, district courts have substantial discretion in deciding whether to stay or dismiss declaratory claims based on equitable considerations. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-287 (1995).

Circumstances under which courts will dismiss first-filed declaratory judgment actions "include bad faith, anticipatory suit, and forum shopping." *Z-Line Designs*, 218 F.R.D. at 665 (citations omitted). Indeed, because of the strong public policy against forum shopping, the Ninth Circuit "has long frowned upon reactive lawsuits, specifically declaratory actions filed in anticipation of an opponent's plans to initiate litigation." *RLI Ins. Co. v R & L Brosamer, Inc.*, 2006 WL 194109 at *4 (E.D.Cal. Jan. 18, 2006).

Federal courts equally condemn potential patent infringement defendants who file placeholder actions to game venue. When a potential patent infringement defendant "merely files a declaratory judgment action" but takes no steps to serve the complaint or prosecute the case, "it cannot be said that the party legitimately uses the Declaratory Judgment Act." *Sorenson v. Big Lots Stores, Inc.*, 638 F.Supp.2d 1219 (S.D. Cal. 2009).

Here, HTC was informed in January 2015 that Saint Lawrence intended to

13

SAINT LAWRENCE'S MOTION TO DISMISS; CASE NO. 8:15-CV-00378-CJC-DFM

file a patent infringement suit in Texas against HTC by June 2015 if the parties could not reach a settlement.  While pretending to engage in settlement discussions, HTC then filed an anticipatory suit in California on March 9, 2015.  Worse, HTC made no effort to serve or prosecute this suit, keeping silent about its very existence until Saint Lawrence filed suit in Texas.  This is a misuse of the Declaratory Judgment Act.  Accordingly, Saint Lawrence asks the Court to dismiss this case so that the Texas Court may resolve the parties' dispute in the rightful forum.

### A.      HTC's declaratory judgment suit should be dismissed because it was an improper anticipatory filing.

Declaratory judgment actions are dismissed as anticipatory "when the 'plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent." *Xoxide, Inc. v Ford Motor Co.*, 448 F.Supp.2d 1188, 1192 (C.D. Cal. 2006) (quoting *Guthy-Renker Fitness, LLC v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 271 (C.D. Cal. 1998).  Such suits are disfavored as "forum shopping" because [t]he Declaratory Judgment Act should not be used to "deprive a plaintiff of his conventional choice of forum, and timing, provoking a disorderly race to the courthouse."  *Gribin*, 793 F.Supp. at 234 (internal quotations omitted); *Z-Line Designs*, 218 F.R.D. at 665.

In the infringement context, anticipatory declaratory judgment actions are routinely dismissed in favor of a direct infringement action in the patentee's chosen forum.  *See, e.g., Serco Servs. Co., L.P. v Kelley Co.*, 51 F.3d 1037, 1040 (Fed. Cir. 1995) (affirming district court's dismissal of first-filed declaratory judgment action in favor of second-filed infringement action where court determined that first-filed suit was improper anticipatory filing); *In re Foundations Worldwide, Inc.* (Fed. Cir. 2013) 542 Fed.Appx. 998, 999 (affirming district court's refusal to apply first-to-file rule where first-filed declaratory judgment action was improper anticipatory filing); *Creative Nail Design, Inc. v. Mycone Dental Supply Co.*, Inc., 2012 WL 2106212, *2-3 (S.D. Cal. 2012) (dismissing plaintiff's first-filed declaratory

14

judgment suit where court found that the plaintiff's suit anticipated the patentee's infringement suit); *Teledyne Techs. Inc. v. Harris Corp.*, 2011 WL 2605995, *2–3 (C.D. Cal. July 1, 2011) (same); *K-Swiss Inc. v. Puma AG Rudolf Dassler Sport*, 2009 WL 2049702, at *2 (C.D. Cal. July 9, 2009) (same); *Aeroflex USA, Inc. v. Armacell Enterprise GmbH*, 2014 WL 652912, *5-*7 (E.D. Tenn. 2014) (same); *Dorman Products, Inc. v. Pontiac Coil, Inc.*, 2006 WL 2927307 (E.D. Pa. 2006) (same); *Nacogdoches Oil & Gas, L.L.C. v. Leading Solutions, Inc.*, 2007 WL 2402723, at *1 (D. Kan. Aug. 17, 2007) (same).

Here, it is clear that HTC's California action was filed in anticipation of litigation by Saint Lawrence. HTC was specifically told by Saint Lawrence's counsel during settlement meetings on January 23, 2015 and February 9, 2015 that Saint Lawrence would bring a patent infringement suit against HTC by June 2015 in Texas unless the parties could reach a settlement agreement. Those communications were "specific, concrete indications that a suit by the defendant was imminent." *Xoxide, Inc.*, 448 F.Supp.2d at 1192.

Additionally, Saint Lawrence's December 22, 2014 letter and its November 2014 infringement lawsuit against LG Electronics based on the same patents were *also* "specific, concrete" indications that litigation was imminent. *See* Wagner Dec. Ex. B ("based on statements in your letter we have doubts about HTC's willingness to enter into a license agreement"). Indeed, HTC concedes in its Complaint that the letter and lawsuit provided specific, concrete indications that an infringement action by Saint Lawrence was imminent. *See, e.g.,* Compl. ¶ 19 (alleging that based on Saint Lawrence's "**conduct and representations to HTC in its December 22 letter**, its pattern of conduct and behavior toward HTC in Germany, **and its filing of suit against its direct competitors in the United States** … HTC [had] more than a reasonable apprehension of suit based on the Patents-in-Suit.") (emphasis added).

HTC's declaratory judgment action is thus a textbook anticipatory suit: with

specific notice that Saint Lawrence intended to file a patent infringement suit in Texas, HTC preemptively filed suit in California to secure its preferred venue.  That is forum shopping.  Federal courts do not reward such "race[s] to the courthouse[,]" *Gribin*, 793 F.Supp. at 234, because they "would allow alleged infringers to 'rob' natural plaintiffs of their ability to choose their forum." *Foundations Worldwide, Inc. v Oliver & Tate Enterprises, Inc.*, 2013 WL 4054636 at *3 (N.D. Ohio 2013). Consequently, HTC's suit should be dismissed because "'[w]here ... the declaratory judgment action is filed in anticipation of an infringement action, the infringement action should proceed,' even when filed later." *Xoxide*, 448 F.Supp.2d at 1193 (quoting *Tempco Elec. Heater Corp. v. Omega Eng'g*, 819 F.2d 746, 749 (7th Cir. 1987).

### B. HTC's suit should be dismissed because secretly filing a placeholder declaratory judgment action while pretending to negotiate constitutes "bad faith."

Federal courts condemn parties who secretly file placeholder declaratory judgment actions in the midst of settlement negotiations as "insurance policies" in case negotiations break down.  Such placeholder lawsuits constitute "bad faith" warranting dismissal. *Charles Schwab & Co. v. Duffy*, 1998 WL 879659, at *1 (N.D. Cal. Dec. 8, 1998) (dismissing suit where plaintiff's attorney "misled" defendant as to plaintiff's "settlement intentions"); *Creative Nail Design, Inc. v. Mycone Dental Supply Co*., 2012 WL 2106212, at *1 (S.D. Cal. June 11, 2012) (dismissing suit where plaintiff filed declaratory judgment action after parties "agreed to continue the settlement discussions going forward"); *Teledyne Technologies Inc. v. Harris Corp.*, 2011 WL 2605995 at * 3 (C.D. Cal. July 1, 2011) (dismissing suit where plaintiff promised to keep "advancing the ball towards the [settlement] goal line" then filed declaratory judgment action).  That is because enforcing the first-to-file rule in such situations "would thwart settlement negotiations" and force "intellectual property holders to file suit rather than

communicate with an alleged infringer." *Z-Line Designs*, 218 F.R.D. at 665; *see also Rivera Trading Corp. v. Oakley, Inc.*, 944 F.Supp. 1150, 1158 (S.D.N.Y. 1996) (potential plaintiffs should be encouraged to attempt settlement discussions prior to filing lawsuits without fear of preemptive declaratory judgment action by defendant).

*Xoxide, Inc. v Ford Motor Co.* illustrates the kind of "bad faith" conduct Federal courts condemn.  448 F.Supp.2d 1188 (C.D. Cal. 2006).  There, Ford sent a cease and desist letter informing Xoxide that its website and business name violated Ford's trademarks.  Like Saint Lawrence, Ford warned that failure to reach a settlement would result in litigation.  Xoxide responded by engaging Ford in a "confidential settlement discussion" while requesting additional time "to complete [its] consideration and response regarding the domain name and business name." *Id.* at 1191.  Xoxide, however, also secretly filed a declaratory judgment action, which it failed to serve on Ford.  Subsequently, Xoxide admitted to using the suit as a kind of insurance policy to "keep [Xoxide's] place as to filing dates and times in the event that discussions later broke down."  *Id.* at 1194.  In dismissing Xoxide's first-filed declaratory judgment action, the district court held that "secretly filing a lawsuit in Los Angeles while giving the impression to Ford's representatives that it was making best efforts to negotiate a settlement" amounted to "an improper attempt at forum shopping." *Id.*

Similarly, in *Obsolete Ford Parts v Ford Motor Co*., Ford sent Obsolete a letter threatening suit if Obsolete did not cease use of certain marks.  306 F. Supp. 2d 1154 (W.D. Okla. 2004).  Obsolete, like HTC, responded by denying any misconduct and requesting additional time to research the issue; it also provided certain documentation to Ford that it believed supported its continued use of the marks.  Over the next two months, Obsolete repeatedly reiterated its request for additional time to investigate Ford's charges.  Then, without notifying or serving Ford, Obsolete, like HTC, filed a declaratory judgment action in the United States

District Court for the Western District of Oklahoma. Ford, who was unaware of the Oklahoma action, subsequently filed suit in Michigan.  In dismissing Obsolete's first-filed action, the Oklahoma court observed that Obsolete's "attempt[] to stall Defendant's suit by requesting additional time" was "the kind of procedural fencing that courts condemn." *Id.* at 1158.

*Zide Sport Shop of Ohio, Inc. v Ed Tobergte Associates* is also on point. 16 Fed. Appx. 433 (6th Cir. 2001).  In that case, Zide received a letter from Ed Tobergte Associates (ETA) accusing Zide of trademark infringement.  Over the next few months, the parties engaged in settlement discussions.  ETA then sent a letter to Zide stating that "it would file suit if [it] did not receive a serious settlement offer within seven days." *Id.* at 435.  Zide requested an extension so that it he could review the matter and respond, and ETA granted the extension.  One day before the extension expired, Zide filed an action against ETA in the United States District Court for the Southern District of Ohio seeking declaratory relief. However, Zide—like HTC—did not serve the defendants. Instead, Zide sent ETA a letter, listing reasons why it had no liability. The letter did not mention the federal action filed the previous day.

In affirming the district court's dismissal of Zide's first-filed action, the Sixth Circuit held that Zide had had exhibited both bad faith and procedural fencing by secretly filing its complaint while continuing settlement discussions:

> If Plaintiffs' conduct was not mere deceptive gamesmanship, then they would have informed Defendants that they did not intend to make another settlement offer and would prefer to seek a judicial resolution. If it was not gamesmanship, Plaintiffs would not have filed suit in this Court during the extension period they requested for their new counsel. If it was not gamesmanship, they would have informed Defendants in the March 26, 1999 letter that they had filed suit.

*Id.* at 438.

Here, HTC engaged in precisely the type of conduct condemned in *Xoxide*, *Obsolete*, and *Zide*:  HTC told Saint Lawrence it would engage in settlement talks, then secretly filed a declaratory judgment action to secure venue in California.

Indeed, just three days before filing suit, HTC assured Saint Lawrence that "HTC is also happy to continue discussing the possibility of licensing for a broader geographic region." Wagner Dec. Ex. E. Rather than negotiate in good faith, however, HTC used the negotiations as a ploy to delay Saint Lawrence from filing suit in Texas. Worse, even after filing the lawsuit, HTC continued to negotiate with Saint Lawrence for months without ever informing Saint Lawrence of the lawsuit.

If HTC's "conduct was not mere gamesmanship," then HTC would have told Saint Lawrence that it did not intend to license the United States HD Voice patents and "prefer[red] to seek a judicial resolution." *Zide*, 16 Fed. Appx. at 438. Because "permitting this case to continue would reward a race to the courthouse that appears to have been 'won' by [HTC], at least in part, due to [HTC's] attorney … misle[ading] [Saint Lawrence] as to [HTC's] settlement intentions," the Court should "exercise its discretion to dismiss under the action under the Declaratory Judgments Act." *Charles Schwab & Co.,* 1998 WL 879659 at *1.

### C. The suit should be dismissed because HTC's failure to prosecute or serve its DJ action is evidence of gamesmanship and procedural fencing.

The purpose of the first-to-file rule in patent declaratory judgment actions is "to enable a person caught in controversy to obtain resolution of the dispute, instead of being forced to await the initiative of the antagonist." *Serco Services Co.*, 51 F.3d at 1039. But a plaintiff who files a declaratory judgment action yet then fails to *serve* it concedes that no pressing controversy exists: "[W]here the potential patent infringement defendant merely files a declaratory judgment action, and takes absolutely no steps to serve the complaint or prosecute the case, it cannot be said that the party legitimately uses the Declaratory Judgment Act." *Sorenson v. Big Lots Stores, Inc.*, 638 F.Supp.2d 1219, 1221 (S.D. Cal. 2009). Indeed, such placeholder filings are rightfully considered transparent gamesmanship. *See Zide*, 16 F.App'x at 438 ("Here, the district court considered lack of service to be

evidence of gamesmanship and procedural fencing, factors that also weigh heavily in favor of dismissing a declaratory action.").

In *Sorenson*, Big Lots filed its declaratory judgment action months before Sorenson filed its patent infringement action. 638 F.Supp.2d at 1221. Yet, Big Lots, like HTC, made no effort to prosecute its lawsuit. Nor did Big Lots bother to serve its lawsuit until weeks after the patent holder filed its infringement action. In dismissing Big Lots' declaratory judgment action, the court observed that "[f]iling first and then sitting on the action without service, as occurred here, renders the first-filed action filed in name only and not in such substance as to accord it any priority." *Id.* The same result applies here.

HTC filed its DJ action on March 9, 2015, but failed to serve it until June 18, 2015—more than two weeks after Saint Lawrence filed suit in Texas on June 2, 2015. If HTC was truly concerned about the legal status of its products, it had more than an adequate opportunity to pursue a declaratory judgment in the California court. It took no such action. Instead, it appears that HTC filed suit merely to ensure its choice of forum if litigation ensued. That is an improper use of the Declaratory Judgment Act. *See Tempco*, 819 F.2d at 750 (observing that the Declaratory Judgment Act is not a "procedural fencing" tool by which potential litigants may secure a delay or choose the forum). HTC's failure to timely serve or prosecute its DJ action weighs heavily in favor of dismissal. *See Schumacher Electric Corp. v Vector Products, Inc.*, 286 F.Supp.2d 953, 955 (N.D. Ill. 2003) (finding improper use of the Declaratory Judgment Act where party first-filed actions in another district but failed to prosecute them); *Mohr v. Margolis, Ainsworth, & Kinlaw Consulting, Inc.*, 434 F.Supp.2d 1051, 1062 (D. Kan. 2006) (declining to follow first-to-file rule where party failed to timely serve declaratory judgment suit, indicating suit was filed solely to secure party's choice of forum).

**III.    Alternatively, This Case Should Be Transferred To The Eastern District of Texas.**

If the Court does not dismiss HTC's declaratory judgment suit, the Court should transfer this case to the Eastern District of Texas where it can be consolidated with Saint Lawrence's pending infringement actions against LG Electronics, ZTE Corporation, and Motorola.

In the transfer context, exceptions to the first-filed rule "are not rare, and are made when justice or expediency requires, as in any issue of choice of forum." *Genetech, Inc. v Eli Lily and Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993).  When sound reasons make it unjust or inefficient to proceed with the first-filed suit, the general preference for the first-filed suit "should yield to the forum in which all interests are best served."  *Id.*  The transfer decision is committed to "the sound discretion of the trial court based not on per se rules but rather on an "'individualized, case-by-case consideration of convenience and fairness.""  *In re Vistaprint Ltd*., 628 F.3d 1342, 1346 (Fed. Cir. 2010) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The Federal Circuit has emphasized that judicial economy is the "paramount consideration" in the transfer analysis.  *In re Volkswagen of Am., Inc*., 566 F.3d 1349, 1351 (Fed. Cir. 2009).  Indeed, consideration of the interests of justice, which includes judicial economy, may be determinative, even if the convenience of the parties and the witnesses may call for a different result.  *Regents of the Univ. of Cal. v Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997); *see also Cisco Systems, Inc. v. TiVo*, 2012 WL 3279532 at *6 (N.D. Cal. Aug. 10, 2012) (transferring to the Eastern District of Texas on grounds of similar pending patent litigation in that forum).

Transfer is especially warranted in cases, like this one, presenting "the existence of multiple lawsuits involving the same issues."  *In re Volkswagen of Am., Inc*., 566 F.3d  at 1351.  As the Supreme Court observed in *Continental Grain Co. v The FBL-585*, 364 U.S. 19, 26 (1960), "[t]o permit a situation in which two

21

cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *See also Regents of Univ. of Cal.*, 119 F.3d at 1565 ("[I]n a case such as this in which several highly technical factual issues are presented and the other relevant factors are in equipoise, the interest of judicial economy may favor transfer to a court that has become familiar with the issues.").

Here, it would be both inefficient and unjust to proceed with HTC's declaratory judgment action.  Judge Gilstrap is presently supervising three lawsuits involving the *same* claims on the *same* patents in the Eastern District of Texas. Judge Gilstrap has already invested significant resources in Saint Lawrence's patent infringement actions against LG Electronics, Motorola, and ZTE.  Moreover, Judge Gilstrap has developed considerable familiarity with the underlying patent technology involving the five patents-in-suit.   Deference to the proper administration of justice is particularly appropriate in this type of circumstance, where the trial court is "familiar with [an] ... asserted patent and the related technology ... coupled with the fact there is co-pending litigation before the trial court involving the same patent and underlying technology."  *In re Vistaprint Ltd.*, 628 F.3d at 1347; *see also Teledyne Technologies Inc. v Harris Group,* 2011 WL 2605995 at * 2 (C.D. Cal. July 1, 2011) (dismissing declaratory judgment suit in favor of Florida infringement action where "the Florida court [was] quite familiar with the patents at issue").

Moreover, "the risk of inconsistent judgments and waste of judicial resources" outweighs any "equitable concern" that HTC might have in litigating this case in California.  *Aliphcom v. Wi-LAN Inc.*, 2010 WL 4699844, at *3 (N.D. Cal. Nov. 10, 2010).  Should this case proceed in California, this Court will need to conduct claim construction.  But the parties in the LG Electronics case in Texas, for example, have already submitted joint claim constructions, identified 100 terms for construal from the five patents, submitted briefing, and been granted a trial date in

1    early 2016.  And Saint Lawrence's cases against Motorola and ZTE are moving at a

2    similarly expedited pace.  Allowing the California suit to proceed would thus risk

3    inconsistent rulings and duplicative litigation.  That risk should be avoided.  *Colo.*

4    *River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As

5    between federal district courts ... the general principle is to avoid duplicative

6    litigation."); *see also Pacesetter Sys., Inc. v. Medtronic, Inc*., 678 F.2d 93, 96 (9th

7    Cir. 1982) (affirming dismissal where "permitting multiple litigation of these

8    identical claims could serve no purpose of judicial administration, and the risk of

9    conflicting determinations as to the patents' validity and enforceability was clear").

10   Accordingly, the transfer balance "tips in favor of the E.D. Tex. in light of its 'head

11   start' in these matters."  *Cisco Systems, Inc.*, 2012 WL 3279532 at * 7.

12          Finally, there is no question that the Eastern District of Texas has a much

13   stronger connection to this case than the Central District of California.   HTC

14   Corporation is a Taiwanese corporation headquartered in New Taipei City, Taiwan;

15   HTC America is a Washington corporation, headquartered in Bellevue,

16   Washington.   By contrast, Saint Lawrence is a Texas Corporation headquartered in

17   the Eastern District of Texas.   Considerations of convenience, judicial economy,

18   and efficiency thus all merit transfer—if not outright dismissal—of HTC's

19   preemptive declaratory judgment suit.

20

21

22

23

24

25

26

27

28

1

Dated:  August 10, 2015

2

Respectfully submitted,

3

/s/  Foster C. Johnson
Foster C. Johnson
California Bar No. 289055
Alisa A. Lipski
California Bar No. 278710
AHMAD, ZAVITSANOS, ANAIPAKOS,
ALAVI & MENSING P.C
1221 Mckinney Street, Suite 3460
Houston, TX 77010
Telephone: 713-655-1101
Facsimile: 713-655-0062

4

5

6

7

8

**ATTORNEYS FOR DEFENDANT
SAINT LAWRENCE
COMMUNICATIONS LLC**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24

SAINT LAWRENCE'S MOTION TO DISMISS; CASE NO. 8:15-CV-00378-CJC-DFM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's ECF System on the 10th day of August, 2015.

/s/ *Foster C. Johnson*
Foster C. Johnson

SAINT LAWRENCE'S MOTION TO DISMISS; CASE NO. 8:15-CV-00378-CJC-DFM