1     COOLEY LLP
     HEIDI L. KEEFE (178960)
2     (hkeefe@cooley.com)
     MARK R. WEINSTEIN (193043)
3     (mweinstein@cooley.com)
     PRIYA VISWANATH (238089)
4     (pviswanath@cooley.com)
     LAM K. NGUYEN (265285)
5     (lnguyen@cooley.com)
     3175 Hanover Street
6     Palo Alto, CA 94304-1130
     Telephone:  (650) 843-5000
7     Facsimile:   (650) 849-7400

8

9     Attorneys for Plaintiffs
     HTC Corporation and HTC America, Inc.

10

11            UNITED STATES DISTRICT COURT

12            CENTRAL DISTRICT OF CALIFORNIA

13

14     HTC CORPORATION, HTC           Case No. 8:15-CV-00378 CJC (DFMx)
     AMERICA, INC.,
15

16             Plaintiffs,            **HTC'S OPPOSITION TO
                                           ST. LAWRENCE'S MOTION TO
17        v.                               DISMISS OR TRANSFER**

18     ACACIA RESEARCH
     CORPORATION, SAINT            Hearing Date:    Sept. 14, 2015
19     LAWRENCE COMMUNICATIONS   Time:    1:30 p.m.
     LLC,                                Courtroom 9B
20             Defendants.            Judge:   Hon. Cormac J. Carney

21                                     Action Filed:    March 9, 2015
                                           Trial Date:    Not Set

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Table of Contents**

**Page**

INTRODUCTION ....................................................................................... 1

BACKGROUND ........................................................................................ 3

    A.    The Parties: HTC and Acacia ............................................... 3

    B.    The Patents-in-Suit and Accused Technology ..................... 4

    C.    HTC's License Negotiations with Acacia in California ...................... 4

    D.    HTC and Acacia Extensively Negotiate for a License ........................ 6

    E.    Lack of Involvement of SLC in License Negotiations ........................ 7

    F.    SLC's Second-Filed Suit in the Eastern District of Texas .................. 8

    G.    SLC's Suit Against LG in the Eastern District of Texas ..................... 9

ARGUMENT ............................................................................................. 9

I.      THIS COURT HAS PERSONAL JURISDICTION OVER SLC. ................. 9

    A.    Legal Standard ...................................................................... 9

    B.    SLC Is Subject to Personal Jurisdiction Through Acacia's Actions in California. ......................................................... 11

    C.    SLC Is Subject to Both General and Specific Jurisdiction Based on Its Parents' Contacts with This Forum. ......................................... 13

    D.    SLC's Alter Ego Status with Acacia Corp. Also Give This Court Personal Jurisdiction. ....................................................... 15

II.     THIS DISTRICT IS THE CORRECT FORUM FOR THIS ACTION. ....... 15

    A.    HTC's Suit Serves the Purpose of the Declaratory Judgment Act. ............................................................................ 15

    B.    The Limited Exceptions to the First-to-File Rule Do Not Apply. ...... 17

III.    THE TRANSFER FACTORS OVERWHELMINGLY FAVOR THIS DISTRICT. ....................................................................................... 20

    A.    Convenience to the Parties and Witnesses Favors This District. ......... 21

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

HTC'S OPPOSITION TO ST. LAWRENCE'S
MOTION TO DISMISS OR TRANSFER

1

2

**Table of Contents**
**Continued**

Page

3

4

5

B.    The Availability of Compulsory Process over the Non-Party
        Qualcomm Witnesses in Southern California Favors This
        Forum. .................................................................................................22

6

7

C.    The Location of the Accused Activity—Development in
        California of Chips with AMR-WB Capability—Favors This
        Forum. .................................................................................................23

8       D.    The Differences in Litigation Costs Favors This District. ..................23

9       E.    The Location of the Evidence Favors This District. ...........................24

10      F.    Judicial Economy Does Not Outweigh the Other Factors. .................24

11      G.    Other Factors Are Neutral or Favor This Forum. ..............................25

12      CONCLUSION ....................................................................................................25

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Table of Authorities**

**Page(s)**

**Cases**

*Adoma v. Univ. of Phx., Inc.*,
  711 F. Supp. 2d 1142 (E.D. Cal. 2010) .............................................................. 21

*Aeroflex USA, Inc. v. Armacell Enter. GmbH*,
  No. 3:13-cv-485-TAV-CCS, 2014 WL 652912 (E.D. Tenn. Feb. 20,
  2014) ....................................................................................................................... 18

*Ainsworth v. Experian Info. Sols., Inc.*,
  No. SACV 10–01706–CJC(RNBx), 2011 WL 2135713 (C.D. Cal.
  May 12, 2011)......................................................................................................... 21

*Alien Tech. Corp. v. Intermec, Inc.*,
  No. 3:06-cv-51, 2007 WL 63989 (D.N.D. Jan. 4, 2007).............................. 12, 14

*Amazon.com v. Cendant Corp.*,
  404 F. Supp. 2d 1256 (W.D. Wash. 2005) ........................................................... 23

*ASUSTeK Comput. Inc. v. AFTG-TG LLC*,
  No. 5: CV 11-00192-EJD, 2011 WL 6845791 (N.D. Cal. Dec. 29,
  2011) ....................................................................................................................... 10

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
  552 F.3d 1324 (Fed. Cir. 2008) ....................................................................... 9, 16

*Barnes & Noble, Inc. v. LSI Corp.*,
  823 F. Supp. 2d 980 (N.D. Cal. 2011)................................................................... 17

*Body Sci. LLC v. Boston Sci. Corp.*,
  846 F. Supp. 2d 980 (N.D. Ill. 2012).................................................................... 23

*Bryant v. Oxxford Express, Inc.*,
  181 F. Supp. 2d 1045 (C.D. Cal. 2000)........................................................... 18, 19

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) .......................................................................................... 9, 13

*Callaway Golf Co. v. Corp. Trade Inc.*,
  09cv384 L(POR), 2010 WL 743829 (S.D. Cal. Mar. 1, 2010) ........................... 17

Cooley LLP
Attorneys At Law
Palo Alto

-iii-

HTC's Opposition to St. Lawrence's
Motion to Dismiss or Transfer

1

**Table of Authorities**
**Continued**

2

Page(s)

3

*Capo, Inc. v. Dioptics Med. Prods., Inc.*,

4

387 F.3d 1352 (Fed. Cir. 2004) ........................................................................ 16

5

*Children's Network, LLC v. PixFusion LLC*,

6

722 F. Supp. 2d 404 (S.D.N.Y. 2010) ....................................................... 17, 24, 25

7

*Creative Nail Design, Inc. v. Mycone Dental Supply Co.*,

No. 11cv1658-CAB, 2012 WL 2106212 (S.D. Cal. June 11, 2012) ................... 18

8

9

*Dainippon Screen Mfg. Co. v. CFMT, Inc.*,

142 F.3d 1266 (Fed. Cir. 1998) ....................................................................*passim*

10

*Dorman Prods., Inc. v. Pontiac Coil, Inc.*,

11

No. 06-3157, 2006 WL 2927307 (E.D. Pa. Oct. 10, 2006) ............................... 18

12

*Elecs. For Imaging, Inc. v. Coyle*,

13

340 F.3d 1344 (Fed. Cir. 2003) ........................................................................ 10

14

*Elecs. For Imaging, Inc. v. Coyle*,

15

394 F.3d 1341 (Fed. Cir. 2005) .................................................................... 16, 18

16

*Google Inc. v. Rockstar Consortium US LP*,

No. C 13-5933 CW, 2014 WL 1571807 (N.D. Cal. Apr. 17, 2014) ............. 12, 14

17

18

*Inamed Corp. v. Kuzmak*,

249 F.3d 1356 (Fed. Cir. 2001) ........................................................................ 10

19

20

*In re Acer Am. Corp.*,

626 F.3d 1252 (Fed. Cir. 2010) ........................................................................ 24

21

22

*In re Apple, Inc.*,

581 F. App'x 886 (Fed. Cir. 2014) .................................................................... 22

23

*In re Founds. Worldwide, Inc.*,

24

542 F. App'x 998 (Fed. Cir. 2013) .................................................................... 18

25

*In re Genentech, Inc.*,

26

566 F.3d 1338 (Fed. Cir. 2009) .............................................................. 21, 22, 24

27

*In re TS Tech. USA Corp.*,

28

551 F.3d 1315 (Fed. Cir. 2008) ........................................................................ 24

-iv-

**HTC'S OPPOSITION TO ST. LAWRENCE'S**
**MOTION TO DISMISS OR TRANSFER**

**Table of Authorities**
**Continued**

Page(s)

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) (*en banc*) ................................................................ 22

*Intervet, Inc. v. Merial Ltd.*,
  535 F. Supp. 2d 112 (D.D.C. 2008) .............................................................. 19, 20

*j2 Global Commc'ns, Inc. v. Vitelity Commc'ns, LLC*,
  No. CV 11-07904 DDP (EX), 2012 WL 1229851 (C.D. Cal. Apr.
  12, 2012) ................................................................................................................ 15

*K-Swiss Inc. v. Puma AG Rudolf Dassler Sport*,
  No. CV 09-3022 GAF, 2009 WL 2049702 (C.D. Cal. July 9, 2009) ................ 18

*LSI Indus. Inc. v. Hubbell Lighting, Inc.*,
  232 F.3d 1369 (Fed. Cir. 2000) .................................................................... 9, 10

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
  518 F.3d 897 (Fed. Cir. 2008) .................................................................... 17, 20

*Mohr v. Margolis, Ainswroth & Kinlaw Consulting, Inc.*,
  434 F. Supp. 2d 1051 (D. Kan. 2006) .............................................................. 20

*Nacogdoches Oil & Gas, L.L.C. v. Leading Sols., Inc.*,
  No. 06-2551-CM, 2007 WL 2402723 (D. Kan. Aug. 17, 2007) ...................... 18

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
  626 F.3d 1222 (Fed. Cir. 2010) ........................................................................ 10

*Pfizer Inc. v. Synthon Holding, BV*,
  386 F. Supp. 2d 666 (M.D.N.C. 2005) .............................................................. 13

*Saint Lawrence Commc'ns, LLC v. LG Elecs., Inc.*,
  Case No. 2:14-CV-1055-JRG (E.D. Tex. filed Nov. 18, 2014) .......................... 9

*Schumacher Elec. Corp. v. Vector Prods., Inc.*,
  286 F. Supp. 2d 953 (N.D. Ill. 2003) ................................................................ 20

*Serco Servs. Co., L.P. v Kelley Co.*,
  51 F.3d 1037 (Fed. Cir. 1995) .......................................................................... 18

1

2

**Table of Authorities**
**Continued**

3

Page(s)

*Sorenson v. Big Lots Stores, Inc.*,
    638 F. Supp. 2d 1219 (S.D. Cal. 2009) ................................................................ 20

*Teledyne Techs. Inc. v. Harris Corp.*,
    No. CV 11-00139 DDP, 2011 WL 2605995 (C.D. Cal. July 1,
    2011) ...................................................................................................................... 18

*Trintec Indus. v. Pedre Promotional Prods.*,
    395 F.3d 1275 (Fed. Cir. 2005) ............................................................................ 10

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*,
    No. 6:09-cv-448-JDL, 2010 WL 2771842 (E.D. Tex. July 13, 2010) ............... 22

4

5

6

7

8

9

10

11

**Statutes and Rules**

28 U.S.C. § 1404(a) ..................................................................................................*passim*

Declaratory Judgment Act, 28 U.S.C. § 2201 .................................................... 15, 16

Fed. R. Civ. P. 4(m) .............................................................................................. 20

Fed. R. Civ. P. 12(h)(1) ........................................................................................ 13

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs HTC Corporation and HTC America, Inc. (collectively, "HTC"), oppose the Motion To Dismiss or, in the alternative, transfer to the Eastern District of Texas, filed by St. Lawrence Communications LLC ("SLC") as follows.

## INTRODUCTION

SLC's motion to dismiss is based on three arguments: (1) the Court lacks personal jurisdiction over SLC; (2) the Court should decline to hear this first-filed declaratory judgment action under the anticipatory suit exception; and (3) this action should be transferred to the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a). None of these arguments has any merit, and the motion to dismiss should be denied in its entirety.

First, this Court clearly has personal jurisdiction over SLC. SLC is merely a holding company to hold title to the patents-in-suit for defendant Acacia Research Corporation ("ARC"). SLC maintains significant and pervasive contacts through parent companies that conduct SLC's day-to-day business in this district. As the documents attached to SLC's motion to dismiss confirm, SLC operates through at least two Acacia employees who reside in this district and work at ARC's offices in Newport Beach. These individuals conducted licensing negotiations with HTC on SLC's behalf, including proposing and evaluating license terms, meeting with HTC in this district, and in all respects, holding themselves out as authorized to negotiate and approve licenses on behalf of SLC.

Federal Circuit law is clear that personal jurisdiction exists over SLC under these circumstances. *See Dainippon Screen Mfg. Co. v. CFMT, Inc*., 142 F.3d 1266, 1271 (Fed. Cir. 1998) (a patent holding company "cannot fairly be used to insulate patent owners from defending declaratory judgment actions in those fora where its parent company operates under the patent and engages in activities sufficient to create personal jurisdiction and declaratory judgment jurisdiction."). As shown below, SLC is merely a sham entity created to enable ARC to threaten and demand licenses from third parties, from its offices in Newport Beach, while avoiding

1    patent declaratory judgment actions in this district.

2         Second, there is no basis to invoke the "anticipatory suit" exception to the

3    first-to-file rule. The law is clear that the anticipatory suit exception applies only

4    when a declaratory judgment suit is filed in response to specific, concrete

5    information that a suit by the defendant was <u>imminent</u>. But there is no evidence of

6    any threat of imminent suit by SLC. HTC filed this declaratory judgment suit on

7    March 9, 2015 because a cloud of uncertainty lingered over its products in the

8    United States, despite months of attempts at good faith license negotiations.

9         The most SLC can muster is a declaration vaguely asserting that SLC told

10   HTC, in January 2015, that SLC would file a patent infringement action against

11   HTC if a license agreement could not be reached. No deadline or other concrete

12   indication was given as to when (if ever) SLC would file suit against HTC. HTC

13   did not file the present action until March 9, 2015, more than six weeks after this

14   alleged assertion. And SLC, for its part, waited almost three more months before

15   filing its own separate suit in the Eastern District of Texas in June 2015, further

16   undermining any suggestion that SLC was planning imminent action against HTC.

17   There is simply no evidence that HTC raced to the courthouse to bring this suit.

18        Third, SLC has not come close to showing that transfer to the Eastern District

19   of Texas under § 1404(a) is warranted. SLC's motion provides no evidence

20   suggesting that the Eastern District of Texas would be more convenient to the

21   parties and witnesses. This is because SLC has no such evidence – not a single

22   relevant witness or piece of evidence resides in that district. This district, in

23   contrast, is far more convenient for HTC, Acacia's headquarters, and close to the

24   manufacturer of the accused chipsets, San Diego-based Qualcomm Incorporated.

25        SLC has provided no basis for dismissal or transfer of this action. Its motion

26   to dismiss should be denied in its entirety.

27

28

**BACKGROUND**

**A.      The Parties: HTC and Acacia**

Plaintiff HTC Corporation is a Taiwan corporation headquartered in Taiwan, and a leading manufacturer of smartphones. Plaintiff HTC America, Inc. ("HTC America") is headquartered and has its principal place of business in Bellevue, Washington. (Declaration of Stephanie Bariault ("Bariault Decl."), ¶ 6.) HTC America has approximately 154 employees who work in or near its headquarters in Bellevue, many of whom are involved in projects relating to its products. (*Id.* ¶ 7.) HTC America maintains business documents and records relating to the marketing and sales of its products in Bellevue, Washington. (*Id.*)

ARC is in the business of acquiring patents from third parties and using them to extract royalties from operating companies. ARC is a prolific patent assertion entity, estimated as having orchestrated the filing of more than 650 patent infringement suits throughout the United States. (Complaint, ECF No. 1 ("Compl."), ¶ 12.) ARC does not manufacture, develop or sell any products or technologies of its own. (*Id.*) ARC maintains its headquarters in Newport Beach, California, in this judicial district. (*Id.* ¶ 4.)

ARC performs its day-to-day business through its wholly-owned, "primary operating subsidiary," Acacia Research Group LLC ("ARG"). (ECF No. 14-2 (Acacia Form 10-K), at p. 19.) ARG claims to have headquarters in Plano, Texas, but also maintains offices at ARC's headquarters in Newport Beach, and employs at least 10 people there. ("Declaration of Priya Viswanath ("Viswanath Decl."), Ex. A, ¶ 7 (Key Decl. in another case); *id.*, Ex. B (LinkedIn Profiles listing ARG as employer in this District); ECF No. 16-2 (Wagner Decl.).) ARC and ARG, in turn, have created dozens of shell patent holding companies that nominally hold title to the patent rights Acacia seeks to license. (ECF No. 14-2 (Acacia 10-K), at pp. 8-10 (listing 41 patent holding subsidiaries).)

One of Acacia's patent-holding subsidiaries is defendant Saint Lawrence

Communications, LLC ("SLC"), a wholly-owned subsidiary of ARG. (ECF No. 16-9, ¶ 5.) SLC was formed on December 6, 2013 to hold title to the patents-in-suit. (Compl. ¶ 8.) Mr. Key, SLC's CEO and apparently SLC's only employee, declares that SLC's sole office is in Plano, Texas. (ECF No. 16-9 (Key Decl.), ¶ 2.) But tellingly, Mr. Key does not state that SLC conducts any business at that address. As shown below, ARC and ARG employees in Newport Beach conduct SLC's day-to-day business, including negotiating licenses to the patents-in-suit.

### B.     The Patents-in-Suit and Accused Technology

The patents-in-suit were assigned from VoiceAge Corporation, which is located in Montreal, Canada. (Viswanath Decl., Ex. C.) There is no suggestion that SLC or Acacia had any involvement in the development of the VoiceAge patents. SLC claims that the patents cover any mobile handset that implements the Adaptive Multi-Rate-Wideband ("AMR-WB") speech compression standard. (Compl. ¶ 14.) HTC's current understanding is that the accused AMR-WB functionality is in the baseband processors obtained from Qualcomm Corporation, which is headquartered in San Diego. (Bariault Decl. ¶ 3.) The alleged infringement of HTC's products is therefore likely to turn largely, if not entirely, on the operation of the Qualcomm chips in accused HTC products, which may require witnesses, documentation and other evidence from Qualcomm. (*Id.*)

### C.     HTC's License Negotiations with Acacia in California

Beginning in July 2014, a German subsidiary of SLC initiated patent suits in Germany against communications carriers that offer HTC mobile handsets to customers. (Compl. ¶ 15.)  HTC was not itself named as a defendant in those suits, forcing HTC to intervene to defend the allegations against its mobile handsets. (*Id.*) In December 2014, HTC reached out to SLC's German subsidiary offering to enter into negotiations for a license to the German patents. (*Id.* ¶¶ 16, 17.) SLC responded by agreeing to enter into negotiations, but suggested that any license also include the United States patents. (*Id.* ¶ 17.)

The parties subsequently entered into a Confidentiality Agreement in December 2014. (*Id.*) That agreement required that communications between the parties after its Effective Date (December 26, 2014) be treated as confidential and not used in litigation. (ECF No. 16-5 (Ex. C to Wagner Decl.), Preamble, § 9 ("This Agreement continues in effect after the Effective Date hereof and covers all future related Discussions between the Parties . . . .").) In observance of that agreement, the factual allegations in the Complaint cease after the Effective Date, and the Complaint made clear that it was neither disclosing nor relying on information covered by the Confidentiality Agreement. (Compl. at 6 n.4 ("Discussions between Acacia Research and HTC occurring after execution of the NDA, if any, are not set forth in this Complaint and not relied upon for purposes of showing subject matter jurisdiction under 28 U.S.C. § 2201.").)

But SLC materially breached that contract by submitting various communications between the parties that post-date the Effective Date, and filing them as attachments to its motion.[1] Those communications are now part of the record, and provide further facts that show the existence of personal jurisdiction over SLC.[2] Those documents confirm that ARC and/or ARG employees in Newport

---

[1] The Confidentiality Agreement further obligated SLC to take all reasonable measures to prevent the parties' communications "from falling into the public domain." (ECF No. 16-5 (Ex. C to Wagner Decl), § 3.) In violation of this provision, SLC filed these confidential communications in the public docket, without even a request to file them under seal. The Court subsequently ordered that certain of those documents be removed from public availability, and subsequently granted HTC's motion to have them refiled under seal. (ECF Nos. 20, 24.)

[2] HTC maintains that St. Lawrence should never have disclosed communications covered by the Confidentiality Agreement or attempted to place them into evidence. (*See* ECF No. 16-5 (Ex. C to Wagner Decl.), §§ 3, 4.) But now that SLC has made them part of the record of this case, it would be unfair if HTC were not permitted to use those same documents to rebut SLC's allegations. To honor its obligations under the Confidentiality Agreement, however, HTC will only refer to the communications that were already entered into the record by SLC.

1   Beach worked on behalf of SLC to conduct its day-to-day business, including

2   negotiations with HTC for a possible license to the patents-in-suit.

3       For example, those documents reveal that Cristin Wagner and David

4   Rosmann, both vice presidents of ARG working from ARC's office in Newport

5   Beach, conducted extensive license negotiations with HTC with respect to the

6   patents-in-suit. (ECF No. 16-2 (Wagner Decl.); Wagner Decl. Exs. E & F (filed

7   under seal at ECF No. 24); Viswanath Decl., Exs. D & E (LinkedIn profiles).)

8   These individuals held themselves out as having full authority to conduct SLC's

9   business including, for example, offering terms for a license to HTC, physically

10  meeting with HTC in this district to discuss those terms, and approving or rejecting

11  terms proposed by HTC. (Wagner Decl. Exs. E & F.)  Notably, neither of these

12  individuals appear to hold any position at SLC, but they had authority to negotiate

13  on its behalf.

14      **D.     HTC and Acacia Extensively Negotiate for a License**

15      SLC attempts to portray the present suit as an anticipatory suit, but the

16  documents attached to SLC's motion establish otherwise. HTC's European counsel

17  and Acacia conducted lengthy negotiations over a potential license for the patents-

18  in-suit. The parties met in Tokyo, Japan, on January 23, 2015, at which time ARG

19  employees, acting on behalf of SLC, provided a proposed license agreement. (Ex. F

20  to Wagner Decl., at 7-8.) After HTC sent a mark-up to the license agreement, the

21  parties met again on February 9, 2015, in Mannheim, Germany, at which time the

22  Acacia employees went away with a list of follow-up items. (*Id.* at 6-7.) On

23  February 24, SLC's representatives at Acacia were still working on the mark-up,

24  had still not responded to their action items, and suggested meeting again the first

25  week of March. (*Id.* at 5-6.) On March 5, Acacia sent revised draft license

26  agreements. (*Id.* at 4-5.) On March 6, HTC sent Acacia a specific counter-offer,

27  with a detailed calculation of its proposed rate for a German license, and sought

28  information from Acacia indicating a different license value. (*Id.* at 3-4.)

On March 9, 2015, after many months of uncertainty and no meaningful progress in convincing Acacia to license the patents on reasonable terms, HTC filed an action in this Court to procure a judicial declaration that it does not infringe the patents. HTC nevertheless continued to seek information from Acacia on which to base any other further offers, expressing its frustration with Acacia's refusal to meaningfully negotiate a rate on fair, reasonable and non-discriminatory (FRAND) terms, or even agree to allow a court or arbitral panel to set a fair rate for a license to the German patents. (*Id.*, at 1-2.) HTC made clear that it was willing to negotiate a worldwide, license, but hoped to reach a license for Germany first, where SLC was threatening an injunction against HTC's customers. (*Id.* at 2.)

The parties subsequently met again on March 25, 2015 in Los Angeles. (SLC's Motion ("Mot."), at 11.) Acacia and HTC continued negotiating for a license at least through the spring of 2015. (ECF No. 16-2 (Wagner Decl.), ¶ 11.)

### E.     Lack of Involvement of SLC in License Negotiations

As shown above, Acacia representatives in California had extensive involvement in negotiating a potential license with HTC.  But there is no evidence that SLC or any Acacia representative from Texas took part in any of those negotiations.  In fact, Mr. Key, SLC's CEO and apparently its only employee, is conspicuously absent from those communications. Although he signed the Confidentiality Agreement in December 2014 on behalf of SLC, there is no evidence of any involvement by him in subsequent negotiations with HTC. In fact, he is not even copied on communications with HTC in which Acacia offered licensing terms on SLC's behalf. (*See* ECF No. 16-5; Exs. E & F to Wagner Decl.)

Mr. Key also wears various other hats within ARC and its other subsidiaries. He holds a title of Senior Vice-President of ARC, and CEO of ARG. (Viswanath Decl., Ex. F.) He serves as a Texas figurehead officer for SLC and other Acacia shell subsidiaries to provide them with a supposed locus in Texas. In fact, Mr. Key has filed substantially similar declarations in at least four other patent cases in an

attempt to thwart litigations from being heard anywhere other than the Eastern District of Texas.[3] Although Mr. Key claims to know about the acquisition of the patents in suit, the Patent Office patent assignment records identify Ms. Jennifer Graff, an ARC paralegal in Newport Beach, as SLC's correspondent for the Patents-in-Suit. (*Id.*, Ex. C (Assignment Record), Ex. K (Graff LinkedIn Profile.)

The other available evidence further indicates SLC and its parent companies operate as one entity. For example, according to records from the Texas Secretary of State, SLC was formed on December 6, 2013, listing ARG as its sole managing member, and listing the same business address as ARG's office in Plano, Texas. (*Id.*, Ex. L.) Although St. Lawrence maintains a website that provides licensing information about the patents-in-suit, including licensing terms and royalty rates, that website domain was registered in June 2014 by ARC in Newport Beach, and ARC is its sole administrator. (Compl. ¶ 10.) ARG and ARC share a web site, and often refers to the company merely as "Acacia" or "the company" on the site. (Viswanath Decl., Ex. J (selected pages from Acacia web site).) While 10 Acacia employees in this district identify themselves as ARG employees on their LinkedIn profiles (*id.*, Ex. B), many others do not bother to distinguish which entity they work for—ARC or ARG—merely listing their employer as "Acacia Research." (*Id.*, Ex. M.) The Acacia companies file joint annual reports, signed by their joint CFO in Los Angeles, California. (ECF No. 14-2 (Acacia 10-K), at p. F-1 (53 of 86).)

## F.   SLC's Second-Filed Suit in the Eastern District of Texas

SLC filed an infringement action against HTC in the Eastern District of Texas on June 2, 2015, almost three months after the filing of the present action. HTC America moved to dismiss the Texas action for lack of proper venue on July 24, 2015. (Viswanath Decl., Ex. N (HTC Motion To Dismiss).) SLC has not

---

[3]   *See, e.g.,* Viswanath Decl., Ex. A, G-I (declarations signed by Mr. Key in four other cases describing SLC and its purported Texas presence).

1  served, or sought a waiver of service of HTC Corporation.

2      **G.     SLC's Suit Against LG in the Eastern District of Texas**

3      On November 18, 2014, SLC filed a patent infringement suit against LG

4  Electronics in the Eastern District of Texas, alleging infringement of the patents at

5  issue here. *See Saint Lawrence Commc'ns, LLC v. LG Elecs., Inc.*, Case No. 2:14-

6  CV-1055-JRG (E.D. Tex. filed Nov. 18, 2014). It appears that little has occurred in

7  that case. LG filed its answer on August 21, 2015. The parties have engaged in

8  claim construction exchanges, but have not yet begun claim construction briefing.

9  (Viswanath Decl., Ex. O (Docket Control Order).)

10     On May 4, 2015, LG filed a motion to transfer to this district under § 1404(a)

11 based on convenience of parties and witnesses. (Viswanath Decl, Ex. P.) LG's

12 motion explains that its suit has minimal connections to Eastern Texas, but

13 substantial connections to this district. (*Id.* at 2-7.) That motion is pending.

14                         **ARGUMENT**

15 **I.    THIS COURT HAS PERSONAL JURISDICTION OVER SLC.**

16     **A.     Legal Standard**

17     The "constitutional touchstone" for personal jurisdiction "remains whether

18 the defendant purposefully established 'minimum contacts' in the forum State."

19 *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co.

20 v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction takes two forms,

21 general and specific, both of which exist here.

22     "General jurisdiction arises when a defendant maintains 'continuous and

23 systematic' contacts with the forum state even when the cause of action has no

24 relation to those contacts." *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369,

25 1375 (Fed. Cir. 2000).[4] There is no "specific test to follow when analyzing whether

26 ─────────────────────

27 [4] Federal Circuit law applies to personal jurisdiction over a declaratory judgment
action for non-infringement. *See, e.g.*, *Avocent Huntsville Corp. v. Aten Int'l Co.*,

28 552 F.3d 1324, 1328 (Fed. Cir. 2008).

a defendant's activities within a state are 'continuous and systematic.' Instead, a court must look at the facts of each case to make such a determination." *LSI Indus.*, 232 F.3d at 1375.

"Specific jurisdiction exists where the cause of action arises out of or relates to a defendant's contacts with the forum state, even if those contacts are isolated and sporadic." *ASUSTeK Comput. Inc. v. AFTG-TG LLC*, No. 5: CV 11-00192-EJD, 2011 WL 6845791, at *5 (N.D. Cal. Dec. 29, 2011) (citing *Trintec Indus. v. Pedre Promotional Prods.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005)). The Federal Circuit applies a three-part test to determine if specific jurisdiction exists: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360-61 (Fed. Cir. 2001) (citation omitted).

Where the court decides personal jurisdiction based on declarations and other written materials, and without an evidentiary hearing, a plaintiff need only make a *prima facie* showing of personal jurisdiction to defeat a motion to dismiss. *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010); *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). Uncontroverted allegations in the complaint must be taken as true. *Id.* If the plaintiff and the defendant submit admissible evidence, conflicts in the evidence must be resolved in the plaintiff's favor. *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1282-83 (Fed. Cir. 2005).[5]

---

[5]   California's long-arm jurisdictional statute authorizes personal jurisdiction to the full extent allowed by Due Process, and thus, presents no barrier to personal jurisdiction over SLC. *Elecs. For Imaging, Inc.*, 340 F.3d at 1349.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

10.

HTC'S OPPOSITION TO ST. LAWRENCE'S
MOTION TO DISMISS OR TRANSFER

**B.     SLC Is Subject to Personal Jurisdiction Through Acacia's Actions in California.**

As explained in the Background section above, SLC negotiated with HTC through its representatives in California, including Ms. Wagner and Mr. Rosmann, both vice presidents of ARG. These individuals held themselves out as agents of SLC who were authorized to conduct SLC's business including, for example, offering terms for a license to HTC, physically meeting with HTC in this district to discuss those terms, and approving or rejecting terms proposed by HTC. (Exs. E and F to Wagner Decl.) Notably, neither of these California individuals appear to hold any position at SLC, but nevertheless had full authority to negotiate on its behalf.

The Federal Circuit has made clear a patent holding company such as SLC cannot avoid personal jurisdiction when, as here, it lets employees of its parent company conduct license negotiations for the patents it holds. For example, in *Dainippon Screen Manufacturing Co. v. CFMT, Inc*., 142 F.3d 1266 (Fed. Cir. 1998), a company brought a declaratory judgment suit against a patent holding company and its parent. Like SLC, the defendants in *Dainippon* argued that there was no personal jurisdiction because the patent holding subsidiary was incorporated in Delaware and had no contacts in California.

The Federal Circuit disagreed and held that personal jurisdiction was proper with respect to both the parent and the subsidiary, stating:

> Stripped to its essentials, CFM [the parent] contends that a parent company can incorporate a holding company in another state, transfer its patents to the holding company, arrange to have those patents licensed back to itself by virtue of its complete control over the holding company, and threaten its competitors with infringement without fear of being a declaratory judgment defendant, save

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11.

HTC'S OPPOSITION TO ST. LAWRENCE'S
MOTION TO DISMISS OR TRANSFER

perhaps in the state of incorporation of the holding company. This argument qualifies for one of our "chutzpah" awards. . . . <u>While a patent holding subsidiary is a legitimate creature and may provide certain business advantages, it cannot fairly be used to insulate patent owners from defending declaratory judgment actions in those fora where its parent company operates under the patent and engages in activities sufficient to create personal jurisdiction and declaratory judgment jurisdiction</u>.

*Id.* at 1271 (internal citations and footnotes omitted; emphasis added). The Federal Circuit therefore held it was appropriate to impute the California parent company's actions to the patent-holding subsidiary to establish personal jurisdiction. *Id.*

SLC's argument mirrors the one that qualified for the Federal Circuit's "chutzpah" awards.  The essence of SLC's position is that it is entirely permissible (1) for ARC and ARG to establish SLC, a shell company in a carefully chosen district, to hold the patents-in-suit, (2) conduct all of SLC's day-to-day licensing activities within this judicial district, including threatening and demanding licensing fees from HTC, but (3) SLC cannot be sued for declaratory judgment anywhere but its carefully-chosen forum. *Dainippon* makes clear that in these circumstances, the Court properly has personal jurisdiction over SLC.

This Court should thus ignore SLC's assertion that only its Texas contacts are relevant. *See Google Inc. v. Rockstar Consortium US LP*, No. C 13-5933 CW, 2014 WL 1571807, at *4 (N.D. Cal. Apr. 17, 2014) (following *Dainippon* in imputing in-state contacts to out-of-state shell subsidiary to find personal jurisdiction); *Alien Tech. Corp. v. Intermec, Inc.*, No. 3:06-cv-51, 2007 WL 63989, at *7 (D.N.D. Jan. 4, 2007) (same; in case involving parent company, operating company, and shell patent-holding companies, all three "operate as one entity.");

CooLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12.

HTC'S OPPOSITION TO ST. LAWRENCE'S
MOTION TO DISMISS OR TRANSFER

*Pfizer Inc. v. Synthon Holding*, *BV*, 386 F. Supp. 2d 666, 674 (M.D.N.C. 2005) (same; exercising personal jurisdiction over patent-holding subsidiary in parent company's home state). Because SLC's agents and parent companies are subject to general and specific personal jurisdiction here, SLC's motion must be denied.

## C.   SLC Is Subject to Both General and Specific Jurisdiction Based on Its Parents' Contacts with This Forum.

There can be no serious dispute that this Court has personal jurisdiction over ARC and ARG, the parent companies of SLC. ARC maintains its headquarters in Newport Beach and is undoubtedly "at home" in this district. Although ARC has filed its own separate motion to dismiss, it did not raise lack of personal jurisdiction and has therefore waived any such assertion. *See* Fed. R. Civ. P. 12(h)(1). ARG shares the Newport Beach office with ARC and, together, ARC and ARG employ a significant number of employees to assert and exploit their patents.

The facts make clear that SLC has "purposefully directed" its activities at residents of California and the "contacts proximately result from actions by [SLC] that create a 'substantial connection' with the forum State." *Burger King Corp.*, 471 U.S. at 473, 475. SLC's purposefully directed activities include allowing executives residing in this district to conduct *all* negotiations for the patents-in-suit with HTC on SLC's behalf, from this district. (Exs. E & F to Wagner Decl.)   These executives, on SLC's behalf, made licensing offers for the patents-in-suit, rejected counter-offers made by HTC, and conducted at least one in-person meeting with HTC in this district to negotiate a license.

HTC's claims clearly "arise out of or relate to" these activities in California. In fact, SLC's licensing efforts, conducted entirely through its agents in California, were the very reason HTC and SLC could not agree to a license agreement. That created the lingering cloud over HTC's products in the United States, necessitating the filing of the present action. SLC has therefore "purposefully directed activities to residents of this forum in a way which relates materially to the enforcement or

Cooley LLP
Attorneys At Law
Palo Alto

13.

HTC's Opposition to St. Lawrence's
Motion to Dismiss or Transfer

1    defense of the patent, which is sufficient to establish specific jurisdiction." *Google*,

2    2014 WL 1571807, at *8.

3        This Court also has general personal jurisdiction over SLC based on its

4    imputed contacts with ARC and ARG. As noted above, ARC is headquartered in

5    this district. ARG shares that office, and together, they employ a significant number

6    of employees to assert and exploit their patents in this Forum. The Acacia

7    companies file only consolidated annual reports. (ECF No. 14-2 (Acacia 10-K).)

8    The Acacia companies earn millions of dollars in licensing revenue, much of it,

9    undoubtedly, from California entities. (Viswanath Decl., Ex. Q (estimating

10   $1,600,000 revenue from HP and Whatsapp for the first quarter of 2015).) The

11   Acacia companies pay state income tax in California. (ECF No. 14-2, at 76.) *See,*

12   *e.g., Alien Tech.*, 2007 WL 63989, at *5-6 (finding general jurisdiction over shell

13   patent holding company where corporate parent was registered and paid taxes in the

14   state, and had sold $270,000 worth of products in the state). Imputing these contacts

15   to SLC, as they must be under *Dainippon*, provide sufficient contacts to confer

16   general jurisdiction over SLC.

17       SLC asserts that it cannot be subject to general jurisdiction in California

18   because it is not "at home" here. (Mot. at 9.) But this argument ignores *Dainippon*

19   and the well-established law allowing the Court to impute the contacts of ARC and

20   ARG (and their employees) to SLC. Moreover, SLC's presence in Texas is a mere

21   artifice for litigation purposes only. The declaration of its CEO, Mr. Key, does not

22   name a single other employee in Texas, and describes no SLC business whatsoever

23   that occurs in Texas. (ECF No. 16-9.) This district is SLC's true home.

24       Finally, exercising jurisdiction over a shell patent holding company based on

25   the ample contacts of its operating parent company is clearly "reasonable and fair."

26   *Dainippon*, 142 F.3d at 1271 ("the parent-subsidiary relationship … leads to the

27   conclusion that the imposition of personal jurisdiction over CFMT is 'reasonable

28   and fair'") (citation omitted). SLC's motion to dismiss must therefore be denied.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14.

HTC'S OPPOSITION TO ST. LAWRENCE'S
MOTION TO DISMISS OR TRANSFER

**D.    SLC's Alter Ego Status with Acacia Corp. Also Give This Court Personal Jurisdiction.**

Although the facts described above are more than sufficient to provide a basis for personal jurisdiction over SLC, personal jurisdiction is also appropriate because SLC, ARG and ARC are alter egos of each other. As explained in the concurrently-filed opposition to ARC's motion to dismiss, there are sufficient facts alleged to show an alter ego relationship. (*See* HTC's Opposition to Acacia Research Corporation's Motion To Dismiss, at 7-11.)

The Court has enough information to find that Acacia's actions in California, on behalf of SLC, provide a basis for personal jurisdiction over SLC. Should the Court conclude otherwise, however, it should allow HTC jurisdictional discovery into the relationship between SLC and its operations in this District. "A plaintiff can also obtain discovery on jurisdictional facts, by making at least a 'colorable' showing of personal jurisdiction." *j2 Global Commc'ns, Inc. v. Vitelity Commc'ns, LLC*, No. CV 11-07904 DDP (EX), 2012 WL 1229851, at *3 (C.D. Cal. Apr. 12, 2012) (citing *Crystal Cruises, Inc. v. Motoeurs Leroy-Somer S.A.*, No. CV 10-8736, 2011 WL 2604886, at *3 (C.D. Cal. July 1, 2011) (denying motion to dismiss without prejudice and granting jurisdictional discovery)). HTC's arguments raise far more than a colorable claim, and thus, jurisdictional discovery into the alter ego status of ARC, ARG and SLC should be permitted if the Court is inclined to grant this motion.

**II.    THIS DISTRICT IS THE CORRECT FORUM FOR THIS ACTION.**

**A.    HTC's Suit Serves the Purpose of the Declaratory Judgment Act.**

SLC next argues that the Court should decline to exercise its jurisdiction over this declaratory judgment action under the anticipatory suit exception. (Mot. at 13-14.) As explained further below, that exception does not apply.

In order to determine whether the exercise of jurisdiction under the Declaratory Judgment Act is proper, the Court "must determine whether hearing the

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

15.

HTC'S OPPOSITION TO ST. LAWRENCE'S
MOTION TO DISMISS OR TRANSFER

case would 'serve the objectives for which the Declaratory Judgment Act was created.'" *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004) (quoting *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814 (Fed. Cir. 1996)). Where, as here, these objectives are served, "dismissal is rarely proper." *Capo, Inc.*, 387 F.3d at 1355.

The purpose of the Act is to rescue parties from "*in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests." *Elecs. For Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1346 (Fed. Cir. 2005) (quoting *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed. Cir. 1988)). That is precisely why HTC initiated this suit.

SLC sued HTC's customers in Germany without directly suing HTC, thus forcing HTC to negotiate with a proverbial gun to its head. This put HTC's business interests in Germany in danger. HTC thus reached out to SLC offering to take a license (not the other way around). SLC consistently rejected HTC's good faith offers for a license in Germany (with continued negotiations with respect to other countries), even after HTC agreed to a third-party rate setting procedure for the German license. (Ex. F to Wagner Decl, at 2 (filed under seal).)  And when it filed an infringement action against LG, SLC inexplicably declined to sue HTC.

The German and Texas actions, which alleged that mobile handsets using the AMR-WB standard infringed the patents-in-suit, "infect[ed] the competitive environment of the business community with uncertainty and insecurity." *Elecs. For Imaging, Inc.,* 394 F.3d at 1346 (citation omitted). In short, SLC's actions are precisely the type of conduct the Declaratory Judgment Act is intended to address. *See Avocent*, 552 F.3d at 1332 ("Thus, the nature of the claim in a declaratory judgment action is 'to clear the air of infringement charges.'") (citation omitted).

Cooley LLP
Attorneys At Law
Palo Alto

16.

HTC's Opposition to St. Lawrence's
Motion to Dismiss or Transfer

**B.     The Limited Exceptions to the First-to-File Rule Do Not Apply.**

SLC argues that the court should decline jurisdiction over HTC's declaratory judgment action, because it was an "anticipatory suit", "bad faith," or "procedural fencing." (Motion, at 16-18.) "The general rule favors the forum of the first-filed action, whether or not it is a declaratory judgment action." *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008). SLC does not dispute that the present action is the first-filed action, but asserts that the Court should disregard the first-filed status under the anticipatory suit exception.

But the anticipatory suit exception is a narrow one.  "A suit is 'anticipatory' for the purposes of being an exception to the first-to-file rule if the plaintiff in the first-filed action filed suit acts on receipt of specific, concrete indications that a suit by the defendant was imminent." *Callaway Golf Co. v. Corp. Trade Inc.*, No. 09cv384 L(POR), 2010 WL 743829, at *3 (S.D. Cal. Mar. 1, 2010); *Children's Network, LLC v. PixFusion LLC*, 722 F. Supp. 2d 404, 412 (S.D.N.Y. 2010) ("'[I]n order for a declaratory judgment action to be anticipatory, it must be filed in response to a direct threat of litigation that gives specific warnings as to deadlines and subsequent legal action.'") (citation omitted); *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 992 (N.D. Cal. 2011) ("Indeed, the point of the Declaratory Judgment Act is to afford a measure of relief to the potential infringer who is under the shadow of threatened infringement litigation. Given this purpose, the mere potential of future litigation would not render a declaratory judgment suit 'anticipatory' so as to vitiate the first-filed rule.") (internal quotations, citation, and alteration omitted).

There is no evidence of any imminent threat of litigation by SLC.  The only evidence in the record as to any litigation threat by SLC comes from the declaration of Mr. Anaipakos, who claims that during a meeting in Tokyo on January 23, 2015, SLC told HTC that hoped to reach a license with HTC, but "would file a patent infringement action against HTC in Texas if no such amicable license was

reached." (ECF No. 16-1 (Anaipakos Decl.), ¶ 2.) This statement does not come close to the type of imminent threat required by the anticipatory suit exception. No deadline was provided.  SLC's warning was little more than "blowing smoke about a potential lawsuit." *Bryant v. Oxxford Express, Inc.*, 181 F. Supp. 2d 1045, 1048-49 (C.D. Cal. 2000) (quoting *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1007 (8th Cir. 1993)).   In contrast, each case string-cited by SLC involved a declaratory judgment plaintiff filing in response to unequivocal notice that the defendant was about to file suit.[6]

SLC also alleges that its December 22, 2014 letter, and its November 2014 infringement suit against LG constituted "specific, concrete" indications that litigation against HTC was imminent. Those actions at best put HTC on notice that SLC was accusing AMR-WB devices of infringement, and provided a basis for declaratory judgment jurisdiction. *Elecs. For Imaging, Inc.,* 394 F.3d at 1346. But with respect to the possibility of a patent infringement suit against HTC, those

---

[6] *See Serco Servs. Co., L.P. v Kelley Co.*, 51 F.3d 1037, 1039-40 (Fed. Cir. 1995) (DJ suit filed three days before patentee's deadline); *In re Founds. Worldwide, Inc.*, 542 F. App'x 998, 998-99 (Fed. Cir. 2013) (one day before patentee's firm deadline); *Creative Nail Design, Inc. v. Mycone Dental Supply Co.*, No. 11cv1658-CAB (WMc), 2012 WL 2106212, at *1-3 (S.D. Cal. June 11, 2012) (13 days after receiving a draft complaint, with notice that Plaintiff was ready to file); *Teledyne Techs. Inc. v. Harris Corp.*, No. CV 11-00139 DDP (AJWx), 2011 WL 2605995, at *3 (C.D. Cal. July 1, 2011) (after patentee said it was ready to take "the next step" and that plaintiff was patentee's "next litigation target"); *K-Swiss Inc. v. Puma AG Rudolf Dassler Sport*, No. CV 09-3022 GAF (PLAx), 2009 WL 2049702, at *1-2 (C.D. Cal. July 9, 2009) (on the same day as trademark owner's deadline); *Aeroflex USA, Inc. v. Armacell Enter. GmbH*, No. 3:13-cv-485-TAV-CCS, 2014 WL 652912, at *5-7 (E.D. Tenn. Feb. 20, 2014) (three days before patentee's deadline); *Dorman Prods., Inc. v. Pontiac Coil, Inc.*, No. 06-3157, 2006 WL 2927307, at *2-3 (E.D. Pa. Oct. 10, 2006) (one-two days after receiving a draft complaint, asking if plaintiff would accept service); *Nacogdoches Oil & Gas, L.L.C. v. Leading Sols., Inc.*, No. 06-2551-CM, 2007 WL 2402723, at *1, *3 (D. Kan. Aug. 17, 2007) (same day as deadline in case involving state law claims).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

18.

HTC'S OPPOSITION TO ST. LAWRENCE'S
MOTION TO DISMISS OR TRANSFER

1   actions merely raised the potential of a future lawsuit, which does not render a

2   declaratory judgment suit anticipatory.  *See Bryant*, 181 F. Supp. 2d at 1048-49.

3       SLC's other alleged theories of "gamesmanship" do not comport with the

4   evidence. SLC baldly alleges that the filing of the Complaint in this action was a

5   "secret," and that HTC did not provide it with notice. But SLC does not deny that it

6   was aware of HTC's suit as the parties continued negotiating with HTC following

7   the filing of this action. Even LG's motion to transfer in the Texas action, filed

8   May 4, 2015, specifically references this suit and attaches a copy of the Complaint.

9   (Viswanath Decl., Ex. P, at p. 7.)

10      Nor is there any evidence that HTC engaged in insincere settlement

11  discussions while running to the courthouse to secure its chosen forum, as was the

12  case in the decisions cited by SLC. (Mot., at 16-19.) HTC did not "lull" SLC into

13  continuing settlement negotiations. After all, it was HTC that first reached out to

14  SLC in to negotiate a possible license. (Compl. ¶¶ 16, 17.) The correspondence

15  between the parties reveals that HTC made good faith and extensive efforts to

16  negotiate with SLC. (*See, e.g.*, Wagner Decl. Exs. A-F.) If HTC's goal was simply

17  to obtain its choice of forum, it could have just filed a declaratory judgment suit

18  once SLC sued HTC's customers in Germany and LG in Texas, instead of spending

19  months attempting to negotiate a license. By the time HTC filed suit in March

20  2015, the parties were simply too far apart in their licensing proposals.  The strong

21  public policy favoring settlement did not require HTC to refrain from seeking a

22  judicial determination of its non-infringement of the patents, even as it continued in

23  its attempts to negotiate a reasonable license.

24      SLC also claims that bad faith is evidenced by the fact that HTC did not

25  immediately serve its Complaint.  But this does not justify departing from the first-

26  to-file rule.  *See Intervet, Inc. v. Merial Ltd.*, 535 F. Supp. 2d 112, 115 (D.D.C.

27  2008) ("Nor is the first-to-file rule overcome by [defendant's] allegation that

28  [plaintiff] did not immediately serve the complaint . . . .").  HTC was entitled to use

Cooley LLP
Attorneys At Law
Palo Alto

19.

HTC'S OPPOSITION TO ST. LAWRENCE'S
MOTION TO DISMISS OR TRANSFER

the time permitted under the Federal Rules to attempt to continue negotiations before service.  These actions are "permissible under the Federal Rules of Civil Procedure [which] provide[] that a party has 120 days to serve its complaint before the complaint will be dismissed for lack of service." *Id.*; *see also Dainippon Screen*, 142 F.3d at 1273 (affirming declaratory judgment jurisdiction where plaintiff did not serve initial complaint). SLC's cited cases do not apply as they involve failures to timely serve as required by Federal Rule of Civil Procedure 4(m).[7]

Finally, even if there was some merit to SLC's allegation that this was an anticipatory suit (and there is none), "the Federal Circuit has made it clear that an anticipatory filing does not suffice to overcome the first-to-file rule." *Intervet, Inc.*, 535 F. Supp. 2d at 115 (citing *Elecs. For Imaging, Inc*., 394 F.3d at 1347-48).  In fact, Federal Circuit law is clear that whether a declaratory suit is anticipatory "is merely one factor" in the analysis of the transfer factors under 28 U.S.C. § 1404(a). *Micron Tech., Inc.*, 518 F.3d at 904.   As explained below, the transfer and convenience factors under § 1404(a) overwhelmingly favor this district. If SLC wished to file suit against HTC in Texas, it could have done so. SLC cannot now complain that HTC has brought its claims in a much more convenient forum.

## III.   THE TRANSFER FACTORS OVERWHELMINGLY FAVOR THIS DISTRICT.

In the alternative, SLC argues that this case should be transferred to the Eastern District of Texas under 28 U.S.C. § 1404(a). "Whether a transfer is appropriate requires an individualized consideration of the parties' and witnesses' private interests as well as the public interests in litigating the case in a particular

---

[7] *Sorenson v. Big Lots Stores, Inc.*, 638 F. Supp. 2d 1219, 1221 (S.D. Cal. 2009) (declaratory judgment plaintiff did not serve for over eight months after filing); *Mohr v. Margolis, Ainsworth & Kinlaw Consulting, Inc.*, 434 F. Supp. 2d 1051, 1055-56 (D. Kan. 2006) (same; over six months.); *Schumacher Elec. Corp. v. Vector Prods., Inc.*, 286 F. Supp. 2d 953, 954 (N.D. Ill. 2003) (same; dismissing his first filed suit after over four months and then filing another).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

20.

HTC'S OPPOSITION TO ST. LAWRENCE'S
MOTION TO DISMISS OR TRANSFER

forum." *Ainsworth v. Experian Info. Sols., Inc.,* No. SACV 10–01706–CJC(RNBx), 2011 WL 2135713, at *1 (C.D. Cal. May 12, 2011).  "Because the plaintiff's choice of forum is entitled to deference, a defendant seeking to transfer a case must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Id.*  SLC has made no such showing.

### A.    Convenience to the Parties and Witnesses Favors This District.

Convenience of witnesses is "probably the single most important factor" in the relevant analysis. *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (internal quotations and citation omitted).  The party seeking transfer must demonstrate, "through affidavits or declarations containing admissible evidence, who the key witnesses will be and what their testimony will generally include." *Adoma v. Univ. of Phx., Inc.*, 711 F. Supp. 2d 1142, 1151 (E.D. Cal. 2010).  SLC did not submit any such evidence.

In fact, the most important fact witnesses on SLC's infringement claim likely will be non-party Qualcomm employees who work in Southern California, who are knowledgeable about the design and operation of the accused baseband processors. (Bariault Decl. ¶ 3.) "Qualcomm began in San Diego in 1985," and its "San Diego headquarters encompasses *all* of the company's divisions and business areas." (Viswanath Decl., Ex. R (Qualcomm Website, "San Diego Careers").) In fact, Qualcomm's principal place of business is in the San Diego area, where it has more than 40 offices buildings. (*Id.*, Ex. S, ¶ 2 (Declaration of Qualcomm witness as filed in recent case).) Qualcomm's headquarters is within 100 miles of this Court and less than 1.5 hours driving distance from this Court, far more convenient than the Eastern District of Texas. (*Id.*, Ex. T.) In addition, SLC's relevant witnesses regarding the licensing of the patents-in-suit—Ms. Wagner and Mr. Rosmann— reside and work in this district. (*See supra* at 6.) Indeed, since SLC claims that the patents-in-suit are standard essential, an important part of this litigation may be the appropriate royalty rate for a license to these patents – making these two witnesses

Cooley LLP
Attorneys At Law
Palo Alto

21.

HTC's Opposition to St. Lawrence's
Motion to Dismiss or Transfer

crucial to the case. Thus, "there are a substantial number of witnesses with material and relevant information residing in either the transferee venue or the state of California who will be unnecessarily inconvenienced in having to travel to Texas to testify." *In re Genentech*, 566 F.3d at 1348 (ordering transfer from Texas to the Northern District of California, where "two of the three parties are [] headquartered in the transferee venue or [] San Diego, California").

Similarly, this forum is far more convenient for HTC's witnesses. All of HTC America's possible witnesses work in Washington state, about a 2.5 hour flight from Los Angeles. (Bariault Decl., ¶¶ 8, 10.) HTC Corporation witnesses likely reside in Taiwan and can much more easily take a direct flight to Los Angeles, than travel to the Eastern District of Texas. (*Id.*, ¶¶ 8, 11.)

The only out-of-state SLC witness mentioned in its motion is its figurehead CEO, Mr. Key. In the LG case in Texas regarding the same patents, in fact, SLC described Mr. Key's knowledge in its Initial Disclosures as relating only to "St. Lawrence's facility and location of relevant documents." (Viswanath Decl., Ex. T, at 4.) Those issues are related only to venue, and not issues that will be the subject of trial.  Any inconvenience in bringing him to California, even if he had any relevant testimony to offer, would be far outweighed by the inconvenience to HTC and the non-party witnesses—including the important Qualcomm employees—if this case were transferred to Texas.

**B.     The Availability of Compulsory Process over the Non-Party Qualcomm Witnesses in Southern California Favors This Forum.**

The Federal Circuit has also held that the availability of compulsory process "will weigh heavily in favor" of finding that a forum is appropriate. *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (*citing In re Genentech*, 566 F.3d at 1345); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008) (*en banc*) (favoring a venue that had "absolute subpoena power for both depositions and trial" over one that did not); *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. 6:09-cv-

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

22.

HTC'S OPPOSITION TO ST. LAWRENCE'S
MOTION TO DISMISS OR TRANSFER

448-JDL, 2010 WL 2771842, at *9 (E.D. Tex. July 13, 2010) (favoring district with potentially important non-party witnesses over district with no non-party witnesses). Because Qualcomm's headquarters is within 100 miles of this Court, Qualcomm is within this Court's absolute subpoena power. (Viswanath Decl., Ex. R.) This factor is important because the non-party Qualcomm witnesses in Southern California know the accused technical functionality and can explain the details to the jury as needed to help determine infringement/non-infringement and other issues. (Bariault Decl., ¶¶ 3-4.) At this stage, there is no guarantee that these material fact witnesses would attend trial without a subpoena.

### C. The Location of the Accused Activity—Development in California of Chips with AMR-WB Capability—Favors This Forum.

"In patent infringement actions, the preferred forum is 'that which is the center of gravity of the accused activity.'" *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005) (internal quotations omitted); *Body Sci. LLC v. Boston Sci. Corp.*, 846 F. Supp. 2d 980, 992 (N.D. Ill. 2012). In this case, California is the center of gravity, where Qualcomm developed the accused functionality. It is also much closer to Washington state and Taiwan, the location of any potential HTC witnesses, such as those with knowledge regarding the integration of the Qualcomm chips into HTC phones, sales and marketing of those devices, and licensing practices. (Bariault Decl., ¶ 8.)

### D. The Differences in Litigation Costs Favors This District.

The differences in the likely costs of litigation in the two forums indicates that California will be substantially less costly than Texas, in addition to being much more convenient for the parties and witnesses. As explained by the Federal Circuit in ordering transfer of a case out of Texas, "[a]dditional distinct from home means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must stay away from their regular

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1  employment." *In re TS Tech. USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008)

2  (internal quotations and citation omitted). Trial in Texas would require much more

3  "expenses for airfare, meals, and lodging, as well as losses in productivity from

4  time spent away from work" for HTC, Qualcomm and Acacia witnesses. *In re Acer*

5  *Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010).

6      **E.     The Location of the Evidence Favors This District.**

7      "In patent infringement cases, the bulk of the relevant evidence usually

8  comes from the accused infringer. Consequently, the place where the defendant's

9  documents are kept weights in favor of transfer to that location." *In re Genentech*,

10 566 F.3d at 1345 (citation omitted). The relevant documents and other evidence in

11 this case will mostly come from Qualcomm in San Diego. (Bariault Decl. ¶ 3,

12 Viswanath Decl., Ex. S, ¶ 9 (Qualcomm legal discovery team in San Diego).) In

13 addition, documents regarding licensing of the patents-in-suit will come from Ms.

14 Wagner and Mr. Rosmann in Newport Beach, CA. (*Id.*, Exs., D-E.)

15     **F.     Judicial Economy Does Not Outweigh the Other Factors.**

16     SLC argues that the existence of other pending actions in Texas weighs in

17 favor of transfer. (Motion at 21.)  But SLC fails to show that its pending actions in

18 Texas (beyond its second-filed action against HTC) are related to this dispute

19 beyond the fact that they "involve the same patents." *Children's Network*, 722 F.

20 Supp. 2d at 415 ("The fact that [patent owner] initiated patent infringement

21 litigation in the Eastern District of Texas involving other parties and other products

22 does not entitle it to litigate all disputes concerning those same patents in that

23 forum.").  HTC is not affiliated with the other defendants in the Texas actions.

24     Those actions also appear to have made very little progress.  All of those

25 actions except for the one against LG were filed after this action.  Although the LG

26 action was filed prior to this one, LG has filed a motion to transfer that action to

27 this district under § 1404(a).  (*See* Viswanath Decl. Ex. P (Motion to Transfer).)  In

28 any case, SLC "cannot use the Texas action as a magnet to attract other cases,

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

24.

HTC'S OPPOSITION TO ST. LAWRENCE'S
MOTION TO DISMISS OR TRANSFER

1   which may present very different collateral issues, to a forum where those cases

2   would not otherwise be." *Children's Network*, 722 F. Supp. 2d at 415.[8]

3         SLC also claims to be concerned about "the risk of inconsistent judgments

4   and waste of judicial resources." (Motion at 22.) But "its apprehension is

5   misplaced." *Children's Network*, 722 F. Supp. 2d at 415. "Patent holders often

6   litigate cases and bring claims alleging infringement of the same patent in multiple

7   jurisdictions against different parties" and "avoid discrepancies by application of

8   the doctrine of collateral estoppel and by appealing decisions to the Court of

9   Appeals for the Federal Circuit." *Id.*

10      **G.   Other Factors Are Neutral or Favor This Forum.**

11        As set forth above, the most important convenience and fairness factors

12  strongly favor this forum. Other factors that courts consider are either neutral or

13  irrelevant. For example, the claims in the present are governed by federal patent law

14  that both districts are equally qualified to apply.

15                                **CONCLUSION**

16        As this Court has personal jurisdiction over SLC and the relevant transfer

17  factors do not favor transfer, HTC respectfully requests the Court to deny SLC's

18  motion to dismiss, or in the alternative transfer.

19

20  Dated: August 24, 2015        Respectfully submitted,
                                  COOLEY LLP

21

22                              By: */s/ Heidi L. Keefe*

23                              Attorneys for Plaintiffs
                                HTC Corporation and HTC America, Inc.

24

25  _____

26  [8]   SLC frivolously argues that the assigned Judge in the Eastern District of Texas
    "has developed considerable familiarity with the underlying patent technology

27  involving the five patents-in-suit." (Mot. at 22.)  SLC does not explain how this is
    possible considering that the district judge in Texas has not issued any substantive

28  rulings, and no briefing on any substantive issue has even begun.