1   Foster C. Johnson, (SBN 289055)
2   fjohnson@azalaw.com
    Alisa A. Lipski
3   alipski@azalaw.com
4   Ahmad, Zavitsanos, Anaipakos,
    Alavi & Mensing P.C.
5   1221 McKinney, Ste. 3460
6   Houston, TX 77010
    (713) 655-1101 – Main
7   (713) 655-0062 – Facsimile
8
    Attorneys for Defendant
9   Saint Lawrence Communications LLC
10
11              UNITED STATES DISTRICT COURT
12              CENTRAL DISTRICT OF CALIFORNIA
13
14
15   HTC CORPORATION, HTC            Case No. 8:15-CV-00378 CJC
     AMERICA, INC.,                  (DFMx)
16
               Plaintiffs,           SAINT LAWRENCE'S REPLY
17                                   IN SUPPORT OF ITS MOTION
          v.                         TO DISMISS OR TRANSFER
18
     ACACIA RESEARCH               [*Filed concurrently with the
19   CORPORATION, SAINT LAWRENCE   Supplemental Declarations of
     COMMUNICATIONS LLC,           Demetrios Anaipakos and Cristin
20                                 Wagner, and Declarations of Foster
               Defendant.          Johnson, Clayton Haynes, and David
21                                 Rosmann*]
22
23                                   Hearing:
24                                   Date:  September 14, 2015
                                     Time:  1:30 p.m.
25                                   Ctrm:  9B
26                                   Judge:  Hon. Cormac J. Carney
                                     Action Filed:  March 9, 2015
27
28

1

# **TABLE OF CONTENTS**

2

3

INTRODUCTION ....................................................................................................1

I.    HTC's suit should be dismissed as a bad faith placeholder action because it misled Saint Lawrence about its settlement intentions. ...................................3

II.   HTC's suit should be dismissed because the Court lacks personal jurisdiction over Saint Lawrence. .....................................................................................10

A.    Saint Lawrence is not subject to general jurisdiction............................10

B.    Saint Lawrence is not an alter-ego of Acacia Research Corporation.....15

1.    No showing of financial fraud. ....................................................15

2.    No showing of unity of interest. ..................................................17

C.    Saint Lawrence is not subject to specific jurisdiction. ..........................18

D.    No jurisdictional discovery is warranted...............................................19

III.  The public and private transfer factors strongly favor transfer to Texas.......20

A.     The public interest factors weigh strongly in favor of transfer. ..........20

B.    The private interest factors—location of evidence, compulsory process, and litigation costs—weigh strongly in favor of transfer......................23

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

*Ali v. Carnegie Inst. of Wash.*,
   306 F.R.D. 20 (2014) ........................................................................14

*Amazon.com v. Cendant Corp.*,
   404 F. Supp. 2d 1256 (W.D. Wash. 2005)...............................20, 21, 24

*AmSouth Bank v. Dale*,
   386 F.3d 763 (6th Cir.2004)................................................................6

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008).............................................................19

*Boston Scientific Corp. v. Wall Cardiovascular Technologies, LLC*,
   647 F. Supp. 2d 358 (D. Del. 2009) .....................................................16

*Calvert v. Huckins*,
   875 F. Supp. 674 (E.D. Cal. 1995)................................................15, 17

*Charles Schwab & Co. v. Duffy*,
   1998 WL 879659 (N.D. Cal. Dec. 8, 1998) ...........................................5

*Children's Network, LLC v. PixFusion LLC*,
   722 F. Supp. 2d 404 (S.D.N.Y. 2010)..................................................22

*Cisco Systems, Inc. v. Tivo, Inc.*,
   2012 WL 3279532 (N.D. Cal. Aug. 12, 2012).......................................22

*Creative Nail Design, Inc. Mycone Dental Supply Co.*,
   2012 WL 2106212 (S.D. Cal. June 11, 2012).........................................5

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014) ...............................................................passim

*Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*,
   142 F.3d 1266 (Fed. Cir. 1998)...............................................13, 14, 15

*Data Disc., Inc. v. Sys. Tech. Assoc., Inc.*,
   557 F.2d 1280 n.1 (9th Cir. 1977).......................................................19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Decker Coal Co. v. Commonwealth Edison Co.*,
    805 F.2d 834 (9th Cir.1986)...................................................................................20

*DeFeo v. Procter & Gamble Co.*,
    831 F.Supp. 776 (N.D.Cal.1993) ..........................................................................4

*Delano Farms Co. v. Cal. Table Grape Com'n*,
    623 F.Supp.2d 1144 (E.D. Cal 2009)....................................................................14

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001)................................................................................18

*Electric Corp. v. Vector Products, Inc.*,
    286 F.Supp. 953 (N.D. Ill. 2003) .........................................................................13

*Ergo Licensing, LLC v. Cardinal Health*, *Inc.*
    2009 WL 2021926 (D. Maine July 13, 2009)........................................................15

*Firstmark Capital Corp. v. Hempel Financial Corp.*,
    859 F.2d 92 (9th Cir.1988)...................................................................................16

*Galileo International Partnership v. Global Village Communication, Inc.*,
    1996 WL 452273 (N.D.Ill.1996)............................................................................8

*Heller Financial, Inc., v. Midwhey Powder Co.*,
    883 F.2d 1286 (9th Cir.1989)...............................................................................20

*Hill v. City of Clovis*,
    2012 WL 787609 (E.D. Cal. Mar. 9, 2012) ..........................................................18

*ICON Health & Fitness, Inc. v. Beachbody, LLC*,
    2011 WL 1899390 (D. Utah May 19, 2011)............................................................8

*In re Volkswagen of Am., Inc.*,
    566 F.3d 1349 (Fed. Cir. 2009).............................................................................22

*Intervet, Inc. v. Merial Ltd.*,
    535 F.Supp.2d 112 (D.D.C. 2008) ......................................................................7, 8

SAINT LAWRENCE'S REPLY ISO MOTION TO DISMISS; NO. 8:15-CV-00378-CJC-DFM

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*,
   394 F.3d 1143 (9th Cir. 2004)..................................................................18

*Kramer Motors, Inc. v. British Leyland, Ltd.*,
   628 F.2d 1175 (9th Cir.1980)..................................................................18

*LSI Indus. Inc. v. Hubbell Lighting, Inc.*,
   232 F.3d 1369 (Fed. Cir. 2000)..............................................................10

*McJunkin Corp. v. Cardinal Sys., Inc.*,
   190 F. Supp. 2d 874 (S.D.W. Va. 2002) ...................................................9

*Mohr v. Margolis, Ainsworth, & Kinlaw Consulting, Inc.*,
   434 F.Supp.2d 1051 (D. Kan. 2006) ........................................................8

*No Cost Conference, Inc. v. Windstream Comm., Inc.*,
   940 F. Supp. 2d 1285 (S.D. Cal. 2013) ..................................................16

*NuCal Foods, Inc. v. Quality Egg LLC*,
   887 F. Supp. 2d 977 (E.D. Cal. 2012)....................................................17

*Obsolete Ford Parts v. Ford Motor Co.*,
   306 F.Supp.2d 1154 .................................................................................5

*Odom v. Microsoft Corp.*,
   596 F.Supp.2d 995 (E.D. Tex. 2009) .....................................................23

*Pacific Employers Ins. Co. v. M/V Capt. W.D. Cargill*,
   751 F.2d 801 (5th Cir.1985).....................................................................8

*Paragon Indus., L.P. v. Denver Glass Machinery, Inc.*,
   2008 WL 3890495 (N.D. Tex. Aug. 22, 2008)........................................22

*Pebble Beach Co. v. Caddy*,
   453 F.3d 1151 (9th Cir. 2006).................................................................19

*Petzilla, Inc. v. Anser Innovation LLC*,
   2014 WL 474434 (N.D. Cal. Sept. 23, 2014) .........................................15

*Regents of the University of California v. Eli Lilly and Company*,
   119 F.3d 1559 (Fed.Cir.1997)................................................................20

SAINT LAWRENCE'S REPLY ISO MOTION TO DISMISS; NO. 8:15-CV-00378-CJC-DFM

*Riviera Trading Corp. v. Oakley, Inc.*,
  944 F. Supp. 1150 (S.D.N.Y. 1996).........................................................9

*Seaflex, Inc. v. Fall Prot. Sys., Inc.*,
  2007 WL 7239322 (S.D. Tex. Nov. 20, 2007)......................................13

*Simmons Bedding Co. v. Leggett & Platt, Inc.*,
  2012 WL 11909449 (W.D. Wis. Mar. 27, 2012)...................................13

*Sonora Diamond Corp. v. Superior Court*,
  83 Cal. App. 4th 523 (2000)................................................................17

*Sorenson v. Big Lots Stores*,
  638 F.Supp.2d 1219 (S.D. Cal. 2009)............................................8, 9, 13

*Stragent, LLC v. Pioneer Elecs. Inc.*,
  2013 WL 8467476 (E.D. Tex. May 8, 2013)........................................23

*Teledyne Tech. Inc. v. Harris Corp.*,
  2011 WL 2605995 (C.D. Cal. July 1, 2011).....................................1, 4, 5

*Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*,
  819 F.2d 746 (7th Cir. 1987).................................................................8

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964)............................................................................24

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
  556 F.2d 406 (9th Cir.1977)................................................................17

*Xilinx, Inc. v. Papst Licensing GMBH & co.KG*,
  -- F.Supp.3d --, 2015 WL 4149166................................................12, 19

*Xoxide, Inc. v. Ford Motor Co.*,
  448 F.Supp.2d 1188 (C.D. Cal. 2006).............................................1, 4, 9

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assoc.*,
  16 Fed. Appx. 433 ...........................................................................6, 7, 8

*Z-Line Designs, Inc. v. Bell'O Int'l, LLC*,
  218 F.R.D. 663 (N.D. Cal. 2003).....................................................3, 5

**STATUTES**

28 U.S.C. § 1404(a) ...................................................................................20

**OTHER AUTHORITIES**

Alan M. Trammell, A Tale of Two Jurisdictions,
    68 Vand. L. Rev. 501 (2015).................................................................10

Eric H. Weisblatt & Claire Frezza, Who to Sue and Where in Anda Litigation:
    Personal Jurisdiction Post-Daimler,
    69 Food & Drug L.J. 351 (2014) ..........................................................11

Judy M. Cornett & Michael H. Hoffheimer, Good-Bye Significant Contacts:
    General Personal Jurisdiction After Daimler AG v. Bauman,
    76 Ohio St. L.J. 101, 105 (2015) ..........................................................11

Phillip S. Sykes & Laura McCarthy, Are You Defending Your Clients Where They
    Don't Belong? Corporate Defendants' New Potent Defense Is Personal
    (Jurisdiction, That Is),
    82 Def. Couns. J. 282 (2015) ...............................................................11

**RULES**

Fed. R. Civ. P. 4(m) .....................................................................................7

# INTRODUCTION

In its opposition, HTC concedes that it had a bad faith plan, undisclosed to Saint Lawrence, to file a declaratory judgment action in California while at the same time promising Saint Lawrence that HTC was committed to additional licensing negotiations.  HTC should not be rewarded for its bad faith conduct.

HTC admits that it was told on January 23, 2015 by Saint Lawrence's counsel that Saint Lawrence would file an infringement action if the parties could not reach a settlement.  Indeed, Saint Lawrence made clear that it would file suit "immediately" upon the breakdown of settlement negotiations.[1]  HTC also concedes that it (1) filed a declaratory judgment action just days after pledging its commitment to settling the dispute; (2) never told Saint Lawrence that it had filed suit; and (3) never served its complaint until weeks after Saint Lawrence filed its patent infringement action in Texas.

As numerous cases out of the Central District have held, such acts are a textbook misuse of the Declaratory Judgment Act.  *See, e.g., Xoxide, Inc. v. Ford Motor Co.*, 448 F.Supp.2d 1188 (C.D. Cal. 2006); *Teledyne Tech. Inc. v. Harris Corp.*, 2011 WL 2605995 (C.D. Cal. July 1, 2011).  HTC's opposition entirely ignores these cases.  This Court should not.

Further, in trying to avoid transfer to the court where Saint Lawrence's patent claims have been pending for the last two years, HTC's opposition downplays the significant investment that the court in the Eastern District of Texas has already made in addressing the issues raised in this case, and offers fictional arguments regarding the supposed importance of proceeding in this District.

Because Saint Lawrence and HTC, as well as LG Electronics, Motorola, and ZTE, are all parties to proceedings in the Eastern District of Texas, the Texas court is best situated to completely adjudicate Saint Lawrence's patent rights

---

[1] *See* Supplemental Declaration of Demetrios Anaipakos at ¶ 2.

1    against these infringing entities in a single forum.  All five Saint Lawrence patents
2    at issue here are currently pending before Judge Gilstrap.  Those cases are also
3    much further along than this new case.  Claim construction briefing and a
4    corresponding technical tutorial addressing 74 claim terms, including over 40
5    indefiniteness arguments, are currently pending before the court in the LG
6    Electronics matter, with trial scheduled for April 2016.  Likewise, in the
7    consolidated Motorola and ZTE cases, claim construction is scheduled for January
8    2016, with trial set for July 2016.

9        Judge Gilstrap has already gained knowledge and familiarity with the
10   specific HD Voice technology at issue by virtue of these cases.  The Texas court is
11   thus in the best position to manage the complex and overlapping patent issues
12   raised by these four cases.  And it is undeniable that it will be more efficient to
13   resolve these claims in the Eastern District of Texas, rather than have this Court
14   start from the beginning without education about the patents.  HTC's proposal that
15   this case be litigated in the Central District would create terrible problems of
16   judicial administration, impede the ability of the Texas court to coordinate all
17   pending litigation, and raise the distinct possibility of duplicative litigation and
18   inconsistent rulings.

19       Finally, HTC ignores the threshold test for exercising personal
20   jurisdictional in patent cases post-*Daimler,* choosing instead to rely exclusively on
21   outdated and overruled cases.  HTC's arguments that Saint Lawrence is "at home"
22   in a state where it is neither incorporated nor headquartered do not comport with
23   current Supreme Court precedent.   And HTC comes nowhere close to
24   demonstrating that Saint Lawrence is an alter-ego of Acacia.

25       The straightforward conclusion is that this case belongs in Texas, not here.
26   The Court should therefore dismiss HTC's declaratory judgment suit or transfer
27   the case.

28

SAINT LAWRENCE'S REPLY ISO MOTION TO DISMISS; NO. 8:15-CV-00378-CJC-DFM

**I.     HTC's suit should be dismissed as a bad faith placeholder action because it misled Saint Lawrence about its settlement intentions.**

Declaratory judgment actions are properly dismissed as anticipatory "when the plaintiff in the first-filed action filed suit on receipt of "specific, concrete indications" that a suit by the defendant was imminent. *Z-Line Designs, Inc. v. Bell'O Int'l, LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003). HTC's sole argument against dismissal is that "[t]here is no evidence of any imminent threat of litigation by SLC." (Opp. at 17). That is demonstrably false. HTC admits that Saint Lawrence's counsel Demetrios Anaipakos specifically informed HTC on January 23, 2015 that Saint Lawrence would file a patent infringement lawsuit in Texas if the parties could not reach a settlement. (Opp. at 17-18). Indeed, Mr. Anaipakos told HTC that Saint Lawrence would file suit "immediately" upon the breakdown of settlement negotiations. Anaipakos Supp. Dec. at ¶ 2. HTC's suggestion that this was not a "specific, concrete" indication that litigation was imminent is frivolous.

Worse, HTC does not address the bad faith conduct that permitted it to gain first-filed status.

***First,*** HTC admits that it decided to file a declaratory judgment action after being informed that Saint Lawrence intended to file a patent infringement lawsuit in Texas if the parties could not reach a settlement. (Opp. at 17). However, HTC did not disclose that decision to Saint Lawrence. Rather, as HTC concedes, it intentionally misled Saint Lawrence by disclosing just the opposite intention: an intention to continue licensing negotiations. *See* Wagner Dec. Ex. E. Just three days before filing suit, HTC's counsel Paul Brown assured Saint Lawrence that "HTC is happy to continue discussing the possibility of licensing" and that "I look forward to hearing from you in relation to this offer." *Id.* Brown further promised that "[i]n the meantime, we will review the amendments that Acacia has made to the license and revert in due course." *Id.* HTC never communicated that it had

3

SAINT LAWRENCE'S REPLY ISO MOTION TO DISMISS; NO. 8:15-CV-00378-CJC-DFM

already determined to file a declaratory judgment action in California.

These promises were obviously misleading.  No reasonable person would have understood "happy to continue discussing the possibility of licensing" or "I look forward to hearing from you in relation to this offer" as notification that HTC intended to bring suit.

Mr. Brown's e-mail had the intended effect.  Saint Lawrence responded to HTC's offer and waited to resume what it mistakenly believed were good faith negotiations.  *See* Wagner Dec. Ex. F; Anaipakos Dec. ¶ 4.  Contrary to its stated intentions, however, HTC used these misrepresentations to carry out its secret plan to win the "race to the courthouse" by filing a preemptive declaratory judgment action.  *See DeFeo v. Procter & Gamble Co.*, 831 F.Supp. 776, 778 (N.D.Cal.1993) ("The Declaratory Judgment Act is not to be invoked to deprive a plaintiff of his conventional choice of forum and timing, precipitating a disorderly race to the courthouse.").

Saint Lawrence's opening motion cited numerous cases out of the Central District (as well as other jurisdictions) holding that dismissal is mandatory where a plaintiff promises to engage in good faith settlement negotiations only to file a declaratory judgment action.  Mot. at 17-20.  HTC's opposition does not discuss a *single* one of these cases, much less distinguish them.

Both *Xoxide, Inc. v. Ford Motor Co.*, 448 F.Supp.2d 1188 (C.D. Cal. 2006), and *Teledyne Technologies Inc. v. Harris Corp.*, 2011 WL 2605995 (C.D. Cal. July 1, 2011), are directly on point.  In *Xoxide*, the court found that plaintiff had filed an anticipatory suit where Xoxide, like HTC, initially responded to the defendant's letters by indicating a willingness to engage in "confidential settlement discussion" while also requesting additional time "to complete [its] consideration and response."  *Id.* at 1191.  Instead, Xoxide secretly filed a declaratory judgment action, which—like HTC—it failed to serve on the defendant.  *Id.* at 1194.  In dismissing, Xoxide's first-filed declaratory judgment

1  action, the district court held that "secretly filing a lawsuit in Los Angeles while

2  giving the impression to Ford's representatives that it was making best efforts to

3  negotiate a settlement" amounted to "an improper attempt at forum shopping."  *Id.*

4  Similarly, in *Teledyne*, the court found that Teledyne had filed an improper

5  anticipatory action where the defendant had made clear in writing that "if the

6  parties could not reach an agreement, [defendant] was prepared to take the next

7  step."  2011 WL 2605995 at *3.  Teledyne responded by expressing interest in

8  "advancing the ball towards the goal line" and pledged to "keep in touch in

9  advance of subsequent meetings." *Id.*  But instead of negotiating, Teledyne filed a

10 declaratory judgment action.  On those facts, the court concluded that "principles

11 of justice weigh in favor of dismissal." *Id.*

12 HTC offers no argument or explanation as to why the identical facts here do

13 not require an identical outcome.  HTC is similarly silent about the numerous

14 other cases Saint Lawrence cited on this point.  *See Charles Schwab & Co. v.*

15 *Duffy*, 1998 WL 879659, at *1 (N.D. Cal. Dec. 8, 1998) (dismissing declaratory

16 judgment action where plaintiff's attorney "misled" defendant regarding

17 plaintiff's "settlement intentions"); *Creative Nail Design, Inc. Mycone Dental*

18 *Supply Co.*, 2012 WL 2106212, at *1 (S.D. Cal. June 11, 2012) (dismissing suit

19 where plaintiff filed declaratory judgment suit after parties "agreed to continue the

20 settlement discussions going forward"); *Z-Line Designs, Inc. v. Bell'O Int'l, LLC*,

21 218 F.R.D. 663, 666 (N.D. Cal. 2003) (dismissing declaratory judgment for where

22 "misleading communication" by "plaintiff's counsel … created a reasonable

23 expectation that [plaintiff] would explore settlement rather than litigation.");

24 *Obsolete Ford Parts v. Ford Motor Co.*, 306 F.Supp.2d 1154, 1158 (dismissing

25 suit when plaintiff "attempted to stall Defendant's suit by requesting additional

26 time" to investigate then, without notifying or serving Ford, filed suit).

27 HTC's deafening silence on this point speaks volumes about the merits of

28 its case.  Parties like HTC who speak out of both sides of their mouth—promising

good faith negotiations, then filing suit to "win the race to the courthouse"—act in bad faith.  More egregiously, HTC admits that **it never told Saint Lawrence that HTC had filed suit.**  (Opp. at 19).  Instead, HTC continued to negotiate with Saint Lawrence for months as if no such lawsuit had ever been filed.  *See* Mot. at 7-8; 20; Wagner Dec. at ¶ 11.  Never once did HTC mention that it had secretly filed a placeholder declaratory judgment action in an attempt to deprive Saint Lawrence of its natural venue for a patent infringement suit.  Wagner Dec. at ¶ 11.

Only one conclusion follows:  "If Plaintiffs' conduct was not mere deceptive gamesmanship, then they would have informed Defendants that they did not intend to make another settlement offer and would prefer to seek a judicial resolution."  *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assoc.*, 16 Fed. Appx. 433, 438.  Under these circumstances, HTC's actions can only be interpreted as the kind of "procedural fencing" that courts condemn.  *See AmSouth Bank v. Dale*, 386 F.3d 763, 790 (6th Cir.2004) (finding procedural fencing when "[j]ust one day before filing its declaratory action, AmSouth's counsel sent a letter stating that [the declaratory plaintiff] was 'still considering' the [declaratory defendant's] demand and its options, and … would 'be in touch in the near future concerning a written response and a possible meeting").  Such conduct mandates dismissal.

**Second**, HTC's opposition also fails to address controlling authority out of this circuit which holds that a plaintiff who files a declaratory judgment action yet then fails to *serve* it loses any first-filed priority.  (*See* Mot. at 20-21 discussing doctrine).  HTC filed its declaratory judgment action on March 9, 2015, but failed to serve it until June 18, 2015—more than two weeks after Saint Lawrence filed and served HTC with its patent infringement suit in Texas.  Johnson Dec. Exs. A-B.  HTC's 102 day delay in serving its DJ action merits dismissal.

*Sorenson v. Big Lots Stores*—which HTC's opposition simply ignores—is directly on point.   638 F.Supp.2d 1219, 1221 (S.D. Cal. 2009).  In that case, Big Lots filed a declaratory judgment action months before Sorenson filed its patent

infringement action.  *Id.*  Yet, Big Lots, like HTC, made no effort to prosecute its lawsuit.  Nor did Big Lots bother to serve its lawsuit until weeks after the patent holder filed its infringement action.  In dismissing Big Lots' declaratory judgment action, the court observed that "filing first and then sitting on the action without service, as occurred here, renders the first-filed action filed in name only and in such substance as to accord it any priority."  *Id.*

HTC provides no convincing rationale for why the same result does not apply here.  The sole authority that HTC offers in its defense is *Intervet, Inc. v. Merial Ltd.*, 535 F.Supp.2d 112 (D.D.C. 2008), a lone outlier from a District of Columbia trial court with remarkably different facts, offered for the proposition that "the first-to-file rule" is not overcome by the allegation that HTC "did not **immediately** serve the complaint."  (Opp. 19) (emphasis added).

*Intervet* is distinguishable.  In that case, the gap between the filing and service of the relevant complaints was a matter of weeks.  *Id.* at 113.  Here, the gap between filing and service was almost *four months*.  Moreover, the dispositive fact is not that HTC failed to "immediately" serve its complaint, but rather that HTC made no effort to serve or prosecute its declaratory judgment action whatsoever until Saint Lawrence filed its substantive patent infringement action in Texas.  Dismissal is appropriate because HTC's "lack of service" is "evidence of gamesmanship and procedural fencing, factors that … weigh heavily in favor dismissing a declaratory action."  *Zide*, 16 F.App'x at 438.

Nor, contrary to HTC's assertion, is Federal Rule of Civil Procedure 4(m) relevant here.  *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court … must dismiss the action without prejudice … or order that service be made.").

Saint Lawrence is not suggesting that HTC's complaint should be dismissed for lack of service under Rule 4(m)'s 120-day service requirement.  Rather—as numerous federal courts have recognized—filing a *declaratory judgment* action

1  but then failing to serve it until months later after the patent holder files a
2  substantive action strips that filing of any presumptive first-filed "priority."  *See,*
3  *e.g., Sorenson*, 638 F.Supp.2d at 1221; *Electric Corp. v. Vector Products, Inc.*,
4  286 F.Supp. 953, 955 (N.D. Ill. 2003) (dismissing suit where "it appear[ed] as
5  though [plaintiff] merely filed the suits so as to have the choice of forum if
6  litigation ensued"); *Mohr v. Margolis, Ainsworth, & Kinlaw Consulting, Inc.*, 434
7  F.Supp.2d 1051, 1062 (D. Kan. 2006) (same).

8      More generally, *Intervet* is an extreme outlier that no other court has ever
9  relied upon for the proposition for which HTC cites it.  Indeed, *Intervet* runs
10  against the great weight of authority.  *See, e.g., Zide*, 16 F.App'x at 436
11  (dismissing declaratory judgment action on basis of 100-day gap between filing
12  and service); *Galileo International Partnership v. Global Village Communication,*
13  *Inc.*, 1996 WL 452273, *1 (N.D.Ill.1996) (dismissing declaratory judgment suit
14  on basis of 50 day gap between filing and service); *ICON Health & Fitness, Inc. v.*
15  *Beachbody, LLC*, 2011 WL 1899390, at *1 (D. Utah May 19, 2011) (dismissing
16  declaratory judgment action on basis of 34 day gap between filing and service);
17  *Pacific Employers Ins. Co. v. M/V Capt. W.D. Cargill*, 751 F.2d 801, 804 (5th
18  Cir.1985) (dismissing for unexplained two month delay of service).

19      The 102-day gap between when HTC filed suit and when HTC belatedly
20  served suit is greater than any of these cases.  And, as *Intervet* departs from the
21  generally accepted approach, it is both non-controlling and unpersuasive.

22      The Declaratory Judgment Act is intended to allow a potential civil
23  defendant to obtain a declaration of the legal effect of a course of action without
24  suffering an ongoing threat of litigation. *Tempco Elec. Heater Corp. v. Omega*
25  *Eng'g, Inc.*, 819 F.2d 746, 750 (7th Cir. 1987).  It is not a tool by which potential
26  litigants may secure their desired forum. *Id.* at 750.  More fundamentally, "where
27  the potential infringement defendant merely files a declaratory judgment action,
28  and takes absolutely no steps to serve the complaint or prosecute the case, it

1  cannot be said that the party legitimately uses the Declaratory Judgment Act."

2  *Sorenson*, 638 F.Supp.2d at 1221.

3      If HTC had been truly concerned about the legal effects of its cell phone

4  technology, it had more than an adequate opportunity to purse a declaratory

5  judgment in California.  HTC offers no reasons why it delayed serving suit for

6  four months if it harbored such concern about its rights.  Instead, it appears as

7  though HTC only filed suit so as to have its choice of forum if litigation ensued.

8      That is an improper use of the Declaratory Judgment Act.  Declaratory

9  judgment actions are not insurance policies that plaintiffs may take out "silently"

10  and hold in their "hip pocket" in case settlement negotiations do not go their way.

11  *See McJunkin Corp. v. Cardinal Sys., Inc.*, 190 F. Supp. 2d 874, 879 (S.D.W. Va.

12  2002) (dismissing where "[t]he declaratory judgment action appears to have been

13  filed silently, while the parties' negotiations continued, and held in Plaintiffs' hip

14  pocket to preempt Defendants' potential … action").

15      The lines of cases embodied by *Xoxide* and *Sorenson* provide two,

16  independent grounds upon which this Court should dismiss.  That HTC's bad faith

17  conduct falls squarely within the fairway of *both* doctrines only serves to reinforce

18  the correct outcome.

19      Finally, the policy of promoting settlement weighs heavily in favor of the

20  Texas action.  *See Riviera Trading Corp. v. Oakley, Inc*., 944 F. Supp. 1150,

21  1158-59 (S.D.N.Y. 1996) ("Potential plaintiffs should be encouraged to attempt

22  settlement discussions ... prior to filing lawsuits without fear that the defendant

23  will be permitted to take advantage of the opportunity to instigate litigation in a

24  district of its own choosing before the plaintiff files a complaint.") (citations

25  omitted).

26      To impose the "first to file" presumption in this instance, "would

27  unreasonably penalize [Saint Lawrence], which attempted to resolve the dispute

28  before filing suit."  *Xoxide*, 448 F.Supp.2d at 1194 (citations omitted).  Holding

9

otherwise, moreover, would effectively sanction and encourage others to engage in the same deceptive practices that HTC employed here against Saint Lawrence. Allowing HTC to proceed in this forum based on a secret, anticipatory suit that HTC filed solely to ensure its choice of venue neither comports with Central District precedent nor the underlying purpose of the Declaratory Judgment Act. Accordingly, this case should be dismissed.

## II.   HTC's suit should be dismissed because the Court lacks personal jurisdiction over Saint Lawrence.

### A. Saint Lawrence is not subject to general jurisdiction

HTC relies exclusively upon overruled case law for its argument that Saint Lawrence is subject to general jurisdiction in California.  Specifically, HTC argues that "General jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum state even the cause of action has no relation to those contacts."  (Opp. at 9) (quoting *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000)).  That is no longer the standard for general jurisdiction.

The Supreme Court explicitly rejected the general jurisdiction standard relied upon by HTC in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).  The Court held that finding that a nonresident defendant should be subject to general jurisdiction "in every State in which [the defendant] engages in a substantial, continuous, and systematic course of business," would be "unacceptably grasping." *Daimler*, 134 S.Ct. at 760.  Rather, the test is "whether that corporation's affiliations are so 'continuous and systematic' as to render [it] **essentially at home** in the forum State." *Id.* (emphasis added).  *Daimler*—which HTC's opposition ignores—represents a "sea change" in general jurisdiction doctrine.[2]

---

[2] Alan M. Trammell, A Tale of Two Jurisdictions, 68 VAND. L. REV. 501, 504 (2015) (*Daimler* represents a "sea change in the Supreme Court's general jurisdiction" case law); Eric H. Weisblatt & Claire Frezza, Who to Sue and Where

The *Daimler* Court held that a corporate defendant is typically "at home" in only two states—its state of incorporation and the state of its principle place of business.  *Id.*  Further, the Court emphasized that only in an "exceptional case" would a corporation's "operations in a forum other than its place of incorporation or principle place of business … be so substantial and of such a nature as to render the corporation at home in that State."  *Id.* at 761, n.19.

The result was dramatic:  "In a single opinion, *Daimler* changed more than 60 years of conventional wisdom and effectively reduced the number of possible venues for a plaintiff to assert general jurisdiction over a national company from all 50 states to just two: its state of incorporation and the state of its principal place of business."[3]

Saint Lawrence is not incorporated in California, nor does it have its principle place of business there.  Key Dec. ¶ 3.  These facts, alone, are strong evidence that HTC is not "at home" in California. *Daimler*, 134 S.Ct. at 760; *see also Goodyear*, 131 S.Ct. at 2853–54 (noting that "the paradigm forum for the exercise of general jurisdiction ... [is the corporation's] domicile, place of incorporation, and principal place of business" (citation omitted)).

HTC argues that Saint Lawrence is subject to general jurisdiction in California because its patent monetization activities constitute "continuous and systematic" business contacts. (Opp. 13-14).  Specifically, HTC suggests that, taken together, Saint Lawrence's licensing offers, the presence of its California

---

in Anda Litigation: Personal Jurisdiction Post-Daimler, 69 FOOD & DRUG L.J. 351, 358 (2014) ("*Daimler* revolutionized the application of general jurisdiction over companies").

[3] *See* Phillip S. Sykes & Laura McCarthy, Are You Defending Your Clients Where They Don't Belong? Corporate Defendants' New Potent Defense Is Personal (Jurisdiction, That Is), 82 DEF. COUNS. J. 282, 287 (2015); *see also* Judy M. Cornett & Michael H. Hoffheimer, Good-Bye Significant Contacts: General Personal Jurisdiction After Daimler AG v. Bauman, 76 OHIO ST. L.J. 101, 105 (2015) ("*Daimler* is a game changer.")

1  affiliate Acacia Research Corporation, and a single in-person meeting with HTC
2  in Los Angeles constitute sufficient contacts to subject Saint Lawrence to any and
3  all types of lawsuits in California.  But post-*Daimler*, that argument is wrong as a
4  matter of law.

5  Even if Saint Lawrence's business contacts were "continuous and
6  systematic," a defendant's "substantial, continuous, and systematic course of
7  business" within a state is insufficient to justify an exercise of general jurisdiction.
8  *Daimler*, 134 S.Ct. at 761; *see also Xilinx, Inc. v. Papst Licensing GMBH &*
9  *co.KG*, -- F.Supp.3d --, 2015 WL 4149166, at *5 ("Even if it is true that
10  Defendants engage in 'continuous and systematic' business in the forum state, that
11  does not mean that Defendants' presence in the forum state is so substantial that it
12  should fairly be subject to suit 'on causes of action arising from dealings entirely
13  distinct from those activities.") (citations omitted).

14  Saint Lawrence's contacts with the State of California are plainly
15  insufficient to subject it to general jurisdiction in California.  Merely conducting
16  business in California from a home base in Texas is not "exceptional," even when
17  such business generates substantial revenue.  In *Daimler*, the Supreme Court held
18  that Daimler AG, the German manufacturer of Mercedes–Benz automobiles, was
19  not subject to general jurisdiction in California "despite its multiple offices,
20  continuous operations, and billions of dollars' worth of sales there." 134 S.Ct. at
21  772 (Sotomayor, J., concurring).

22  Similarly, merely conducting sporadic licensing activities in California is
23  insufficient to confer general jurisdiction.  *See Xilinx*, 2015 WL 4149166, at *5
24  (holding that "targeting" the Silicon Valley technology industry in California with
25  one's patent licensing business is insufficient to confer general jurisdiction).  If
26  the U.S. Supreme Court held that the German manufacturer of Mercedes–Benz
27  automobiles was not subject to general jurisdiction in California, then California
28  certainly lacks general jurisdiction over Saint Lawrence, which has far more

1   modest ties to California than the largest importer of luxury vehicles to this state.

2   *See Daimler*, 134 S.Ct. at 752. Consequently, this is not an "exceptional case" in

3   which Saint Lawrence's business contacts with California are "so substantial" as

4   to "essentially render it at home" in California.  *Id.* at 761 n. 19.

5       Ignoring *Daimler*, HTC's general jurisdiction argument relies almost

6   exclusively on dicta from a 1998  pre-*Daimler* case, *Dainippon Screen Mfg. Co.*,

7   *Ltd. v. CFMT, Inc.*, 142 F.3d 1266 (Fed. Cir. 1998).  That reliance is misplaced.

8       In *Dainippon*, the court found that CFMT was subject to general

9   jurisdiction in California under pre-*Daimler* general jurisdiction doctrine because

10  the company (1) derived substantial revenues from the California based sales of its

11  parent; (2) maintained sales agents in California; and (3) had conducted

12  negotiations in California.  *Id.* at 1271.  The *Dainippon* court held that "[t]hese

13  facts are sufficient … to justify the imposition of personal jurisdiction over CFMT

14  in California."  *Id.*

15      In dicta[4], the *Dainippon* court then went to observe that it was "reasonable

16  and fair" to subject CFMT to personal jurisdiction in California because CFMT

17  was "wholly owned" by a California parent company (CFM), who CFMT had

18  granted "exclusive licenses to [its] patents in return for a ten percent royalty based

19  on CFM's net sales."  *Id. at* 1267 & 1271.  Contrary to HTC's forced reading,

20  however, that dicta did not create any special exception to the usual jurisdiction

21  analysis.  *See Seaflex, Inc. v. Fall Prot. Sys., Inc.,* 2007 WL 7239322, at *3 (S.D.

22  Tex. Nov. 20, 2007) ("[T]he Circuit in *Dainipon* addressed the question of

23  whether jurisdiction was "reasonable and fair" only after determining that the out-

24  of-state company had, in fact, established minimum contacts with the forum

25  _____

26  [4] *Simmons Bedding Co. v. Leggett & Platt, Inc*., 2012 WL 11909449, at *5 (W.D.
    Wis. Mar. 27, 2012) ("Given that the court had already found sufficient minimum

27  contacts attributable directly to the subsidiary, this broad statement—as to the
    fairness of exercising personal jurisdiction over a wholly—owned subsidiary based

28  on the conduct of its parent company is arguably no more than dicta.").

1    state.")  *Dainippon* has no application here.

2        First, *Dainippon*'s finding that general jurisdiction existed on the basis of

3    CMFT's California revenues, sales agents, and sporadic negotiations does not

4    comport with *Daimler*, which rejected general jurisdiction on the basis of

5    substantially greater contacts that those presented here or in *Dainippon*.  In light

6    of Daimler's caution that even "substantial, continuous, and systematic" business

7    within a state cannot justify an exercise of general jurisdiction when the defendant

8    is not "at-home" in that state, *Dainippon* is inconsistent with *Daimler* and should

9    not be followed.

10       Second, *Dainippon* is distinguishable on the facts.  Unlike CFMT, Saint

11   Lawrence is not "wholly owned" by a California company.  Saint Lawrence is

12   wholly owned by Acacia Research Group LLC, a *Texas* corporation

13   headquartered in Plano, Texas.  Key Dec. ¶ 4.  HTC's opposition conveniently

14   ignores the fact that Acacia Research Corporation—the California company on

15   which HTC rests its jurisdictional arguments—has no direct ownership interest in

16   Saint Lawrence.

17       Nor has Saint Lawrence granted Acacia Research Corporation an

18   "exclusive license" to monetize and enforce the HD Voice patents at issue here.

19   Haynes Dec. ¶ 13.  Indeed, Acacia does not have *any* license or contract for these

20   patents.  *Id.*  The HD Voice patents are solely owned by Saint Lawrence.  Key

21   Dec. ¶ 7.  Consequently, there is no unity of ownership between Saint Lawrence

22   and Acacia Research Corporation.

23       Third, HTC fails to inform the Court that in these circumstances, where the

24   parent has no exclusive license agreement to exploit the patents, courts have

25   repeatedly refused to apply *Dainippon*.  *See Delano Farms Co. v. Cal. Table*

26   *Grape Com'n*, 623 F.Supp.2d 1144 (E.D. Cal 2009) ("unlike in *Dainippon*, there

27   is no unity of ownership or interest between the patent owner and licensee");  *Ali*

28   *v. Carnegie Inst. of Wash.*, 306 F.R.D. 20, 29 (2014) (while the parent and

14

subsidiary's "ownership interests *overlap*, they are not *identical* … as in *Dainippon*") (emphasis in original); *See Ergo Licensing, LLC v. Cardinal Health*, *Inc.*, 2009 WL 2021926, at *4 (D. Maine July 13, 2009) (refusing to apply *Dainippon* where it was "apparent from the pleadings and the parties' memoranda that there is no licensing or other arrangement between" the subsidiary and its parent "with respect to the patent at issue").

Saint Lawrence has no offices, property, bank accounts, telephone listings, or mailing addresses in California; it is not licensed to do business in California; it has never had a registered agent in California; it has never advertised in California; and it has never manufactured or sold products in California.  Key Dec. 2-4.  Thus, the record reflects that Saint Lawrence had only "isolated and sporadic" contacts of the type "insufficient to support general jurisdiction." *Petzilla, Inc. v. Anser Innovation LLC*, 2014 WL 474434 (N.D. Cal. Sept. 23, 2014) (finding no general jurisdiction where patent holder had no California offices, bank accounts, or property, was not licensed to do business in California, had no registered agent, and did not target California with advertising).

**B. Saint Lawrence is not an alter-ego of Acacia Research Corporation.**

To demonstrate alter ego status, a plaintiff must prove *both* (1) that the parent controls "the subsidiary to such a degree as to render the latter the mere instrumentality of the former" and (2) that there is "enough evidence to support a finding that failure to look past the corporate entity would sanction a fraud or promote injustice."  *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995) (citations omitted).  HTC fails to meet its burden on *either* prong of this test.

**1.  No showing of financial fraud.**

Saint Lawrence's motion to dismiss must be granted because HTC produced no evidence whatsoever going to the second requirement for piercing the corporate veil—that failure to do so would "sanction a fraud or promote

SAINT LAWRENCE'S REPLY ISO MOTION TO DISMISS; NO. 8:15-CV-00378-CJC-DFM

injustice." *Calvert*, 875 F.Supp. at 678.  Indeed, HTC entirely failed to address the fraud prong in its opposition to Saint Lawrence's motion to dismiss. (Opp. at 15).  Accordingly, the Court is *required* to dismiss with prejudice.  *See No Cost Conference, Inc. v. Windstream Comm., Inc.*, 940 F. Supp. 2d 1285, 1298 (S.D. Cal. 2013) ("Here, an in-depth discussion of this theory is unnecessary because, as Defendants note, No Cost only addresses the first element of the alter ego test. Consequently, because No Cost has not established both elements of the alter ego test, the Court finds that No Cost cannot rely on this theory to bring its … claims.").

Nor does the bare, unsupported allegation in HTC's complaint save HTC from dismissal.

First, the complaint merely alleges in a single, conclusory sentence that "[a]llowing Acacia Research to avoid jurisdiction and venue through an alter ego shell company would be unjust."  Comp. at ¶ 11.  But HTC's single "conclusory allegation … is insufficient to demonstrate the kind of fraud or injustice necessary to invoke the extraordinary remedy of asserting personal jurisdiction via the alter ego theory and ignoring the "general presumption in favor of respecting the corporate form."  *NuCal Foods*, 887 F. Supp. 2d at 993.

Second, HTC essentially suggests that Saint Lawrence should be subject to general jurisdiction for forum shopping.   "That argument is unpersuasive, however, as forum shopping, if it constitutes 'fraud' at all, is not the type of fraud with which the alter ego theory is concerned."  *Boston Scientific Corp. v. Wall Cardiovascular Technologies, LLC*, 647 F. Supp. 2d 358, 367 (D. Del. 2009). The kind of "fraud" required to establish alter ego status is *financial* fraud: "[U]nder California law the kind of inequitable result that makes alter ego liability appropriate is an abuse of the corporate form, such as under-capitalization or misrepresentation of the corporate form to creditors."  *Firstmark Capital Corp. v. Hempel Financial Corp.,* 859 F.2d 92, 94 (9th Cir.1988) (citations omitted).

HTC makes no allegations of financial fraud or similar misdeeds. There is not even a suggestion that Saint Lawrence is undercapitalized, *see Wells Fargo & Co. v. Wells Fargo Exp. Co*., 556 F.2d 406, 425 (9th Cir.1977), nor that efforts have been made by Acacia to strip Saint Lawrence of assets in order to avoid liability. *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 993 (E.D. Cal. 2012). Indeed, Saint Lawrence has presented substantial—and uncontradicted—evidence to the contrary. Saint Lawrence is not only substantially capitalized, but also has sole ownership of the valuable HD Voice patents. *See* Key Dec. ¶¶ 6-7. Haynes Dec. ¶¶ 18-22.

Under these circumstances, HTC has "failed to make any showing at all that refusal to pierce the corporate veil will result in any injustice or unfairness." *Calvert*, 875 F. Supp. 674, 679-80 (E.D. Cal. 1995); *see also* NuCal Foods, 887 F. Supp. 2d 977 at 993 (E.D. Cal. 2012) (dismissing for failure to establish fraud where plaintiff "neither allege[d] in its complaint, nor proffer[ed] any evidence, that either defendant [were] currently underfunded or non-operational"); *see also Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 539-40 (2000) ("[A]t least one of the two essential elements of the alter ego doctrine was not established [when] there was no evidence of any wrongdoing by either [Defendant]").

## 2. No showing of unity of interest.

HTC's argument that Saint Lawrence and Acacia are subject to a "unity of interest" is equally flawed. Saint Lawrence maintains separate bank accounts from Acacia, observes proper corporate formalities, has never co-mingled funds, and is adequately capitalized, enjoying annual licensing revenues in the millions of dollars. Key Dec. ¶ 6; Haynes Dec. ¶¶ 9-22. Those facts alone are *far more* than sufficient to establish Saint Lawrence's independent corporate existence. *See Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th

SAINT LAWRENCE'S REPLY ISO MOTION TO DISMISS; NO. 8:15-CV-00378-CJC-DFM

Cir. 2004) (separate corporate existence established where corporations had separate bank accounts and had never co-mingled funds); *Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001) (same).

Nor does HTC's assertion that Saint Lawrence and Acacia share employees or directors change this outcome:  "A parent corporation may be directly involved in financing and macro-management of its subsidiaries … without exposing itself to a charge that each subsidiary is merely its alter ego."  *Doe*, 248 F.3d at 928; *see also See Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir.1980) (finding no alter ego relationship where the parent company guaranteed loans for the subsidiary, reviewed and approved major decisions, placed several of its directors on the subsidiary's board, and was closely involved in the subsidiary's pricing decisions).  Because HTC has not established a prima facie case for alter ego liability, Acacia's contacts with California cannot be imputed to Saint Lawrence for purposes of personal jurisdiction.

**C. Saint Lawrence is not subject to specific jurisdiction.**

HTC also suggests Saint Lawrence is subject to "**Specific Jurisdiction Based on Its Parents' Contacts with This Forum.**"  (Opp. 13) (emphasis in original).  But HTC's opposition offers no argument or citations to authority in support of this bald assertion.  Thus, "[g]iven the underdeveloped state of [HTC]'s argument, there is no need for the Court to address or analyze the issue."  *See Hill v. City of Clovis*, 2012 WL 787609, at *8 (E.D. Cal. Mar. 9, 2012).

As discussed in Saint Lawrence's motion, specific jurisdiction in patent cases exists only in two circumstances:  (1) when the patent-holder has filed a patent infringement lawsuit on the *same* patents in the *same* forum or (2) when the patent holder has entered into an exclusive license agreement which imposes enforcement obligations on a party residing or regularly doing business in the forum.  *See* Mot. 12-13 (discussing *Avocent Huntsville Corp. v. Aten. Intern. Co.*, 552 F.3d 1324,

1   1332-33 (Fed. Cir. 2008)).

2        Neither prong is satisfied here.  Saint Lawrence has never filed a patent
3   infringement lawsuit in California; nor has Saint Lawrence ever entered into any
4   exclusive licensing agreements for its HD Voice technology with any company.
5   Key Dec.  ¶¶ 8-9.  Consequently, no basis exists for asserting specific jurisdiction
6   over Saint Lawrence under controlling Federal Circuit precedent.

7        **D. No jurisdictional discovery is warranted.**

8        Jurisdictional discovery may be granted "where pertinent facts bearing on
9   the question of jurisdiction are **controverted** or where a more satisfactory
10  showing of the facts is necessary." *Data Disc., Inc. v. Sys. Tech. Assoc., Inc.*, 557
11  F.2d 1280, 1285 n.1 (9th Cir. 1977) (emphasis added).  But the court is vested
12  with "broad discretion" in making that determination.  *Id.*  Indeed, when the
13  request is "based on little more than a hunch that it might yield jurisdictionally
14  relevant facts," no further discovery is warranted.  *Boschetto v. Hansing*, 539 F.3d
15  1011, 1020 (9th Cir. 2008).

16       Jurisdictional discovery is not warranted here because HTC has failed to
17  make even a prima facie case for personal jurisdiction.  As demonstrated above,
18  HTC failed to allege a single fact that would support the fraud prong of its general
19  jurisdiction argument.  (*See* Opp. at 15).  Likewise, HTC did not offer a single fact
20  (much less argument) in support of specific jurisdiction.  (*See* Opp. at 13-14).
21  Bare allegations—without anything more—do not entitle HTC to anything.
22  "[W]here a plaintiff's claim of personal  jurisdiction appears to be both attenuated
23  and based on bare allegations in the face of specific denials made by the
24  defendants, the Court need not permit even limited discovery." *Pebble Beach Co.*
25  *v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006); *see also Xilinx, Inc. v. Papst Lics.*
26  *GMBH*, 2015 WL 4149166, at * 13 (declining to award jurisdictional discovery
27  where plaintiff's request was based on "little more than a hunch").

28

                                        19

Any further jurisdictional discovery would be a waste of resources for both the parties and this Court. Accordingly, the Court should decline HTC's request.

**III.    The public and private transfer factors strongly favor transfer to Texas.**

Section 1404(a) provides that a district court may transfer any civil action "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In making this determination, courts consider both public and private interest factors. *See Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1259 (W.D. Wash. 2005) (summarizing factors) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.1986)).

The private factors weigh strongly in favor of transfer, and HTC's opposition essentially ignores the public interest factors, effectively conceding that transfer is appropriate. (*See* Opp. 20-25).

**A. The public interest factors weigh strongly in favor of transfer.**

**Judicial economy:** Among the public and private interest factors, "[t]he interest of justice factor is the most important of all." *Amazon.com*, 404 F. Supp. 2d at 1261. "Consideration of the interest of justice, which includes judicial economy, 'may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result.'" *Regents of the University of California v. Eli Lilly and Company*, 119 F.3d 1559, 1565 (Fed.Cir.1997). In considering the interests of justice, the Court weighs such factors as "ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." *Heller Financial, Inc., v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (9th Cir.1989).

These considerations are particularly relevant in patent litigation because when "several highly technical factual issues are presented … the interest of judicial economy may favor transfer to a court that has become familiar with the issues." *Regents*, 119 F.3d at 1565. That is the case here.

SAINT LAWRENCE'S REPLY ISO MOTION TO DISMISS; NO. 8:15-CV-00378-CJC-DFM

HTC misleadingly asserts that Saint Lawrence has failed to show that "its pending actions in Texas … are related to this dispute beyond the fact they involve the same patents." (Opp. 24). That assertion is false. As the relevant complaints make clear, Saint Lawrence's claims against HTC's cell phones are essentially *identical* to the claims in the pending patent infringement lawsuits in Texas against LG Electronics, Motorola, and ZTE. *Compare* Johnson Dec. Ex. A *with* Exs. D-F. These four lawsuits involve not only overlapping claims on the *same* five patents but will also require the *same* claim construction analysis to resolve the disputes. *Id.* at ¶ 9. Moreover, "it is inconsistent for [HTC] to argue that the cases are not similar when it was [HTC] who filed a 'notice of related action' in [this] action." *Amazon.com*, 404 F. Supp. 2d at 1261. (See Dkt. 11).

HTC's suggestion that this Court is in as good a position to manage this case as Judge Gilstrap ignores the long history of current and past litigation over Saint Lawrence's HD Voice patents in the Eastern District of Texas and the tremendous inefficiencies that would result if this Court were to address the same matters at the same time. All five HD Voice patents at issue here are currently before the Texas court. Anaipakos Dec. ¶ 2-3. Claim construction briefing and a corresponding technical tutorial addressing 74 claim terms, including over 40 indefiniteness arguments, are currently pending before the court in the LG Electronics matter. Johnson Dec. ¶ 8. That case is set for trial before Judge Gilstrap in April 2016. Judge Gilstrap is also currently scheduled to construe the HD Voice patents in the Motorola and ZTE cases in January, with trial in July 2016. The underlying technology in all these cases is the same and the infringement issues involve the same technical concepts. Johnson Dec. ¶ 8.

There is no reason to ignore Judge Gilstrap's experience with these five HD Voice patents. Nor is there any reason for this Court to repeat and redo claim construction that the Texas court will perform and complete in the pending cases. Judge Gilstrap has already been managing these cases for the last two years. On

SAINT LAWRENCE'S REPLY ISO MOTION TO DISMISS; NO. 8:15-CV-00378-CJC-DFM

1   the other hand, this Court does not have any prior experience or investment in
2   these matters.  Transfer or dismissal is thus the correct outcome here because "the
3   existence of multiple lawsuits involving the same issues is a paramount
4   consideration when determining whether a transfer is in the interest of justice."  *In*
5   *re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009).

6       HTC also erroneously relies on *Children's Network, LLC v. PixFusion LLC*,
7   722 F. Supp. 2d 404, 415 (S.D.N.Y. 2010).   But in that case, there were *no*
8   overlapping or even *similar* products between the patent holder's infringement
9   suits in one forum and the plaintiff's declaratory judgment action in a different
10  forum.   Here, the four lawsuits involve identical products—i.e., cellphones—
11  raising identical claims on identical patents.    *Children's Network* is thus
12  inapposite, and has no application on the facts presented here.

13      By contrast, *Cisco Systems, Inc. v. Tivo, Inc.*, 2012 WL 3279532 (N.D. Cal.
14  Aug. 12, 2012) is directly on point.   In *Cisco*, Tivo moved for transfer on the
15  grounds that it was currently "in active litigation against Verizon, Motorola, Time
16  Warner, and Cisco, in the E.D. Tex., in three cases pending before the same
17  presiding judge" involving the same patents and products.  *Id.* at *2.  The court
18  found transfer to the Eastern District of Texas was mandated by judicial economy
19  "in light of its 'head start in these [patent] matters."  The same result applies here.

20      **Texas's localized interest:**  The EDTX has a much stronger connection to
21  this case than the CDCA.  Saint Lawrence is a Texas corporation, headquartered
22  within the Eastern District in Plano, Texas.  By contrast, HTC America is a non-
23  California resident, headquartered and incorporated in the state of Washington, and
24  its corporate parent, HTC Corporation is located in Taiwan.  Texas citizens have a
25  "substantial interest" in deciding the rights of a resident corporation like Saint
26  Lawrence, "particularly where the litigation centers on alleged violations of that
27  corporation's rights."  *See Paragon Indus., L.P. v. Denver Glass Machinery, Inc.*,
28  2008 WL 3890495, at *3 (N.D. Tex. Aug. 22, 2008).  Given that California citizens

have *no* countervailing interest, this factor weighs strongly in favor of transfer.

**Administrative difficulties related to court congestion:**  Court congestion weighs in favor of transfer because Saint Lawrence's case will go to trial sooner in the EDTX.  *In re Hoffmann-La Roche Inc*., 587 F.3d 1333, 1336 (Fed. Cir. 2009) (ordering transfer on grounds that the transferee "district's less congested docket suggests that the Eastern District of North Carolina may be able to resolve this dispute more quickly.").   According to statistics from Lex Machina, 73.3% of patents cases filed in the CDCA over the last five years get to trial in 3 years and 196 days.  Johnson Dec. Ex. S.  By contrast, the time to trial in the EDTX averages 2 years and 284 days.  *Id.* Ex. T.  This factor therefore weighs in favor of transfer.

**B. The private interest factors—location of evidence and witnesses, compulsory process, and litigation costs—weigh strongly in favor of transfer.**

Both Saint Lawrence and its corporate parent, Acacia Research Group LLC are located in the EDTX, including its Chief Executive Officer, Marvin Key, and its Vice President, Holly Hernandez.  Haynes Dec. ¶ 10.  Numerous other Acacia LLC employees also work in Plano.  Haynes Dec. ¶ 17.  By contrast, HTC has no connection to the CDCA.  Indeed, the only two witnesses that HTC specifically identifies in the Central District are two *Acacia* in-house attorneys, Cristin Wagner and David Rosmann.  (Opp. 21); Wagner Dec. ¶ 1; Rosmann Dec. ¶ 1.  But the location of in-house counsel is irrelevant in assessing convenience factors.  *In re Google Inc*.,  2014 WL 5032336, *3 (Fed. Cir. 2014) (location of in-house counsel not entitled to weight in assessing the convenience factors); *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003) ("The factor of 'location of counsel' is irrelevant and improper for consideration in determining the question of transfer of venue.").

HTC attempts to remedy this obvious problem by alleging that certain unnamed, non-party "Qualcomm employees who work in Southern California" might be relevant to this dispute.  (Opp. 21).  This argument fails for two reasons.

First, HTC fails to identify a single Qualcomm witness from Southern California. Consequently, this is a non-factor. *See Stragent, LLC v. Pioneer Elecs. Inc.*, 2013 WL 8467476, at *5 (E.D. Tex. May 8, 2013) (giving no weight to unidentified witnesses); *Ivera Med. Corp. v. Hospira*, 2011 WL 1882277, at *2 (E.D. Tex. May 17, 2011) (same).

Second, HTC fails to inform the Court that the Qualcomm engineers responsible for creating the infringing processors, including the Qualcomm Snapdragon system-on-chips used in the infringing HTC cell phones—are located at design centers in Raleigh, North Carolina and Austin, Texas—not Southern California. Johnson Dec. ¶ 17; Exs. G-R. Qualcomm's Texas design center is *also* responsible for the Snapdragon's digital processing core, the Hexagon DSP, which processes the audio codecs in the accused products and is relevant to the infringing functionality. *Id.* at Ex. L. As a result, the relevant documents relating to the chips' design and operation will be found in Texas, not California.

Further, Saint Lawrence has already identified over **15 engineers** based at Qualcomm's Texas design center with relevant knowledge of the design and operation of the Qualcomm chips at issue in this case. *Id.* at R. These witnesses include:  Qualcomm's Vice President of Engineering, Willie Anderson, who oversees the Austin processor design team; Qualcomm's Senior Director of Technology, Lucian Codrescu; and Rob Marshall, a Director of Engineering for the chip engineering teams. *Id.* HTC cannot deny that the Texas court has subpoena power over all these identified Qualcomm witnesses. Moreover, trial in California would make access to these sources of proof *more inconvenient.* "Because a substantial number of material witnesses reside within the transferee venue and the state of [Texas], and no witnesses reside within the [Central District of California]," this factor "weigh[s] substantially in favor of transfer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

Likewise, "[i]n patent infringement actions, the preferred forum is 'that

1    which is the center of gravity of the accused activity." *Amazon*, 404 F.Supp.2d at

2    1260.  In this case, Texas is the center of gravity where Qualcomm developed the

3    infringing chips and HTC sold its infringing cell phone products.

4         Finally, the differences in litigation costs clearly favor trial in Texas.  HTC's

5    witnesses—all of whom are based in Washington or Taiwan—will be forced to

6    travel regardless of whether this case is heard in Texas or California, making this a

7    non-factor.  *See Cento Group, S.p.A. v. OroAmerica, Inc.*, 822 F.Supp. 1058, 1061–

8    62 (S.D.N.Y.1993) (European plaintiff was no more inconvenienced by litigating in

9    California than in New York); *Ricoh Co. v. Honeywell, Inc.*, 817 F.Supp. 473, 484

10   (D.N.J.1993) (plaintiff's witnesses from Japan were no more inconvenienced by

11   testifying in Minnesota than in New York).  By contrast, forcing Saint Lawrence

12   and the relevant Texas Qualcomm employees to travel to California will impose a

13   needless "waste of time, energy, and money."  *See Van Dusen v. Barrack*, 376 U.S.

14   612, 616 (1964) (holding purpose of Section 1404(a) is to "prevent the waste 'of

15   time, energy, and money' and 'to protect litigants, witnesses and the public against

16   unnecessary inconvenience and expense.") (citations).

17        HTC filed suit in the Central District to delay and disrupt the pending Texas

18   cases.  But there is no reason why this Court should open up a second forum to re-

19   litigate the same patents and products; nor is there good reason for this Court to

20   redo the 74 claim constructions pending before Judge Gilstrap.  In the interests of

21   justice and efficiency, this case should be transferred or dismissed.

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  August 31, 2015

Respectfully submitted,

/s/  Foster C. Johnson
Foster C. Johnson
California Bar No. 289055
Alisa A. Lipski
California Bar No. 278710
AHMAD, ZAVITSANOS, ANAIPAKOS,
ALAVI & MENSING P.C
1221 Mckinney Street, Suite 3460
Houston, TX 77010
Telephone: 713-655-1101
Facsimile: 713-655-0062

**ATTORNEYS FOR DEFENDANT
SAINT LAWRENCE
COMMUNICATIONS LLC**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's ECF System on the 31st day of August, 2015.

/s/ *Foster C. Johnson*
Foster C. Johnson

SAINT LAWRENCE'S REPLY ISO MOTION TO DISMISS; NO. 8:15-CV-00378-CJC-DFM