**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| HTC CORPORATION AND HTC AMERICA, INC., | § § § | Civil No. 2:15-cv-01510-JRG-RSP |
| *Plaintiffs*, | § § | |
| v. | § § | JURY TRIAL DEMANDED |
| SAINT LAWRENCE COMMUNICATIONS LLC, | § § § § | |
| *Defendant*. | § § § | |
| | § | |

**FIRST AMENDED COMPLAINT**
**FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT**
**NOS. 6,795,805, 6,807,524, 7,151,802, 7,260,521 AND 7,191,123; FOR BREACH OF**
**CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND**
**FAIR DEALING; AND DECLARATORY JUDGMENT RE FRAND LICENSE TERMS**

Plaintiffs HTC Corporation and HTC America, Inc. (collectively "HTC") seek a declaration that they do not infringe U.S. Patent Nos. 6,795,805, 6,807,524, 7,151,802, 7,260,521, and 7,191,123 (collectively "Patents-in-Suit"):

**NATURE OF THE ACTION**

1.      This is an action for a declaratory judgment of non-infringement arising under the patent laws of the United States, Tile 35 of the United States Code, and for breach of contract. The alleged owner of the Patents-in-Suit, defendant Saint Lawrence Communications LLC ("SLC"), has placed HTC in reasonable apprehension of being sued for alleged infringement based on the sale, offer for sale and/or importation of HTC products.  Although HTC does not infringe the Patents-in-Suit, SLC's lingering allegations against HTC create a cloud over HTC's products and threaten its business and relationships with its customers and partners.  A

substantial controversy exists between SLC and HTC, of sufficient immediacy and reality, to warrant a declaratory judgment under 28 U.S.C. § 2201.  Additionally SLC is liable for breach of contract and breach of the covenant of good faith and fair dealing by refusing to license the Patents-in-Suit on fair and reasonable, non-discriminatory (FRAND) terms.

## THE PARTIES

2.      Plaintiff HTC Corporation is a corporation organized under the laws of Taiwan with its corporate headquarters located at Xindian District, Zhongxing Road, Section 3, No. 88, New Taipei City 231, Taiwan, R.O.C.

3.      Plaintiff HTC America is a Washington corporation with offices at 13920 SE Eastgate Way, Suite 200, Bellevue, WA 98005.  HTC America is a wholly-owned, indirect subsidiary of HTC Corporation.

4.      On information and belief, defendant Saint Lawrence Communications LLC ("SLC") is a Texas limited liability company that claims to maintain an address at 2400 Dallas Parkway, Suite 200, Plano, TX 75093.

5.      The original Complaint in this action named Acacia Research Corporation ("Acacia Research") as a defendant.  On October 22, 2015, Acacia Research and HTC entered into a stipulation dismissing Acacia Research without prejudice based on its promise to make its witnesses and documents available in the present action as if it were still a party.  (Dkt. No. 44, at 1-2.)  Based on and in reliance on Acacia Research's promise, HTC has removed Acacia Research from this First Amended Complaint, without prejudice.

## JURISDICTION AND VENUE

6.      This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201 and under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*.  This Court has subject matter

jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 2201(a). This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(a) over HTC's contract claims because there is complete diversity of citizenship between Plaintiffs and SLC, and the matter in controversy exceeds $75,000, exclusive of interests and costs. The Court also has supplemental jurisdiction over HTC's contract claims under 28 U.S.C. § 1367(a).

7.      This Court has personal jurisdiction over SLC because it purports to maintain its headquarters in this district. SLC has also consented to be sued in this district by filing a separate action against HTC based on the patents-in-suit, *Saint Lawrence Communications LLC v. HTC Corporation et al.*, No. 2:15-cv-00919 JRG (filed June 2, 2015). Venue is proper in this judicial district under 28 U.S.C. §§ 1391 (b)-(d), and 28 U.S.C. § 1400(b).

**THE PATENTS-IN-SUIT AND COMMITMENTS TO
STANDARD SETTING ORGANIZATIONS**

8.      People often take for granted the fact that they can place telephone calls or send information to almost anyone in the world, without having to worry that the recipient's equipment is compatible with that of the sender. This interoperability is possible because most communications devices, such as smartphones, follow agreed-upon international communications standards (including as standards for data compression).

9.      The word "standard," generally speaking, describes a series of rules or principles that govern how a device should behave when handling certain types of information or attempting to communicate with another device of the same type. Standards are established and published by a standard-setting organization (also known as a "standards body") to facilitate communication between devices of the same type, even if the devices come from different manufacturers.

10. Standards play an important role in establishing a common playing field to allow manufacturers to build competing, yet interoperable, communications devices and equipment. Telecommunications standards result in fewer proprietary and parochial designs, which means fewer interworking (compatibility) problems and more choice for consumers. Standards therefore present a win-win for both industry and the public and played a particularly important role in facilitating interoperability of cellular telephone networks enjoyed by millions of people in the United States and throughout the world.

11. Communications standards often include technical contributions from third-party companies, some of which may be covered by patents owned by those third parties. But the incorporation of patented technologies into a standard presents an inherent tension between: (1) the purpose of a telecommunications standard, which is to make the technology widely available to industry; and (2) the purpose of patent protection, which is to grant a monopoly over, and right to exclude others from using, that technology. Standard-setting organizations strive to resolve this tension by adopting intellectual property right (IPR) policies to ensure that any patented technologies contributed and essential to a standard may be licensed on reasonable and non-discriminatory terms. These policies aim to prevent a contributor from later attempting to "hold-up" other companies by demanding unduly high royalty rates for use of its patented contribution after the standard has been widely adopted by industry.

12. For example, one such standard-setting organization is known as the European Telecommunications Standards Institute ("ETSI"). ETSI maintains an Intellectual Property Rights (IPR) policy that "seeks to reduce the risk that our standards-making efforts might be wasted if essential IPRs are unavailable under Fair, Reasonable and Non-Discriminatory (FRAND) terms and conditions." (available at http://www.etsi.org/about/how-we-

4

work/intellectual-property-rights-iprs (last visited October 26, 2015).)  According to Section 6.1 of that policy, when a patented technical contribution is essential to a standard, the contributor must be willing and prepared to grant an irrevocable license to their patent rights on fair, reasonable, and non-discriminatory ("FRAND") terms.

13.    ETSI was a standards body responsible for standardizing the Adaptive Multi-Rate-Wideband ("AMR-WB") speech compression standard for cellular communications. VoiceAge Corporation ("VoiceAge"), the predecessor-in-interest to the Patents-in-Suit, participated in the AMR-WB standard setting and repeatedly agreed, in accordance with Section 6.1 of ETSI's IPR Policy, to license the Patents-in-Suit on FRAND terms.  In particular, VoiceAge submitted written IPR licensing declarations to ETSI, including on May 31, 2001, October 25, 2004 and January 7, 2010.  (Exhibits 1 through 3.)  Through these declarations, VoiceAge promised to license the Patents-in-Suit on FRAND terms.

14.    These express promises were made not only to ETSI, but to any manufacturer that would later incorporate the AMR-WB standard into its products.  Any manufacturer who would later implement the AMR-WB standard, including HTC, is thus a third-party beneficiary of VoiceAge's promises to ETSI.

15.    VoiceAge has also made commitments regarding licensing of the AMR-WB standard to the ITU-T standards body.  ITU-T maintains a patent policy with the objective that "it must be ensured that Recommendations/Deliverables, their applications, use, etc. are accessible to everybody."  (available at http://www.itu.int/en/ITU-T/ipr/Pages/policy.aspx (last visited October 26, 2015).)  According to the policy, if a patent is embodied fully or partly in a standard, the patent holder must either be willing to negotiate licenses "on a non-discriminatory basis on reasonable terms and conditions," or the standard will not include provisions depending

on the patent. On February 20, 2002, VoiceAge submitted a declaration to the ITU-T that it would grant a license to the AMR-WB codec "to an unrestricted number of applicants on a worldwide-non-discriminatory basis and on reasonable terms and conditions." (Exhibit 4.) On information and belief, VoiceAge made other FRAND commitments covering licensing of the Patents-in-Suit.

16. SLC has publically claimed that the Patents-in-Suit cover mobile handsets that implement the AMR-WB standard, and that the patents are essential to that standard. On information and belief, SLC and its parent company Acacia Research Group ("Acacia Group,") obtained the Patents-in-Suit in 2013 with full knowledge of the express promises that VoiceAge made with respect to FRAND licensing. Those patents and SLC are subject to VoiceAge's FRAND obligations.

17. Notwithstanding these promises, SLC has refused to license the Patents-in-Suit on FRAND terms and have taken actions in breach of its obligation, and inconsistent with its obligation of good faith and fair dealing. As explained in detail below, for example, SLC has caused a German subsidiary to initiate patent infringement suits in Germany based on German counterparts to the Patents-in-Suit for use of HTC phones, seeking an exclusion order against said phones. SLC has also filed a separate patent infringement suit against HTC in the Eastern District of Texas seeking damages, *St. Lawrence Communications LLC v. HTC Corp. et al.*, No. 2:15-cv-00919 JRG (E.D. Tex., filed June 2, 2015). These actions were filed and/or maintained in retaliation for HTC's refusal to license the Patents-in-Suit based on SLC's pricing terms, which seek amounts that exceed a fair and reasonable royalty under the Patents-in-Suit. SLC's decision to bring infringement actions against HTC in response to SLC's refusal to agree to such terms constitutes a violation of SLC's obligation of good faith and fair dealing.

## SLC'S PATENT LITIGATION CAMPAIGN AGAINST HTC AND PRODUCTS THAT USE THE AMR-WB STANDARD

18.     Acacia Research holds itself out as a leading company in the business of asserting patents in litigation.  Acacia Research is a prolific patent assertion entity that is estimated to have orchestrated the filing of more than 650 patent infringement suits in courts throughout the United States.[1]  On information and belief, Acacia Research does not manufacture, develop or sell any products or technologies of its own.

19.     In early 2014, Acacia Research (a parent of SLC) created and/or presented a PowerPoint announcing its corporate strategies.  Acacia Group describes its "Acquisition Model" as "Acacia buys 100% of the patents for 100% of the profits."  Acacia Group described its financial model as targeting large companies.  On information and belief, the patents-in-suit were purchased by Acacia Group and therefore fell under its acquisition model of receiving "100%" of the profits from their exploitation.

20.     Like many other companies in the technology industry, HTC has been a frequent target of patent lawsuits from Acacia Research and/or Acacia Group.  Acacia Research and/or entities owned or controlled by Acacia Research have brought at least fifteen different lawsuits against HTC in the past five years.

21.     SLC claims to own the Patents-in-Suit by assignment from VoiceAge Corporation in December 2013, and has claimed that the Patents-in-Suit cover mobile handsets that implement the Adaptive Multi-Rate-Wideband ("AMR-WB") speech compression standard.

---

[1] *See* T. Cushing, *Know Your Troll: Innovative Display Technologies Targeting Any Company That Creates A Product With An LCD Screen*, available at <https://www.techdirt.com/articles/ 20140629/12410727724/know-your-troll-innovative-display-technologies-targeting-any-company-that-creates-product-with-lcd-screen.shtml> (last visited March 6, 2015).)

22.     For example, in July 2014, St. Lawrence Communications GmbH ("St. Lawrence GmbH"), the German subsidiary of defendant SLC, initiated patent infringement suits in Germany against Vodafone GmbH and Telekom Deutschland GmbH ("German Litigations") based on German counterparts to the Patents-in-Suit.  SLC claims that the defendants in the German Litigations infringe by offering HTC handsets to their customers that practice the AMR-WB standard.  HTC has been served with third party notices in the German Litigations and has been forced to intervene at least in the suit against Telekom Deutschland GmbH based on Acacia Research's allegations against HTC handsets.

23.     On December 9, 2014, HTC wrote a letter to St. Lawrence GmbH, requesting that the parties enter into negotiations for a possible patent license on FRAND (fair, reasonable, and non-discriminatory) terms.  By letter dated December 22, St. Lawrence GmbH responded by stating that "we are glad to note that HTC is finally contemplating to enter into negotiations for a FRAND license concerning our AMR-WB patent portfolio and that HTC has already taken note of our license rates published on our website."

24.     The letter further suggested that a license covering just Germany would not be acceptable, and asked HTC to execute a Confidentiality Agreement to pursue further discussions. (*Id.* at 2.)  The letter indicated that the agreement would be signed by Mr. Marvin Key "for our parent company [defendant SLC] that owns foreign counterparts of the patents in our AMR-WB patent portfolio that might also be of interest to HTC."  (*Id.* (underlining added).)  The "foreign counterparts" owned by defendant SLC, referenced in the letter, are the U.S. patents in the AMR-WB portfolio including the Patents-in-Suit.  The December 22 letter further stated that "[o]nce we have received the countersigned NDA we will send you a license agreement for our AMR-WB patent portfolio."  (*Id.*)  HTC signed the Confidentiality Agreement on December 26,

2014.  HTC, SLC and Acacia Research have not to date entered into any license for the AMR-WB portfolio, which includes the Patents-in-Suit.[2]

25.    As mentioned above, SLC claims that the Patents-in-Suit in the United States read on the AMR-WB standard.  SLC litigation campaign against AMR-WB has accordingly not been limited to Germany – it also included lawsuits filed in the United States.  For example, on April2, 2014, SLC filed suit in the U.S. District Court for the Eastern District of Texas against Samsung Electronics, alleging that mobile handsets that practice the AMR-WB standard infringed the Patents-in-Suit.  *See Saint Lawrence Commc'ns LLC v. Samsung Elecs. Co. Ltd. et al.*, No. 14-cv-00293.  That suit was dismissed with prejudice on April 22, 2014 based, on information and belief, on a license agreement between Samsung and SLC.  On November 18, 2014, another suit was filed by SLC against LG Electronics alleging that LG mobile handsets that practice AMR-WB infringe the Patents-in-Suit.  *See Saint Lawrence Commc'ns LLC v. LG Elecs., Inc. et al.*, No. 14-cv-01055.  As noted above, moreover, SLC has also initiated a later-filed duplicative suit against HTC in the Eastern District of Texas, *Saint Lawrence Communications LLC v. HTC Corporation et al.*, No. 2:15-cv-00919 JRG (E.D. Tex., filed June 2, 2015), alleging that HTC infringes the Patents-in-Suit.

26.    The facts set forth above show that a substantial controversy exists between SLC and HTC, of sufficient immediacy and reality, to warrant a declaratory judgment under 28 U.S.C. § 2201.  As explained above, SLC has publicly stated that mobile handsets that implement AMR-WB infringe the Patents-in-Suit.  SLC has also taken legal action against HTC mobile handsets by, among other things, seeking to enjoin their sale and use through the German

---

[2]  The Confidentiality Agreement covers communications taking place after December 26, 2014. Accordingly, communications between Acacia Research, Acacia Group, SLC and HTC occurring after that date, if any, are not set forth in this Complaint and not relied upon for purposes of showing subject matter jurisdiction under 28 U.S.C. § 2201.

Litigations. Acacia Research has also filed at least two lawsuits in the United States against competitors of HTC in the mobile handset market (*i.e.*, Samsung and LG), and after the filing of the initial Complaint in this action, a duplicative action against HTC. Those lawsuits are based on the Patents-in-Suit, which are counterparts to the patents asserted in the German Litigations in which HTC products have been targeted, and based on Samsung's and LG's alleged use of the AMR-WB standard. SLC's conduct and representations to HTC in its December 22 letter, its pattern of conduct and behavior toward HTC in Germany, and its suits in the United States have created a cloud over HTC's products and threaten HTC's business and relationships with customers and partners. Based on these facts, HTC has more than a reasonable apprehension of suit based on the Patents-in-Suit.

<b><u>COUNT ONE</u></b>

<b>(Declaration of Non-Infringement of U.S. Patent No. 6,795,805)</b>

27. HTC restates and incorporates by reference the allegations in paragraphs 1 through 26 of this Complaint as if fully set forth herein.

28. SLC claims to be the assignee of U.S. Patent No. 6,795,805 ("'805 patent") and claims to own all rights, title and interest therein.

29. HTC does not infringe any claim of the '805 patent, but based on the statements and conduct of SLC as detailed above, HTC has a reasonable apprehension of suit. A substantial, immediate, and real controversy therefore exists between HTC and SLC regarding the non-infringement of HTC mobile handsets and non-infringement of the '805 patent. A judicial declaration is necessary to resolve this controversy.

## COUNT TWO

**(Declaration of Non-Infringement of U.S. Patent No. 6,807,524)**

30.     HTC restates and incorporates by reference the allegations in paragraphs 1 through 26 of this Complaint as if fully set forth herein.

31.     SLC claims to be the assignee of U.S. Patent No. 6,795,524 ("'524 patent") and claims to own all rights, title and interest therein.

32.     HTC does not infringe any claim of the '524 patent, but based on the statements and conduct of SLC as detailed above, HTC has a reasonable apprehension of suit.  A substantial, immediate, and real controversy therefore exists between HTC and SLC regarding the non-infringement of HTC mobile handsets and non-infringement of the '524 patent.  A judicial declaration is necessary to resolve this controversy.

## COUNT THREE

**(Declaration of Non-Infringement of U.S. Patent No. 7,151,802)**

33.     HTC restates and incorporates by reference the allegations in paragraphs 1 through 26 of this Complaint as if fully set forth herein.

34.     SLC claims to be the assignee of U.S. Patent No. 7,151,802 ("'802 patent") and claims to own all rights, title and interest therein.

35.     HTC does not infringe any claim of the '802 patent, but based on the statements and conduct of SLC as detailed above, HTC has a reasonable apprehension of suit.  A substantial, immediate, and real controversy therefore exists between HTC and SLC regarding the non-infringement of HTC mobile handsets and non-infringement of the '802 patent.  A judicial declaration is necessary to resolve this controversy.

11

## COUNT FOUR

### (Declaration of Non-Infringement of U.S. Patent No. 7,260,521)

36.     HTC restates and incorporates by reference the allegations in paragraphs 1 through 26 of this Complaint as if fully set forth herein.

37.     SLC claims to be the assignee of U.S. Patent No. 7,260,521 ("'521 patent") and claims to own all rights, title and interest therein.

38.     HTC does not infringe any claim of the '521 patent, but based on the statements and conduct of SLC as detailed above, HTC has a reasonable apprehension of suit.  A substantial, immediate, and real controversy therefore exists between HTC and SLC regarding the non-infringement of HTC mobile handsets and non-infringement of the '521 patent.  A judicial declaration is necessary to resolve this controversy.

## COUNT FIVE

### (Declaration of Non-Infringement of U.S. Patent No. 7,191,123)

39.     HTC restates and incorporates by reference the allegations in paragraphs 1 through 26 of this Complaint as if fully set forth herein.

40.     SLC claims to be the assignee of U.S. Patent No. 7,191,123 ("'123 patent") and claims to own all rights, title and interest therein.

41.     HTC does not infringe any claim of the '123 patent, but based on the statements and conduct of SLC as detailed above, HTC has a reasonable apprehension of suit.  A substantial, immediate, and real controversy therefore exists between HTC and SLC regarding the non-infringement of HTC mobile handsets and non-infringement of the '123 patent.  A judicial declaration is necessary to resolve this controversy.

12

## COUNT SIX

### (Breach of Contract)

42.     HTC restates and incorporates by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

43.     As explained previously, VoiceAge, the predecessor-in-interest to the Patents-in-Suit, participated in AMR-WB standard setting with multiple organizations, and repeatedly agreed, to license the Patents-in-Suit on FRAND terms.  For example, VoiceAge submitted IPR licensing declarations to ETSI and ITU-T in which it promised to license the Patents-in-Suit on FRAND terms.  These express promises were made not only to the standards organizations, but to any manufacturer that would later incorporate the standard into its products.  HTC is a third-party beneficiary of VoiceAge's promises to the standards organizations, and SLC is bound to VoiceAge's promises as the purported successor-in-interest to the Patents-in-Suit.

44.     SLC has breached its promise by failing and refusing to license the Patents-in-Suit on FRAND terms, and by initiating and maintaining actions in Germany and the United States seeking exclusion and damages for alleged infringement of patents subject to VoiceAge's FRAND commitments.

45.     The above-described conduct constitutes a breach of SLC's FRAND obligations. As a result of said breach, HTC has been directly and proximately damaged in an amount to be determined at trial, but in any case, exceeding $75,000, exclusive of interest and costs.  HTC is entitled to recover damages and other appropriate relief for said breach.

## COUNT SEVEN

### (Breach of the Covenant of Good Faith and Fair Dealing)

46.    HTC restates and incorporates by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

47.    SLC has acted in bad faith by refusing to license the Patents-in-Suit on FRAND terms, and by initiating legal actions to enforce the Patents-in-Suit.  These actions were initiated and maintained in retaliation for HTC's decision to not accede to SLC's excessive demands for amounts well exceeding a license on fair, reasonable and non-discriminatory terms.  SLC has accordingly wrongfully and intentionally breached the covenant of good faith and fair dealing by denying HTC the benefits to which they are entitled under SLC's FRAND obligations.

48.    The above-described conduct constitutes a breach of the covenant of good faith and fair dealing implied in SLC's FRAND obligations.  As a result of said breach, HTC has been directly and proximately damaged in an amount to be determined at trial, but in any case, exceeding $75,000, exclusive of interest and costs.  HTC is entitled to recover damages and other appropriate relief for said breach.

## COUNT EIGHT

### (Declaration of FRAND Royalty Rate)

49.    HTC restates and incorporates by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

50.    As explained previously, HTC does not infringe any claim of the Patents-in-Suit, but a substantial, immediate, and real controversy exists between HTC and SLC regarding the non-infringement of HTC mobile handsets.  Moreover, a substantial controversy exists between HTC and SLC regarding the terms of a fair, reasonable, and non-discriminatory ("FRAND")

14

license to the Patents-in-Suit.  In the event of a finding of infringement of any valid claim of the

Patents-in-Suit by HTC, therefore, HTC is entitled to a judicial declaration of the amount of an

appropriate FRAND royalty that is consistent with SLC's FRAND obligations.

## JURY DEMAND

51.     HTC's hereby demands a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, HTC prays for judgment and relief as follows:

A.     Declaring that HTC does not infringe the Patents-in-Suit;

B.     Declaring that judgment be entered in favor of HTC and against SLC on each of HTC's claims;

C.     Awarding damages to HTC for SLC's breach of its promise to license the Patents-in-Suit on FRAND terms, and its breach of the implied covenant of good faith and fair dealing;

D.     Injunctive and other relief preventing SLC from further or ongoing breaches of contract or of the covenant of good faith and fair dealing;

E.     Finding that this case is an exceptional case under 35 U.S.C. § 285;

F.     Awarding HTC its costs and attorneys' fees in connection with this action; and

G.     Awarding such further and additional relief as the Court deems just and proper.

15

Dated: October 26, 2015                    Respectfully submitted,


                                           By:  */s/ Heidi L. Keefe*
                                                Heidi L. Keefe

                                           Brian Craft (Texas Bar No. 04972020)
                                           FINDLAY CRAFT, P.C.
                                           102 N. College Ave, Suite 900
                                           Tyler, TX  75702
                                           Telephone:  (903) 534-1100
                                           bcraft@findlaycraft.com

                                           Heidi L. Keefe (CA Bar 178960), Lead Counsel
                                           Mark R. Weinstein (CA Bar 193043)
                                           Priya B. Viswanath (CA Bar 238089)
                                           Lam Nguyen (CA Bar 265285)
                                           Philip H. Mao (CA Bar 300711)
                                           COOLEY LLP
                                           3175 Hanover Street
                                           Palo Alto, CA 94304-1130
                                           Telephone:  (650) 843-5000
                                           Fax:  (650) 849-7400
                                           hkeefe@cooley.com
                                           mweinstein@cooley.com
                                           pviswanath@cooley.com
                                           lnguyen@cooley.com
                                           pmao@cooley.com

                                           *Attorneys for Plaintiffs*
                                           *HTC Corporation and HTC America, Inc.*

16

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2015, I electronically filed the foregoing filing with the Clerk of Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.  Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing via email, facsimile and/or U.S. First Class Mail on October 26, 2015.



                                                    Heidi L. Keefe

123173031 v1