UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| HTC CORPORATION AND HTC AMERICA, INC. | § § § | Civil Action No. 2:15-cv-001510-JRG |
| *Plaintiffs,* | § § § | JURY TRIAL DEMANDED |
| v. | § § | |
| SAINT LAWRENCE COMMUNICATIONS LLC, | § § § | |
| *Defendants.* | § § § § | |

**HTC CORPORATION AND HTC AMERICA, INC.'S REPLY
TO SAINT LAWRENCE COMMUNICATIONS LLC'S COUNTERCLAIMS FOR
INFRINGEMENT**

Plaintiffs HTC Corporation ("HTC Corp.") and HTC America, Inc. ("HTC America") (collectively, "HTC"), hereby respond to Defendant Saint Lawrence Communications LLC's ("SLC's") Counterclaims for Infringement ("Counterclaims"), as follows:

**THE PARTIES**

1.      HTC lacks sufficient information to form a belief as to the truth of the allegations set forth in paragraph 1 of the Counterclaims and, therefore, denies them.

2.      HTC admits that HTC Corporation is a Plaintiff and Counterclaim Defendant in this action.  HTC admits that HTC Corporation is a corporation organized under the laws of Taiwan.  HTC admits that HTC Corporation has its corporate headquarters located at Xindian District, Zhongxing Road, Section 3, No. 88, New Taipei City 231, Taiwan, R.O.C.

3.      HTC admits that HTC America Inc., is a Plaintiff and Counterclaim Defendant in this action.  HTC admits that HTC America, Inc., is incorporated under the laws of Washington.

HTC admits that HTC America, Inc., has its principal place of business at 13920 SE Eastgate Way, Suite 400, Bellevue, Washington 98005. HTC America is a wholly-owned, indirect subsidiary of HTC Corporation.

## JURISDICTION AND VENUE

4.      HTC admits that SLC has asserted a counterclaim of infringement arising under the patent laws of the United States.  HTC further admits that that this Court has subject matter jurisdiction over SLC's counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      HTC admits that for the purposes of this action only, this Court has personal jurisdiction over HTC Corporation and HTC American, Inc.  HTC admits for purposes of this action only that venue for this action is authorized in this judicial district.  HTC denies that venue is convenient or otherwise appropriate in this judicial district.

6.      HTC denies that venue is proper in this federal district.  HTC denies that it has done business in this District, that it has committed acts of infringement in this District, and that it continues to commit acts of infringement in this district.  The remaining allegations in paragraph 6 of the Counterclaims state legal conclusions to which no response is required. To the extent a response is required, HTC denies that SLC is entitled to any relief.

7.      HTC denies that venue is proper in this federal district. HTC denies that it has done business in this District, that it has committed acts of infringement in this District, and that it continues to commit acts of infringement in this district.  The remaining allegations in paragraph 7 of the Counterclaims state legal conclusions to which no response is required. To the extent a response is required, HTC denies that SLC is entitled to any relief.

**SUMMARY**

8.    HTC lacks sufficient information to form a belief as to the truth of the allegations set forth in paragraph 8 of the Counterclaims and, therefore, denies them.

9.    HTC lacks sufficient information to form a belief as to the truth of the allegations set forth in paragraph 9 of the Counterclaims and, therefore, denies them.

10.    HTC lacks sufficient information to form a belief as to the truth of the allegations set forth in paragraph 10 of the Counterclaims and, therefore, denies them.

11.    HTC lacks sufficient information to form a belief as to the truth of the allegations set forth in paragraph 11 of the Counterclaims and, therefore, denies them.

12.    HTC lacks sufficient information to form a belief as to the truth of the allegations set forth in paragraph 12 of the Counterclaims and, therefore, denies them.

13.    HTC lacks sufficient information to form a belief as to the truth of the allegations set forth in paragraph 13 of the Counterclaims and, therefore, denies them.

14.    HTC lacks sufficient information to form a belief as to the truth of the allegations set forth in paragraph 14 of the Counterclaims and, therefore, denies them.

15.    HTC lacks sufficient information to form a belief as to the truth of the allegations set forth in paragraph 15 of the Counterclaims and, therefore, denies them.

**COUNT I: ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,795,805**

16.    HTC admits that on its face, U.S. Patent No. 6,795,805 ("the '805 patent") bears an issuance date of September 21, 2004.  HTC admits that the '805 patent is titled "Periodicity Enhancement in Decoding Wideband Signals."  HTC denies that the '805 patent was duly and legally issued.  HTC lacks sufficient information to form a belief as to the truth of the remaining allegations set forth in paragraph 16 of the Counterclaims and, therefore, denies them.

17.    Denied.

18.    Denied.

19.    Denied.

### COUNT II: ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,807,524

20.    HTC admits that on its face, U.S. Patent No. 6,807,524 ("the '524 patent") bears an issuance date of October 19, 2004.  HTC admits that the '524 patent is titled "Perceptual Weighting Device and Method for Efficient Coding of Wideband Signals."  HTC denies that the '524 patent was duly and legally issued.  HTC lacks sufficient information to form a belief as to the truth of the remaining allegations set forth in paragraph 20 of the Counterclaims and, therefore, denies them.

21.    Denied.

22.    Denied.

23.    Denied.

### COUNT III: ALLEGED INFRINGEMENT OF U.S. PATENT NO. 7,151,802

24.    HTC admits that on its face, U.S. Patent No. 7,151,802 ("the '802 patent") bears an issuance date of October 19, 2004.  HTC admits that the '802 patent is titled "High Frequency Content Recovering Method and Device for Over-Sampled Synthesized Wideband Signal."  HTC denies that the '802 patent was duly and legally issued.  HTC lacks sufficient information to form a belief as to the truth of the remaining allegations set forth in paragraph 24 of the Counterclaims and, therefore, denies them.

25.    Denied.

26.    Denied.

27.    Denied.

4

## COUNT IV: ALLEGED INFRINGEMENT OF U.S. PATENT NO. 7,260,521

28.     HTC admits that on its face, U.S. Patent No. 7,260,521 ("the '521 patent") bears an issuance date of August 21, 2007.  HTC admits that the '521 patent is titled "Method and Device for Adaptive Bandwidth Pitch Search in Coding Wideband Signals."  HTC denies that the '521 patent was duly and legally issued.  HTC lacks sufficient information to form a belief as to the truth of the remaining allegations set forth in paragraph 28 of the Counterclaims and, therefore, denies them.

29.     Denied.

30.     Denied.

31.     Denied.

## COUNT V: ALLEGED INFRINGEMENT OF U.S. PATENT NO. 7,191,123

32.     HTC admits that on its face, U.S. Patent No. 7,191,123 ("the '123 patent") bears an issuance date of March 13, 2007.  HTC admits that the '123 patent is titled "Gain-Smoothing in Wideband Speech and Audio Signal Decoder."  HTC denies that the '123 patent was duly and legally issued.  HTC lacks sufficient information to form a belief as to the truth of the remaining allegations set forth in paragraph 32 of the Counterclaims and, therefore, denies them.

33.     Denied.

34.     Denied.

35.     Denied.

## JURY DEMAND

36.     SLC's demand for a trial by jury does not require a response by HTC.

## REPLY TO SLC'S PRAYER FOR RELIEF

HTC denies that SLC is entitled to any relief whatsoever from HTC, as prayed for or otherwise.

## AFFIRMATIVE DEFENSES

HTC asserts the following Affirmative Defenses in response to SLC's Counterclaims and SLC's assertion of infringement of the '805, '524, '802, '521 and '123 Patents (individually and collectively, "the Asserted Patents"). HTC reserves its right to amend its Reply to add more Affirmative Defenses, including instances of inequitable conduct, as they become known throughout the course of discovery in this case. Assertion of a defense is not a concession that HTC has the burden of proving the matter asserted.

## FIRST AFFIRMATIVE DEFENSE

37.    The claims of the Asserted Patents are invalid and/or unenforceable at least because they fail to satisfy one or more of the conditions or requirements for patentability specified in Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and 112.

## SECOND AFFIRMATIVE DEFENSE

38.    The claims of the Asserted Patents are invalid and/or unenforceable at least because they fail to satisfy one or more of the conditions or requirements for patentability specified in Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and 112.

## THIRD AFFIRMATIVE DEFENSE

39.    SLC's claims for relief are statutorily limited in whole or in part by Title 35 of the United States Code, including without limitation, 35 U.S.C. §§ 286 and/or 287.

## FOURTH AFFIRMATIVE DEFENSE

40.     SLC's claims that HTC indirectly infringes the Asserted Patents, either contributorily or by inducement, are barred, in whole or in part, because HTC is not liable to SLC for the allegedly infringing acts for any time periods during which HTC did not know of the Asserted Patents and/or did not have the specific intent to cause infringement of the Asserted Patents and/or otherwise did not know that its actions would constitute indirect infringement.  In addition, any and all products or actions accused of infringement have substantial uses that do not infringe and do not induce or contribute to the infringement of the claims of the Asserted Patents.

## FIFTH AFFIRMATIVE DEFENSE

41.     SLC's claims are barred, in whole or in part, by an express or implied license, and/or the equitable doctrines of laches, waiver, acquiescence, patent misuse, estoppel and/or the doctrine of patent exhaustion.

## SIXTH AFFIRMATIVE DEFENSE

42.     SLC's claims are barred by the doctrine of prosecution history estoppel based on statements, representations, and admissions made during the prosecution of the patent applications resulting in the Asserted Patents before the United States Patent and Trademark Office and/or during the prosecution of related patent applications.

## SEVENTH AFFIRMATIVE DEFENSE

43.     SLC has failed to state a claim for which relief can be granted.

## EIGHTH AFFIRMATIVE DEFENSE

44.     SLC's Counterclaims does not, with respect to the named defendants, allege any right to relief jointly, severally, or in the alternative with respect to or arising out of the same

transaction, occurrence, or series of transactions or occurrences, or any common question of law or fact.

## NINTH AFFIRMATIVE DEFENSE

45.     35 U.S.C. § 288 bars SLC from recovering costs associated with this action.

## TENTH AFFIRMATIVE DEFENSE

46.     SLC has alleged that VoiceAge had patent families, including the Asserted Patents that have been allegedly assigned to SLC (Counterclaims at ¶¶ 16, 20, 24, 28, and 32), which are essential to certain AMR-WB standards for wideband speech, including ITU-T G.722.2 and 3GPP TS 26.190.  (Counterclaims at ¶¶ 9-10.)  SLC has also alleged that "[t]he VoiceAge codec was . . . the codec chosen to be the official AMR-WB standard." (Counterclaims at ¶ 10.)  HTC disagrees with, and denies that the Asserted Patents are standard essential.

47.     To the extent SLC asserts that the Asserted Patents are standard essential, and on information and belief, then SLC is barred from asserting the Asserted Patents by the equitable doctrine of patent misuse.

48.     AMR-WB standards are promulgated by relevant standards-setting organizations ("SSOs"), such as the International Telecommunications Union Telecommunication Standardization Sector ("ITU-T") or the Third Generation Partnership Project ("3GPP").  SSOs put in place Intellectual Property Rights Policies ("IPR Policies") that require each SSO member to identify all patents held by any member that may be essential to compliance with a proposed technology standard.  The IPR Policies further require that each SSO member must state whether it will license such patents on fair, reasonable and non-discriminatory ("FRAND" or "RAND") terms or without compensation.

49.    SLC has alleged that "VoiceAge provided the core technologies for at least nine international speech and audio standards-based codecs used in both wireless and wireline markets and applications." (Counterclaims at ¶ 8.) SLC has further alleged that "VoiceAge's patented technologies have won every international audio compression standard to which they have been submitted during the last thirteen years, including to the Third Generation Partnership Project ("3GPP"), 3GPP2, the International Telecommunications Union ("ITU"), the European Telecommunications Standards Institute ("ETSI"), and the Motion Picture Experts Group ("MPEG") of the International Organization for Standardization ("ISO")." (*Id.*) On information and belief based on Paragraph 8 of the Counterclaims, prior to the institution of this action and during relevant time periods, VoiceAge was a member of various SSOs, including ITU-T, 3GPP, and/or ETSI. As a member of these SSOs, VoiceAge participated in standards-setting activities within those SSOs.

50.    Prior to the institution of this action, and during relevant time periods, HTC, directly or through one of its affiliates, was a member of various relevant SSOs, including ITU-T, 3GPP, and/or ETSI.

51.    On information and belief, VoiceAge assigned to SLC its rights to the Asserted Patents subject to VoiceAge's obligations to SSOs, including ITU-T, 3GPP, and/or ETSI.

52.    SSOs, like ITU-T, 3GPP, and ETSI, are responsible for the standardization of telecommunication technologies for the benefit of its members and third parties. SSOs, like ITU-T, 3GPP, and ETSI, have developed IPR Policies designed to mitigate the risk of anticompetitive acts by IPR owners seeking to hold-up or exploit the standard-setting process. In the absence of FRAND/free licensing obligations, an IPR owner might knowingly watch its patented technology become incorporated into a standard, then demand unreasonable license fees

9

or even refuse to license altogether and seek injunctive relief against any party that implements the standard (and correspondingly, its patented technology).  SSO IPR Policies are designed to obtain FRAND/free licensing obligations from IPR owners to ensure that IPR owners will not use their IPR to extract unreasonable license fees or to exclude any market participant that is willing to accept a license for use of the IPR on FRAND terms and conditions or without compensation to the IPR owner.

53.    By way of example, 3GPP is a collaborative activity through a group of recognized SSOs (its Organizational Partners), including ETSI, and it develops technical specifications subsequently presented to and adopted as standards by its Organizational Partners. ETSI is an SSO that is responsible for the standardization of information and communication technologies for the benefit of its members and third parties.  ETSI's IPR Policy is set forth in Annex 6 of its Rules of Procedure. Clause 4.1 of the ETSI's IPR Policy requires ETSI members to declare all essential IPRs in a timely manner.  Clause 15 of the IPR Policy defines IPR to mean "any intellectual property right conferred by statute law including applications therefor other than trademarks."  Therefore, market participants have a reasonable expectation that all potentially essential patents or patent applications will be disclosed to ETSI.  Clause 6 governs the availability of licenses to essential IPRs, stating that when essential IPRs are brought to the attention of ETSI, ETSI shall immediately request an undertaking in writing that the IPR owner is prepared to grant irrevocable licenses on FRAND terms and conditions.  Clause 8 states that, if an IPR owner notifies ETSI that it is not prepared to license an IPR for a standard, ETSI will select an alternative technology to incorporate into the standard, or will stop working entirely on the standard if no alternative is available.

54.     On information and belief, VoiceAge has explicitly made declarations to SSOs, like ITU-T, 3GPP, and/or ETSI, related to the Asserted Patents, and has undertaken to grant irrevocable licenses under the SSO's IPRs on terms and conditions which are in accordance with the SSO's IPR Policy (*i.e.*, without compensation or on FRAND terms).  On information and belief, SLC has not met its obligations to offer licenses to its patents on FRAND terms.

55.     On information and belief, because VoiceAge declared the Asserted Patents in accordance with SSO procedures and correspondingly committed to licensing such patents without compensation or on FRAND terms, and SLC acquired the Asserted Patents subject to VoiceAge's obligations, the equitable doctrine of patent misuse bars SLC's present claims inasmuch as SLC seeks to extract excessive damages, such damages that do not meet SLC's FRAND obligations, from HTC

## ELEVENTH AFFIRMATIVE DEFENSE

56.     HTC incorporates the allegations set forth in Paragraphs 46-53, above. On information and belief, subject to further discovery, and in the alternative, VoiceAge failed to timely disclose the Asserted Patents to relevant SSOs, including ITU-T, 3GPP, and/or ETSI, in violation of its duties to these SSOs to disclose relevant patents. This failure to disclose the Asserted Patents is a breach of the duties owed to these SSOs and their members.

57.     As a result, members of these SSOs and others, including HTC, have invested financial resources and expended great effort to develop and/or market products that operate in accordance with portions of certain standards established by certain SSOs, such as ITU-T, 3GPP, and/or ETSI.

58.     VoiceAge, and therefore SLC, has waived, or acquiesced with respect to, any rights it may have had to enforce the Asserted Patents against manufacturers, sellers, and/or

11

purchasers, including HTC, of products which operate in accordance with portions of certain standards established by certain SSOs, such as ITU-T, 3GPP, and/or ETSI.

## TWELFTH AFFIRMATIVE DEFENSE

59.     SLC has alleged that VoiceAge had patent families, including the Asserted Patents that have been allegedly assigned to SLC (Counterclaims at ¶¶ 16, 20, 24, 28, and 32), which are essential to certain AMR-WB standards for wideband speech, including ITU-T G.722.2 and 3GPP TS 26.190.  (Counterclaims at ¶¶ 9-10.)  SLC has also alleged that "[t]he VoiceAge codec was . . . the codec chosen to be the official AMR-WB standard." (Counterclaims at ¶ 10.)  HTC disagrees with, and denies that the Asserted Patents are standard essential.

60.     To the extent SLC asserts that the Asserted Patents are standard essential, and on information and belief, HTC incorporates the allegations set forth in Paragraphs 46-55, above. In light of these facts, SLC's claims are barred in whole or in part pursuant to actual licenses or under the doctrine of implied license.

61.     In the alternative and on information and belief, HTC incorporates the allegations set forth in paragraphs 46-53 and 56-58, above.  In light of these facts, SLC's claims are barred in whole or in part pursuant to actual licenses or under the doctrine of implied license.

## THIRTEENTH AFFIRMATIVE DEFENSE

62.     SLC has alleged that VoiceAge had patent families, including the Asserted Patents that have been allegedly assigned to SLC (Counterclaims at ¶¶ 16, 20, 24, 28, and 32), which are essential to certain AMR-WB standards for wideband speech, including ITU-T G.722.2 and 3GPP TS 26.190.  (Counterclaims at ¶¶ 9-10.)  SLC has also alleged that "[t]he VoiceAge codec was . . . the codec chosen to be the official AMR-WB standard."

12

(Counterclaims at ¶ 10.)  HTC disagrees with, and denies that the Asserted Patents are standard essential.

63.     To the extent SLC asserts that the Asserted Patents are standard essential, and on information and belief, HTC incorporates the allegations set forth in Paragraphs 46-55, above. In light of these facts, the Asserted Patents are void and unenforceable by reason of the equitable doctrine of unclean hands based, among other things, on VoiceAge's and SLC's failure to comply with the rules and obligations of various SSOs, including ITU-T, 3GPP, and/or ETSI.

64.     In the alternative and on information and belief, HTC incorporates the allegations set forth in paragraphs 46-53 and 56-58, above.  In light of these facts, the Asserted Patents are void and unenforceable by reason of the equitable doctrine of unclean hands based, among other things, on VoiceAge's and SLC's failure to comply with the rules and obligations of various SSOs, including ITU-T, 3GPP, and/or ETSI.

**FOURTEENTH AFFIRMATIVE DEFENSE**

65.     SLC has alleged that VoiceAge had patent families, including the Asserted Patents that have been allegedly assigned to SLC (Counterclaims at ¶¶ 16, 20, 24, 28, and 32), which are essential to certain AMR-WB standards for wideband speech, including ITU-T G.722.2 and 3GPP TS 26.190.  (Counterclaims at ¶¶ 9-10.)  SLC has also alleged that "[t]he VoiceAge codec was . . . the codec chosen to be the official AMR-WB standard." (Counterclaims at ¶ 10.)  HTC disagrees with, and denies that the Asserted Patents are standard essential.

66.     To the extent SLC asserts that the Asserted Patents are standard essential, and on information and belief, HTC incorporates the allegations set forth in Paragraphs 46-55, above. In light of these facts, SLC's claims are barred in whole or in part based on equitable and/or

13

promissory estoppel based on VoiceAge's and SLC's failure to comply with promises made to SSOs, including ITU-T, 3GPP, and/or ETSI, and manufacturers of products compliant with the AMR-WB standard.

67.    In the alternative and on information and belief, HTC incorporates the allegations set forth in paragraphs 46-53 and 56-58, above.  In light of these facts, SLC's claims are barred in whole or in part based on equitable and/or promissory estoppel based on VoiceAge's and SLC's failure to comply with promises made to SSOs, including ITU-T, 3GPP, and/or ETSI, and manufacturers of products compliant with the AMR-WB standard.

## FIFTEENTH AFFIRMATIVE DEFENSE

68.    SLC has alleged that VoiceAge had patent families, including the Asserted Patents that have been allegedly assigned to SLC (Counterclaims at ¶¶ 16, 20, 24, 28, and 32), which are essential to certain AMR-WB standards for wideband speech, including ITU-T G.722.2 and 3GPP TS 26.190.  (Counterclaims at ¶¶ 9-10.)  SLC has also alleged that "[t]he VoiceAge codec was . . . the codec chosen to be the official AMR-WB standard." (Counterclaims at ¶ 10.)  HTC disagrees with, and denies that the Asserted Patents are standard essential.

69.    To the extent SLC asserts that the Asserted Patents are standard essential, and on information and belief, HTC incorporates the allegations set forth in Paragraphs 46-55, above. In light of these facts, SLC's claims are barred in whole or in part because VoiceAge, and thus SLC, knowingly waived its right to seek monetary damages and/or non-FRAND monetary damages through the commitments made to SSOs, including ITU-T, 3GPP, and/or ETSI.

70.    In the alternative and on information and belief, HTC incorporates the allegations set forth in paragraphs 46-53 and 56-58, above.  In light of these facts, SLC's claims are barred

in whole or in part because VoiceAge, and thus SLC, knowingly waived its right to seek monetary damages and/or non-FRAND monetary damages through the commitments made to SSOs, including ITU-T, 3GPP, and/or ETSI.

## SIXTEENTH AFFIRMATIVE DEFENSE

71.     SLC's claims are barred in whole or in part by laches, waiver and/or estoppel.

72.     On information and belief, SLC and the alleged assignors of the Asserted Patents (including VoiceAge) have been aware for many years that HTC and others were developing, manufacturing, marketing and/or selling products that operate in accordance with certain portions of certain relevant AMR-WB standards.

73.     SLC and the alleged assignors of the Asserted Patents (including VoiceAge) have inexcusably and unreasonably delayed in bringing a patent infringement action against HTC. Their delay has economically and/or evidentially resulted in material prejudice to HTC.

## SEVENTEENTH AFFIRMATIVE DEFENSE

74.     SLC has alleged that VoiceAge had patent families, including the Asserted Patents that have been allegedly assigned to SLC (Counterclaims at ¶¶ 16, 20, 24, 28, and 32), which are essential to certain AMR-WB standards for wideband speech, including ITU-T G.722.2 and 3GPP TS 26.190.  (Counterclaims at ¶¶ 9-10.)  SLC has also alleged that "[t]he VoiceAge codec was . . . the codec chosen to be the official AMR-WB standard." (Counterclaims at ¶ 10.)  HTC disagrees with, and denies that the Asserted Patents are standard essential.

75.     To the extent that SLC asserts that the Asserted Patents are standard essential and on information and belief, HTC incorporates the allegations set forth in paragraphs 46-55, above. In light of these facts, SLC lacks standing as to its claims relating to some or all of the Asserted

15

Patents because it has not offered HTC a license without compensation or on FRAND terms or negotiated in good faith to offer HTC such a FRAND/free license in violation of VoiceAge's representations and obligations to SSOs, including ITU-T, 3GPP, and/or ETSI.

## EIGHTEENTH AFFIRMATIVE DEFENSE

76.     SLC's remedies are limited by 28 U.S.C. § 1498(a).

## NINETEENTH AFFIRMATIVE DEFENSE

77.     SLC lacks standing to pursue some or all of its claims against HTC.

78.     On information and belief, the Université de Sherbrooke filed Canadian Patent Application No. 2252170 ("the '170 application") on October 27, 1998 and identified itself as the owner of the invention. Each of the asserted '805, '524, '802, and '521 patents on its face states that it claims priority to the '170 application.  On information and belief, subject to further discovery, the Université de Sherbrooke owns some or all rights in at least the asserted '805, '524, '802, and '521 patents.  As a result, SLC does not own all of the rights in at least the '805, '524, '802, and '521 patents, and therefore lacks standing to pursue its claims for infringement of those patents.

## TWENTIETH AFFIRMATIVE DEFENSE

79.     HTC incorporates the allegations set forth in Paragraph 78, above.  On information and belief, subject to further discovery, and in the alternative, SLC's claims are barred in whole or in part because it has failed to name all necessary parties to this action.

## OTHER AFFIRMATIVE DEFENSES

80.     HTC reserves all other affirmative defenses pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defenses, at law or

in equity, that now exist or in the future may be available based on discovery and further factual

investigation in this case.

## JURY DEMAND

81.     HTC's hereby demands a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, HTC respectfully request that this Court enter judgment in HTC's favor

against SLC and issue an order that includes:

A.     A declaration that HTC has not infringed, and does not infringe, either directly,

indirectly, or otherwise, any valid and enforceable claim of the Asserted Patents;

B.     A declaration that the claims of the Asserted Patents are invalid;

C.     As an alternative, for any of the Asserted Patents found to be actually essential to

the AMR-WB standard, infringed by HTC, and not invalid, a declaration of a FRAND royalty

that (a) uses a royalty base of (at most) the smallest saleable unit substantially embodying the

claimed invention and (b) sets a reasonable rate applied to that royalty base that reflects the

actual technical contribution to the standard and to the allegedly infringing product that is

attributable to the patent;

D.     A declaration that SLC is liable for breach of contract for breach of its FRAND

commitments to standards organizations and granting HTC monetary damages based on such

breach;

E.     A declaration that SLC is liable for promissory estoppel;

F.     An injunction preventing SLC from further demanding excessive royalties from

HTC or from taking any other actions that are not consistent with SLC's FRAND obligations;

G.    Judgment against SLC and in favor of HTC;

H.    A declaration that SLC take nothing by its Counterclaims;

I.    Dismissal of SLC's Counterclaims with prejudice;

J.    A declaration that this case is exceptional and an award to HTC of its costs,

expenses, and reasonable attorneys' fees incurred in this action; and

K.    Further relief as the Court may deem just and proper.

### JURY DEMAND

HTC hereby demands a trial by jury for all issues so triable.

Dated:  October 26, 2015

Respectfully submitted,

By: */s/ Heidi L. Keefe*  _____

Brian Craft (Texas Bar No. 04972020)
FINDLAY CRAFT, P.C.
102 N. College Ave, Suite 900
Tyler, TX  75702
Telephone:  (903) 534-1100
bcraft@findlaycraft.com

Heidi L. Keefe (CA Bar 178960), Lead Counsel
Mark R. Weinstein (CA Bar 193043)
Priya B. Viswanath (CA Bar 238089)
Lam Nguyen (CA Bar 265285)
Philip H. Mao (CA Bar 300711)
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone:  (650) 843-5000
Fax:  (650) 849-7400
hkeefe@cooley.com
mweinstein@cooley.com
pviswanath@cooley.com
lnguyen@cooley.com
pmao@cooley.com

*Attorneys for Defendants*
*HTC America, Inc. and HTC Corporation*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who are deemed to have consented to electronic service.  Local  Rule CV-5(a)(3)(A).  Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. First Class Mail on this 26th day of October, 2015.

/s/ *Heidi L. Keefe*
Heidi L. Keefe